IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

       Defendants.

**DEFENDANT ROGER AUSTIN'S MOTION FOR BILL OF PARTICULARS**

1

Defendant Roger Austin, by and through undersigned counsel, and pursuant to Fed. R. Crim. P. 7(f), respectfully requests the Court order the Government to file a bill of particulars with respect to its Superseding Indictment filed on October 6, 2020.

**I.      STATEMENT OF THE CASE**

On June 2, 2020, and again on October 6, 2020, Mr. Austin was indicted, along with first three and then nine others, on one count of conspiracy in restraint of trade in violation of the Sherman Act. 15 U.S.C. § 1. The Superseding Indictment alleges that the ten defendants and many other entities and individuals (who may or may not be co-conspirators; the Indictment does not specify) agreed over a seven-year period to fix, maintain, stabilize, and raise the price of chicken. The Superseding Indictment alleges a large conspiracy involving a "continuing network of Suppliers and co-conspirators," and agreements to "submit aligned—though not necessarily identical" bids. Superseding Indictment ¶¶ 47-48(a). It identifies multiple entities and individuals purportedly involved and further references "co-conspirators known and unknown." *Id*. ¶ 1. The Government advises that discovery includes approximately 19 terabytes of information, or approximately 12.5 million documents.

The Superseding Indictment contains a section entitled "Means and Methods of the Conspiracy," which describes fourteen incidents identified as a "part" of the conspiracy. *Id*. ¶¶ 47-143, suggesting that there are more as-yet unspecified incidents against which Mr. Austin will need to defend himself. In fact, the Superseding Indictment amplifies the need for a bill of particulars. It adds six incidents, most of which do not appear to involve Mr. Austin, and six new defendants. The fourteen incidents mentioned involve a hodgepodge of different individuals, customers, and relationships, making it even less clear what the supposed agreement is. To

defend himself at trial, Mr. Austin is entitled to know the particulars of the conspiracy with which he is charged.

Specifically, the Superseding Indictment fails to provide adequate notice of: (1) when the alleged conspiracy began; (2) when and by what action Mr. Austin agreed to join the alleged conspiracy; (3) the identities of all the alleged co-conspirators; (4) the substance of the alleged agreements; or (5) all of the bids which were allegedly "aligned."

## II.     APPLICABLE LAW

Mr. Austin respectfully incorporates by reference, pursuant to Local Cr. Rule 12.1(b), the legal authorities set forth in the Motion for Bill of Particulars by Jayson Penn to be filed on October 27, 2020.

Mr. Austin previously filed a Motion for Bill of Particulars, ECF No. 59, on June 18, 2020, and a Reply Brief in Support of the Motion for Bill of Particulars, ECF No. 77, on July 9, 2020, both of which related to the Original Indictment, ECF No. 1, filed on June 2, 2020. That Motion (ECF No. 59) was rendered moot by the filing of the Superseding Indictment, ECF No. 101, on October 6, 2020. This Motion incorporates by reference the legal authorities in Mr. Austin's previous Motion for Bill of Particulars and Reply Brief.

### III.   REQUESTED PARTICULARS

Mr. Austin requests the following particulars in order to ascertain the charges against him:

(1) When the alleged conspiracy began;

(2) When and by what action Mr. Austin agreed to join the alleged conspiracy;

(3) The identities of all the alleged co-conspirators;

(4) The substance of the alleged agreements; and

(5) All of the bids which were allegedly "aligned."

### 1.   The Government should identify when the alleged conspiracy began.

The Superseding Indictment alleges fourteen distinct incidents as "part" of the alleged conspiracy. Superseding Indictment ¶ 47-50, 51-143. The first of these is alleged to have begun in "approximately the autumn of 2012[.]" Superseding Indictment ¶ 51. But the Superseding Indictment suggests that it may rely on dates prior to that of the first incident, as it alleges a conspiracy "[b]eginning *at least* as early as 2012 [. . .] the exact dates being unknown to the Grand Jury[.]" *Id.* ¶ 1 (emphasis added). Many of the documents within the Government's voluminous discovery were created years prior to 2012. The Government's subset of 5,387 purportedly "highly relevant" documents includes some created as early as 2006, if not before. Mr. Austin seeks particularization as to when the alleged conspiracy began.

