IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

       Defendants.

---

**DEFENDANTS' MOTION PURSUANT TO RULE 17(c) FOR COURT ORDER AUTHORIZING SUBPOENAS DUCES TECUM TO PRODUCE DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL**

---

Defendants, by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure ("Rule") 17(c), respectfully request that the Court issue an order authorizing the issuance of the attached subpoenas duces tecum to require the production of documentary evidence in advance of trial.

**I.**    **INTRODUCTION**

As described in Defendants' previously filed Rule 17(c) motions, the government has alleged a wide-ranging conspiracy to fix prices and rig bids for broiler chicken products,

1

allegedly involving multiple broiler chicken suppliers. Dkt. 101 ("Super. Indict.") ¶¶ 51–145. After conducting extensive investigation and reviewing the voluminous discovery provided by the government, Defendants are requesting relevant and targeted documents from McKinsey & Company ("McKinsey"), Pilgrim's Pride, Kelly's Foods, National Chicken Council, and their employees, as well as phone records maintained by three cell phone carriers (Verizon Wireless, AT&T Wireless, and Sprint/T-Mobile) for twelve individuals directly relevant to the case. Each of these entities has in their possession documents vital to the defenses in this case, as outlined below and as explained in greater detail in the *ex parte* memorandum filed contemporaneously with this Motion.

Defendants apply for the issuance of these pretrial subpoenas now to allow sufficient time for production and review of the materials in advance of trial. Defendants have filed herewith an *ex parte* memorandum in support of this Motion explaining in detail why the documents are essential to Defendants' preparation of their defense. The memorandum has been filed on an *ex parte* basis because it discloses Defendants' trial strategy and defenses.

Defendants make these requests in good faith, knowing that (i) key documents have not been produced by the government, and are therefore unlikely to have been obtained in its investigation, (ii) Defendants can only obtain them directly from the entities listed here, and (iii) these documents are essential to prepare their defenses in advance of trial and to avoid future delay.

**II.   BACKGROUND**

On June 2, 2020, the grand jury returned a one-count indictment against four defendants for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Dkt 1 ("Indict.") ¶ 1. In this

indictment, the government alleged a conspiracy between 2012 and 2017 consisting of a "continuing network" with the purpose "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States." *Id*. ¶¶ 28–29. The indictment described eight specific pricing incidents involving five customers (*id*. ¶¶ 32–77) but suggested that these incidents were only "part" of the alleged conspiracy. *Id*. ¶ 28 ("It was part of the conspiracy . . . ."); *id*. ¶ 29 ("It was further part of the conspiracy . . . ."); *id*. ¶¶ 30, 31 (same).

On October 6, 2020, the grand jury returned a superseding indictment against ten defendants for one count of a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and two other counts against only defendant Jimmie Lee Little. Super. Indict. ¶¶ 1, 147, 151. The superseding indictment again alleges a conspiracy with the purpose "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States" (*id*. ¶ 47), but it alleges a broader price-fixing and bid-rigging conspiracy than the original indictment.

The government now alleges a conspiracy between 2012 and at least 2019 relating to a larger number of suppliers of broiler chicken products, a larger number of customers, and a wider range of expressly identified products. *Id*. ¶¶ 1, 3, 47–50. The superseding indictment describes fourteen separate incidents (*id*. ¶¶ 51–143), with eight customers and one distributor that allegedly are part of the conspiracy (*id*. ¶¶ 36–44), but again alleges that the incidents described in the indictment only formed "part" of the alleged conspiracy. *Id*. ¶¶ 47–50 ("It was part of the conspiracy . . . ."); *id*. ¶ 48 ("It was further part of the conspiracy . . . ."); *id*. ¶¶ 49, 50 (same).

The government has produced more than 13 million documents to date, comprising approximately 10 terabytes of data. Upon a diligent search of the databases created to store and attempt to organize these documents, Defendants do not appear to be in possession of the documents listed in the requested subpoenas duces tecum, attached to this Motion.

### III.     LEGAL STANDARD

Rule 17(c) authorizes a court to issue a subpoena duces tecum directing a witness to produce any "books, papers, documents, data, or other objects the subpoena designates" in court before trial so that the parties and their attorneys may "inspect all or part of them." The purpose of Rule 17(c) is to expedite trial, and such subpoenas are "encouraged in complex criminal cases." *United States v. Nixon*, 418 U.S. 683, 699 n.11 (1974). This matter has been designated a complex criminal case.