### 2.   The Government should identify when and by what action Mr. Austin agreed to join the alleged conspiracy.

Mr. Austin is first named in the Superseding Indictment as having submitted a bid "in or around October 10, 2012[,]" *id.* ¶ 52, an action well within his job description, and not suggestive of any illegal behavior. Given the lack of information as to how Mr. Austin

4

supposedly entered this conspiracy, Mr. Austin seeks particularization about when and by what action he agreed to join the alleged conspiracy.

### 3. The Government should identify all of the alleged co-conspirators.

The Superseding Indictment names six additional charged co-defendants who were alleged to have participated in the conspiracy. Mr. Austin seeks particularization of the identity of *all* of the alleged co-conspirators.

To defend himself, Mr. Austin must know with whom he is alleged to have conspired. Requiring the Government to identify co-conspirators comports with established caselaw in complex prosecutions. *See, e.g.*, *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) (granting bill of particulars seeking information about unindicted coconspirators).

In *Kahale*, the court explained that:

> [I]n assessing whether a bill of particulars revealing the names of unindicted co-conspirators would accomplish the permissible goals of providing a defendant with necessary information to prepare for trial and avoid surprise, courts in [the Second] Circuit have routinely evaluated six factors: (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*Id.* at 372 (internal citation omitted). Here, as in *Kahale*, at least four of these factors weigh in favor of disclosure: (1) the number of potential co-conspirators is potentially large; (2) "the alleged duration of the conspiracy, five [in the present case, seven] years, is relatively lengthy," *id.*, and the geographic scope of the conspiracy—nationwide—is expansive; (3) the Government has not otherwise provided the particulars requested; and (4) the Government has and continues to produce "mountains" of discovery. *See id.* at 372-73. The Government has provided no reason to believe the

5

remaining two factors weigh against disclosure. Finally, as in *Kahale* and similar cases, "the relative complexity of the [] charges facing defendants [. . .] also weighs in favor of requiring disclosure." *Id.* at 373. The Government should be ordered to identify all of the co-conspirators, including their names and employers.

### 4. The Government should identify the substance of the alleged agreements.

The Superseding Indictment does not specify the substance of the alleged agreements. It uses the vague descriptions "aligned—though not necessarily identical—bids" and "aligned—though not necessarily identical—prices[.]" Superseding Indictment ¶ 48(a). It refers to Mr. Austin as being "in agreement" without identifying what he agreed to. *Id.* ¶ 65. The fourteen incidents set forth in the Superseding Indictment describe some price bids that are materially different from each other, but which were somehow supposedly based on an "agreement." *See, e.g.*, Superseding Indictment ¶ 62-63. Mr. Austin's motion seeks the particulars of the alleged agreement – who agreed with whom to do what under what terms and conditions.

To prepare his defense for trial, Mr. Austin should be given adequate notice of the Government's theory against him, and fundamental to that theory is the substance of the alleged agreements amongst the conspirators. This lack of notice is even starker with respect to the Superseding Indictment, which includes often disjointed and seemingly unrelated actors and actions. The Superseding Indictment makes even less clear what overarching agreement was allegedly made that would fulfill the legal requirements of a conspiracy to fix prices as charged in this case. Mr. Austin therefore asks for the particulars of the agreement into which he purportedly entered.

6

>  5. **The Government should identify all of the bids which were allegedly "aligned."**

The Superseding Indictment alleges a sweeping conspiracy involving a "continuing network of Suppliers and co-conspirators" across a seven-year time frame. Superseding Indictment ¶ 47. It provides fourteen apparently illustrative incidents under a section entitled "Means and Methods of the Conspiracy." *Id.* ¶¶ 47-143. It does not specify if these are the only incidents of alleged bid-rigging and price-fixing. The language used in the "Means and Methods" section and throughout the Indictment – labeling these actions simply "part" of the conspiracy – implies that these incidents are merely examples of what the Government may present at trial. Over the seven-year period identified by the Government, suppliers entered hundreds of bids, each bid covering dozens of products and even more line item prices. There are thousands of bids or prices that could potentially fall within the Government's expansive theory.