In *Nixon*, the Supreme Court set out a four-part test for the issuance of a Rule 17(c) subpoena: the moving party must show that (1) the documents are relevant and evidentiary; (2) they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) the party cannot properly prepare for trial without the requested documents and failure to obtain them may unreasonably delay trial; and (4) the application is made in good faith and is not intended as a general "fishing expedition." *Id.* at 699-700; *see also United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006). Put another way, the moving party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700. The only reason a court may quash a Rule 17(c) subpoena is if production of the documents would be "unreasonable or oppressive." *Id*. at 698.

Some courts have begun to apply a less onerous standard with regards to Rule 17(c) subpoenas, recognizing that the *Nixon* standard places an unfair burden on the defendant in a criminal trial, compared to the almost-unlimited subpoena power enjoyed by the government during the course of a criminal investigation. *See United States v. Nachamie*, 91 F. Supp. 2d 552 (S.D.N.Y. 2000). The *Nachamie* court itself found that while the "high [*Nixon*] standard, of course, made sense in the context of a Government subpoena, especially one seeking evidence from the President," there was a "real question" about "whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet this same standard," especially given that "[i]n *Nixon*, the Supreme Court explicitly avoided answering this question[.]" *Id.* at 562, 562 n.16.

Thus, according to *Nachamie*, when Rule 17(c) is the "proper device for discovering documents in the hands of third parties," the "only test for obtaining the documents would be whether the subpoena [is]: (1) reasonable, construed using the general discovery notion of material to the defense; and (2) not unduly oppressive for the producing party to respond." *Id.* at 563 (internal citation and quotation omitted).

The District of Colorado has endorsed the *Nachamie* standard for third-party subpoenas, recognizing that "[t]he basis for this different [*Nachamie*] standard is that, unlike the Government, the defendant has not had an earlier opportunity to obtain material by means of a grand jury subpoena." *United States v. Newsom*, No. 15–cr–00265–WJM, 2015 WL 6735397, at *3 (D. Colo. Nov. 4, 2015). "Because [Rule 17] states only that a court may quash a subpoena 'if compliance would be unreasonable or oppressive,' the judicial gloss that the material sought

must be evidentiary—defined as relevant, admissible, and specific—may be inappropriate in the context of a defense subpoena of documents from third parties." *Id.*[1]

Defendants contend that the *Nachamie* standard of review should be applied by this Court as to the present Motion. However, regardless of whether this Court applies the *Nachamie* standard or the *Nixon* standard, Defendants have met their burden as to each requested Rule 17(c) subpoena, as outlined below and in the related *ex parte* memorandum.

## IV. ARGUMENT

### A. Defendants' Request Satisfies the *Nachamie* Test

#### 1. Material

Defendants' requests are "reasonable" under the *Nachamie* standard when "construed using the general discovery notion of material to the defense[.]" *Nachamie*, 91 F. Supp. 2d. at 563. As outlined in greater detail *infra*, IV(B)(1), and in the *ex parte* memorandum, the documents sought pursuant to this Motion are both material and relevant to Defendants' case.

#### 2. Not Unduly Oppressive For the Producing Party To Respond

Defendants also satisfy the second prong of the *Nachamie* test because the subpoenas are not unduly oppressive to the producing parties. Defendants are subject to serious criminal charges that could potentially result in incarceration in federal prison. In contrast, the targeted subpoenas listed in this Motion would only require each producing party to produce a clear and likely easily-obtainable set of documents. The companies and third parties to whom the

---

[1] Note that in *Newsom*, the Court found that the defendant was "unwilling to defend the subpoena, as written, against the [*Nachamie* prong] of undue oppression" and the Court was therefore compelled to find "that the looser subpoena standard, to the extent it might apply, has not been satisfied in this case," requiring the Court to analyze the subpoena under only the *Nixon* standard. *Id.* at *4.

6

subpoenas will be sent are professional entities, many of whom regularly field these kinds of requests. Compared with the importance of these documents to Defendants' case and the potential outcome to Defendants in this trial, the minimal effort required to compile and provide these documents pursuant to a subpoena cannot be considered "unduly oppressive."