The Superseding Indictment includes bids in which Mr. Austin is alleged to have participated; it also includes bids that do not involve Mr. Austin but are supposedly "aligned" as part of the alleged conspiracy. In order to sort through the enormous amount of discovery and to prepare his case for trial, Mr. Austin needs to know which bids were allegedly rigged and which prices or price-related terms were allegedly fixed. Mr. Austin asks that the Government provide a complete list of implicated contracts or bids, including the time frame and relevant dates, the identity of all relevant customers, the specific products being sold, the allegedly impacted contractual terms or prices, the suppliers involved, and the names of those with whom he allegedly conspired. Mr. Austin is entitled to know which bids were allegedly touched by the conspiracy, and which were not. Mr. Austin seeks particularization as to all of the bids which were allegedly "aligned." If the Government intends to rely on other incidents to prove its case at

trial, Mr. Austin's motion asks simply that the Government identify what they are.

## IV. <u>LACK OF CLARITY IN VOLUMINOUS DISCOVERY</u>

The Government's obligations are not fulfilled by producing more than 12.5 million documents and a number of witness interview reports that, for the most part, make no or extremely limited mention of Mr. Austin. Mr. Austin requests proper notice, an adequate opportunity to mount a defense at trial, and legitimate protections from double jeopardy. These foundational concerns underlie Mr. Austin's request for a bill of particulars.

Given the sheer volume of discovery, which is ongoing, it is manifestly unfair to require Mr. Austin to read through more than 12.5 million documents, much less be left to guess which will be used against him. The Government has previously argued that this unfairness is mitigated because the database is "annotated and electronically searchable." Government's Consolidated Response to Defendants Jayson Penn's and Roger Austin's Motions for a Bill of Particulars, ECF No. 68, filed July 3, 2020, at 3. However, even if this database were easily searchable and correctly annotated (which Mr. Austin disputes), without more information from the Government, any of these 12.5 million documents could potentially serve as "evidence" on which the Government may rely (and later claim to have properly disclosed), especially with regards to acts outside the indictment that supposedly underlie the charged conspiracy. "Annotating" these documents or providing the ability to search within them does not alter the fundamental fact that Mr. Austin has been given no guidance about what he should be looking for beyond those fourteen alleged episodes. Moreover, the witness interview reports and the set of "highly relevant" documents do not illuminate the actual substance of the charges against which Mr. Austin must defend himself.

Even the information provided about the fourteen episodes gives little insight into Mr. Austin's alleged overt acts. In one instance, for example, the totality of Mr. Austin's alleged behavior is that he submitted a bid to a buyer, and one month later, he made a 3-minute phone call to an alleged co-conspirator. Superseding Indictment ¶¶ 71-76. Mr. Austin is left to review over 12 million documents to attempt to understand what he is alleged to have done in violation of the law.

The provision of extensive discovery does not obviate the need for a bill of particulars in this complex case. In *U.S. v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987), the court stated that providing the defense with 4,000 documents caused "the burden of proof impermissibly [to shift] to [the defendants]" and found that the trial court erred in denying the defendants a bill of particulars. *Id.* The court continued that, while the Government had cooperated in "turning over" documents before trial, "[t]he relevance of key events was shrouded in mystery at the commencement of and throughout the trial" and "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be [relevant]." *Id*. If 4,000 document warrants a bill of particulars, surely one is warranted here.

Nor does the Government's specification of a non-exhaustive subset of 5,387 documents it deems "highly relevant" suffice. Designating a set of documents it deems "highly relevant" to its case does not relieve Mr. Austin of the need to review all of the discovery when the Government has not specified all of the alleged incidents of bid-rigging and all of the alleged co-conspirators.

## V. <u>CONCLUSION</u>

The Superseding Indictment does not sufficiently identify the particulars of the Government's case against Mr. Austin, without which he cannot adequately prepare his defense at trial. Mr. Austin respectfully requests that the Court order the Government to provide a bill of particulars.

Dated: New York, New York  
       October 27, 2020

Respectfully Submitted,

REICHMAN JORGENSEN LLP

By:   /s/ Michael S. Feldberg

Michael S. Feldberg  
*mfeldberg@reichmanjorgensen.com*  
750 Third Avenue  
Suite 2400  
New York, NY 10017  
Tel.: (212) 381-4970

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO

    I hereby certify that on October 27, 2020, I electronically filed the foregoing Motion for a Bill of Particulars with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

Dated: New York, New York            Respectfully Submitted,
      October 27, 2020

                                         REICHMAN JORGENSEN LLP

                                         By:  /s/ Michael S. Feldberg

                                         Michael S. Feldberg
                                         *mfeldberg@reichmanjorgensen.com*
                                         750 Third Avenue
                                         Suite 2400
                                         New York, NY 10017
                                         Tel.: (212) 381-4970