### B.  Defendants' Request Satisfies the *Nixon* Test

Although Defendants have satisfied the two requirements of the *Nachamie* test—the requested documents are material and are not unduly oppressive—they also satisfy the more burdensome *Nixon* standard.[2]

#### 1.  Relevance

##### a.  McKinsey

The government alleges RSCS was a victim of the alleged conspiracy. *See* Dkt. 195 at 3. Five of the pricing episodes described in the superseding indictment relate to RSCS's negotiations with chicken suppliers on behalf of KFC. Super. Indict. ¶¶ 51–65, 71–76, 87–107, 129–35.

Documents provided by the government from various custodians, including a small subset of documents with "McKinsey" denoted as custodian,[3] show that McKinsey was hired by RSCS and/or KFC to conduct an extensive analysis related to the broiler chicken market in or around 2014. McKinsey then provided RSCS with various recommendations that were meant to place RSCS/KFC in a better contracting position during negotiations and bidding with broiler chicken suppliers, some of whom are named in the government's superseding indictment. The

---

[2] *Supra*, at III.
[3] A total of 108 documents of the over 13 million provided by the government list "McKinsey" as the custodian after inputting them into the Defendants' document repository.

consulting work McKinsey conducted on behalf of RSCS/KFC was intensive, critical, and included meetings or other contact with various chicken suppliers to obtain insight for their work, some of whom are involved in or relevant to this case.

Defendants have drafted the requested subpoena in a targeted way to obtain a limited set of relevant, admissible documents solely in the possession of McKinsey that they cannot otherwise procure. Defendants seek correspondence and other documents from McKinsey directly related to RSCS/KFC's negotiations with chicken suppliers involved in the superseding indictment. Acquiring these documents is essential to Defendants' preparation of their defense, as they will refute the government's allegations of price fixing and bid rigging. The *ex parte* memorandum filed in support of this motion explains in detail why these documents are essential to Defendants' preparation of their defense.

### b.   Pilgrim's Pride

Pilgrim's Pride Corporation ("Pilgrim's Pride") is a chicken supplier mentioned frequently in the allegations in this case. The government has indicted four former employees of Pilgrim's Pride and has named other employees as unindicted co-conspirators. Super. Indict. ¶¶ 12–46. Pilgrim's Pride and its employees are directly involved in all 14 incidents alleged in the superseding indictment. *See id*. ¶¶ 51–143. The government alleges that these individuals participated in a "continuing network" whose purpose was to rig bids and fix prices and price-related terms for broiler chicken products sold in the United States from 2012 to 2019. *Id*. ¶¶ 1, 47. And while the government has produced more than 13 million documents to date, with more documents being produced regularly, the current production does not provide necessary information about Pilgrim's Pride's business practices and decisions during the alleged

8

conspiratorial period.

Defendants have drafted their requests to Pilgrim's Pride in a targeted way to obtain a limited set of relevant, admissible documents solely in the possession of Pilgrim's Pride that cannot be otherwise obtained. Defendants seek correspondence and other documents from Pilgrim's Pride's negotiations directly referenced in the superseding indictment alongside other documents relevant to Pilgrim's Pride and its employees' conduct throughout the indictment period and in the surrounding years. Each of these requests seeks documents and/or communication information for the time period charged in the superseding indictment or relevant time periods as raised through a review of the government production to-date. While the requests are not limited to specific allegations in the superseding indictment, they seek only specific, targeted information relevant to the government's allegations and the charged offense. Defendants require this information from Pilgrim's Pride in order to defend against the charges in the superseding indictment. Evidence provided from these requests is necessary to counter the government's allegations that suppliers illegally fixed prices.

### c. Kelly's Foods

Kelly's Foods, Inc. ("Kelly's Foods") is a full-service food distributor specializing in custom marination, further processed, fresh, and frozen chicken and other meat products. Kelly's Foods services retail meat markets, supermarkets, independent restaurants, national restaurants, theme parks, and wholesale food distributors. It is the largest independent poultry and food distributor in the southeastern United States and delivers products throughout Florida, Georgia, and Alabama.

Although Kelly's Foods is not specifically mentioned in the superseding indictment,

based on documents and information produced by the government to date, Defendants have reason to believe that employees of Kelly's Foods regularly interacted Defendants and other chicken suppliers, regarding the sale of broiler chicken products to the restaurant chains and buying cooperatives specifically referenced in the superseding indictment, during the time periods mentioned in the indictment episodes. Documents produced by the government also suggest that Kelly's Foods negotiated directly with chain restaurants to sell and distribute such products.

Defendants have drafted the requested subpoena to Kelly's Foods in a targeted way to obtain a limited set of relevant, admissible documents that they believe are solely in the possession of Kelly's Foods and that they cannot otherwise procure without this Court's assistance. Acquiring these documents is essential to Defendants' preparation of their defense, as they will refute the government's allegations of price fixing and bid rigging.

### d. National Chicken Council

The relevance of the National Chicken Council to this matter is evident. The National Chicken Council is the trade association in the United States that "advocates for the companies that raise and process chickens for meat (called broilers)."[4] The National Chicken Council advertises on its website that the organization's purposes include "Representing America's Chicken Producers" and providing its members resources and information that "informs [their] next steps." *Id.* Many defendants and alleged co-conspirators were members of the National Chicken Council or on its board of directors during the timeframe of the alleged conspiracy. The government has alleged that as a part of the conspiracy, the defendants and alleged co-

---

[4] https://www.nationalchickencouncil.org/

10

conspirators participated in conversations and communications relating to non-public information with the shared understanding that the purpose of those conversations and communications was to rig bids, and to fix, maintain, stabilize, and raise prices and other price-related terms for broiler chicken products sold in the United States. Defendants anticipate that the government's case-in-chief will focus on the sharing of information among the alleged co-conspirators. A central question to certain of the information sharing will be whether that information was publicly known. Members and the board of directors of the National Chicken Council meet often each year to discuss the broiler chicken industry, data, trends, insights, forecasts, and other information to help their members strategize and make business decisions. It is imperative for the defendants to understand what information is being shared, among whom, and at what time in order to defend at trial against the government's suppositions.

While the requests are not limited to specific allegations in the superseding indictment, they seek only specific, targeted information relevant to the government's allegations and the charged offense. Defendants require this information from the National Chicken Council in order to defend against the charges in the superseding indictment.

### e. Cell Phone Carriers

Defendants also seek issuance of pretrial subpoenas to the cell phone carriers of twelve individuals who are specifically identified or intimately involved in the allegations in the superseding indictment. As explained in the accompanying *ex parte* memorandum filed under seal, the subpoenas seek cell phone records from those individuals' accounts held at Verizon Wireless, AT&T Wireless, and Sprint/T-Mobile.

Complete phone records from individuals who were integrally involved with the events

alleged in the superseding indictment is necessary to defend against the government's case of bid-rigging and price fixing. The requested information is also narrowly tailored to the cell phone records that these carriers would have for the requested accounts; no other documents are sought. The requested phone records have not already been produced by the government and are necessary for the defendants to prepare for trial in this case.

### 2. Admissibility

With respect to admissibility, many of these documents may constitute business records or may be sought to be admitted for a purpose other than proving the truth of the matter asserted (such as for impeachment). Fed. R. Evid. 803(6), 801(d)(1)(B). Further questions of admissibility should be reserved for trial.

### 3. Not otherwise procurable in advance of trial

Under *Nixon,* the documents requested in these subpoenas are not otherwise procurable reasonably in advance of trial. The subpoenas seek nonpublic communications and other documents in the possession of McKinsey, Pilgrim's Pride, Kelly's Foods, National Chicken Council, and their employees, as well as phone records maintained by three cell phone carriers for twelve individuals directly relevant to the case. These documents are not in Defendants' possession, and Defendants have no reasonable means by which to access them absent issuing subpoenas directly.

### 4. Documents are needed to prepare for trial

Production of the documents will enable defendants to prepare for trial. Defendants need access to the documents to counter the government's allegations that they entered into an agreement to fix prices and rig bids between 2012 and 2019 generally and with respect to all of

the incidents referenced above. Defendants also need this information to impeach the credibility of government witnesses.

### 5. Documents are sought in good faith

Finally, Defendants make this request in good faith, upon continuing review of discovery in this matter and tailoring the subpoenas as narrowly as possible to target material evidence that are not found in the government's voluminous production. Defendants have good reason to believe that these documents exist and seek to procure them for the sole purpose of trial preparation.

The *Nachamie* and *Nixon* tests uniformly weigh in favor of granting production prior to trial, and issuance of Defendants' proposed subpoenas would further the purposes of Rule 17(c) in minimizing any undue delay at trial itself.

## V. CONCLUSION

Pretrial production of additional documents is necessary in this complex criminal case so that Defendants can properly prepare for trial. Defendants have constructed the requests narrowly to target documents solely in the possession of McKinsey, Pilgrim's Pride, Kelly's Foods, National Chicken Council, and their employees, as well as phone records maintained by three cell phone carriers for twelve individuals directly relevant to the case in the good-faith belief that these important documents are essential to preparation of their defense and cannot otherwise be obtained. Issuance of these subpoenas prior to trial is essential to ensure trial can proceed without delay once it begins.

Dated: July 19, 2021

Respectfully submitted,

s/ *Michael F. Tubach*
Michael F. Tubach (Cal. Bar No. 145955)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701
E-mail: mtubach@omm.com
*Attorneys for Defendant Jayson Jeffrey Penn*

s/ *Richard K. Kornfeld*
Richard K. Kornfeld
Recht Kornfeld, P.C.
1600 Stout Street, Suite 1400
Denver, CO 80202
303-573-1900
Fax: 303-446-9400
Email: rick@rklawpc.com
*Attorney for Defendant Mikell Reeve Fries*

s/ *Bryan B. Lavine*
Bryan B. Lavine
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N. E., Suite 3000
Atlanta, Georgia 30308
404-885-3170
Fax: 404-962-6613
Email: bryan.lavine@troutman.com
*Attorney for Defendant Scott James Brady*

s/ *Michael Feldberg*
Michael S. Feldberg
Reichman Jorgensen Lehman & Feldberg LLP - New York
750 Third Avenue, 24th Floor
New York, New York 10017
212-381-4970
Fax: 212-381-4971
Email: mfeldberg@reichmanjorgensen.com
*Attorney for Defendant Roger Born Austin*

s/ *Elizabeth B. Prewitt*
Elizabeth B. Prewitt
Latham & Watkins LLP
85 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: elizabeth.prewitt@lw.com
*Attorney for Defendant Timothy R. Mulrenin*

s/ *James A. Backstrom*
James A. Backstrom
James A. Backstrom, Counsellor at Law
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
215-864-7797
Email: jabber@backstromlaw.com
*Attorney for Defendant William Vincent Kantola*

s/ *Mark A. Byrne*
Mark A. Byrne (Cal. Bar No. 116657)
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012
Email: markbyrne@byrnenixon.com
*Attorney for Defendant Jimmie Lee Little*

s/ *John A. Fagg, Jr.*
John A. Fagg, Jr.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
704-331-3622
Fax: 704-378-2092
Email: johnfagg@mvalaw.com
*Attorney for Defendant William Wade Lovette*

| | |
|---|---|
| s/ *Craig A. Gillen* | s/ *Wendy L. Johnson* |
| Craig A. Gillen | Wendy L. Johnson |
| Gillen Withers & Lake, LLC | Reece Moore Pendergraft, LLP |
| 400 Galleria Parkway, Ste 1920 | 5519 Hackett Rd. Suite 300 |
| Atlanta, GA 30339 | Springdale, AR 72762 |
| Telephone: (404) 842-9700 | 479-439-2705 |
| Facsimile: 404-842-9750 | Fax: 479-439-2718 |
| E-mail: cgillen@gwllawfirm.com | Email: wjohnson@rmp.law |
| *Attorney for Defendant Gary Brian Roberts* | *Attorney for Defendant Rickie Patterson Blake* |

15

## CERTIFICATE OF SERVICE

      I hereby certify that on this 19th day of July, 2021, I electronically filed the foregoing **DEFENDANTS' MOTION PURSUANT TO RULE 17(c) FOR COURT ORDER AUTHORIZING SUBPOENAS DUCES TECUM TO PRODUCE DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

    *s/ Michael Feldberg*