IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

**DEFENDANTS' MOTION TO ADDRESS THE DEPARTMENT OF JUSTICE'S INTERFERENCE WITH DEFENDANTS' RIGHT TO PRESENT THEIR DEFENSE**

**Introduction and Summary of Argument**

The Constitution guarantees a defendant's right to call witnesses in his defense, free from government interference with the witnesses' choice to testify. And it protects a defendant's right to prepare his defense by prohibiting government interference with witnesses' free choice to speak with the defense.

On February 16, 2021, Pilgrim's Pride Corporation ("Pilgrim's") entered a Plea Agreement with the Department of Justice ("DOJ"). *See* Ex. A, Plea Agreement, *United States v. Pilgrim's Pride Corp.*, No. 1:20-cr-00330-RM, (D. Col. Feb 23, 2021), Dkt. 58 ("Pilgrim's Plea Agr."). That Agreement contains two provisions that raise serious concerns about government interference with defendants' Constitutional rights. Paragraph 22 provides in pertinent part:

1

> The defendant expressly agrees that it *will not*, through current or future attorneys, directors, officers, *employees*, agents, or any other person authorized by the defendant to speak on its behalf, *make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the defendant set forth above or the facts contained in the Factual Basis section of this Plea Agreement*. Any such contradictory statement will, subject to cure rights of the defendant described below, constitute a violation of this Plea Agreement, and the defendant thereafter will be subject to prosecution as set forth in Paragraphs 20-21 of this Plea Agreement. *The decision whether any public statement by any such person contradicting the facts contained in the Factual Basis section of this Plea Agreement was made on behalf of the defendant for purpose of determining whether it has violated this Plea Agreement will be at the sole discretion of the United States*. … This paragraph does not apply to any statement made by any current or future director, officer, employee, or agent of the defendant in the course of any criminal, regulatory, or civil case initiated *against such individual*, unless such individual is speaking on behalf of the defendant. This paragraph does not affect the obligation of any person, who is providing cooperation pursuant to Paragraph 14 of this Plea Agreement, to respond fully and truthfully to all inquiries *of the United States* without falsely implicating any person or intentionally withholding information and to testify fully and truthfully as required by Paragraph 14 of this Plea Agreement.

Pilgrim's Plea Agr. ¶ 22 (emphasis added).

Paragraph 14 in turn provides that "full, truthful, and continuing cooperation" includes "responding fully and truthfully to all inquiries *of the United States* in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information"; "when called upon to do so *by the United States* in connection with any Federal Proceeding, participating in affirmative investigative techniques"; and "when called upon to do so *by the United States* in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings." Pilgrim's Plea Agr. ¶ 14 (emphasis added).

Together, these provisions mean that Pilgrim's employees, whether called to testify in this case or asked by the defense to provide information that could be exculpatory, must decide whether to speak to the defense knowing that Pilgrim's is barred from contradicting the Factual Basis set forth in its plea agreement and that, at the government's sole discretion, an employee's statement can be imputed to Pilgrim's. Put differently, employees' truthful in-court or out-of-court statements could have enormous negative consequences for their employer. Such truthful

testimony is expressly protected to the extent that (1) the individual is a defendant in a case, or (2) the individual is responding to inquiries of or testifying on behalf of the United States. But there is no parallel protection for testimony on behalf of any defendant in this case, all of whom contest the accuracy of the Factual Basis section of the Pilgrim's Plea Agreement.

The DOJ has thus claimed for itself the right to unilaterally punish the employer of potential witnesses for their truthful testimony. The logical result is to chill employees' willingness to testify or speak with the defense. This appears to have borne fruit. Thus far, every Pilgrim's employee contacted through their counsel, including some closely acquainted with the defendants, has in identical terms refused to speak to the defense, raising the inference that Pilgrim's has explicitly or implicitly communicated to its employees that speaking with the defense puts Pilgrim's at risk of having DOJ determine that it has violated its plea agreement.[1]

Defense counsel has asked Pilgrim's to inform its employees that they are free to speak to anyone they choose without having to fear adverse employment consequences; Pilgrim's has not, as far as is known, done so[2].  This is hardly surprising, given Pilgrim's incentive to cooperate with the prosecution of its former officers and employees and to avoid irritating the DOJ. Therefore, defense counsel has asked the DOJ to advise Pilgrim's to allow its employees to testify or speak truthfully even if such statements would contradict the Factual Basis in Pilgrim's plea.

To remove the taint that the DOJ's actions may have put on this proceeding, the Court should: (1) order discovery into whether Pilgrim's, through its agents, officers, or employees, has suggested, explicitly or implicitly, to its employees that they not speak to the defense, and

---

[1] The two Pool Counsel, one representing six Pilgrim's employees and the other representing two, have accepted trial subpoenas from the defense but have advised that their clients will not speak with the defense counsel.

[2] By letter dated July 26, 2021, Pilgrim's states that it has not and will not discourage employees from speaking with defense counsel.  See, infra, at p. 5.

whether that suggestion is the result of pressure from the DOJ or language in the Pilgrim's Plea Agreement; (2) order the DOJ to stipulate that witnesses are free to speak to any party or testify without adverse consequences; and (3) require a letter be sent to relevant employees affirming their right to speak confidentially to the defense.

### I. Facts

The defendants have been charged with an alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Four of the defendants worked for Pilgrim's during the seven-year period charged in the superseding indictment, which alleges a price-fixing and bid-rigging conspiracy involving numerous suppliers. *See* Superseding Indictment ¶¶ 1, 51-145, Dkt. 101 ("Super. Ind.").

The DOJ subsequently filed an Information alleging that Pilgrim's violated Section 1 of the Sherman Act by "enter[ing] into and engag[ing] in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms." Information ¶ 4, *Pilgrim's Pride Corp.*, (D. Col. Oct. 13, 2020), Dkt. 1. The Pilgrim's Plea Agreement contains allegations similar to those of the superseding indictment in this case.

As part of their defense, defendants intend to call current Pilgrim's employees whose truthful testimony, defendants believe, will disprove crucial allegations in the superseding indictment. Further, defendants believe that truthful testimony is likely to contradict the "facts" in the Pilgrim's Plea Agreement.

Defense counsel have reached out to counsel retained for several employees by Pilgrim's to ask to speak to them. The employees' counsel have uniformly and in virtually identical terms stated their clients refuse to speak to the defense. This uniform refusal to speak has hindered defendants' ability to investigate and prepare for trial.

Defense counsel has alerted the DOJ to these concerns and asked that the government inform Pilgrim's that it "will not make a determination that the company has violated the Plea

Agreement if any employee makes any statement, including to the Court or to Defendants' counsel…regardless of whether or not that statement contradicts the Factual Basis section of the Plea Agreement…." Ex. B, Letter from M. Feldberg (July 8, 2021), at 2. The DOJ has declined to provide this assurance, stating that such a determination is a "factual question that requires an analysis of the circumstances of the statement to determine whether the statement was public and whether it was a statement of or on behalf of the company", adding that Pilgrim's has confirmed to DOJ "that the government's interpretation of these provisions are consistent with [Pilgrim's] understanding of the same, and that [Pilgrim's] agrees to abide by the government's interpretation." Ex. C, Letter from C. Sweeney (July 17, 2021), at 3. Defense counsel has also alerted Pilgrim's to these concerns. Ex. D, Letter from M. Feldberg (July 12, 2021). Pilgrim's responded by letter dated July 26, 2021, stating that it "has not discouraged and will not discourage individual employees from speaking with [defense] counsel". Ex. E, Letter from M. Kasowitz (July 26, 2021). Pilgrim's has not, so far as is known, advised employees that they will not face adverse employment consequences if they speak with defense counsel or testify truthfully for the defense.

## II. Legal Background

### A. The Constitution Protects a Defendant's Ability to Present a Defense

"A criminal defendant's right to present a defense is essential to a fair trial." *United States v. Serrano*, 406 F.3d 1208, 1214 (10th Cir. 2005). "The right to offer the testimony of witnesses…is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). Moreover, "[t]his right is a fundamental element of due process of law." *Id.; see also Serrano,* 406 F.3d at 1215 ("The Fifth…and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by

5

compelling the attendance, and presenting the testimony, of his own witnesses.").

Accordingly, "[s]ubstantial Government interference with a defense witness' free and unhampered choice to testify violates due process," *United States v. Henricksen*, 564 F.2d 197, 198 (5th Cir. 1977). This is true if the interference takes the form of a state statute that prevents individuals charged or convicted as participants in the same crime from testifying on each other's behalf but allows them to testify for the State. *Washington*, 388 U.S. at 16-18, 22-23 (describing the rule as "absurd[]"). It is true if the interference takes the form of a codefendant's plea deal in which he has to "agree not to testify in any manner regarding" the accused on pain of voiding the agreement. *Henricksen*, 564 F.2d at 198; *see also United States v. Vavages*, 151 F.3d 1185, 1192-93 (9th Cir. 1998) (prosecution's threats to withdraw witness's plea agreement and prosecute her for perjury violated defendant's rights). And it is true in numerous other scenarios where the government pressures witnesses not to testify on behalf of a defendant. *See, e.g.*, *Webb v. Texas*, 409 U.S. 95, 95-97 (1972) (judge made threatening remarks to defense witness); *United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir. 1979), *on reh'g*, 605 F.2d 862 (5th Cir. 1979) (threats by law enforcement of "trouble" in other criminal cases if witness testified); *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973) (admonishment by federal agent of potential consequences of testifying); *United States v. Teague*, 737 F.2d 378, 381-83 (4th Cir. 1984) (call from prosecutor to witness' attorney admonishing of consequences of perjury); *United States v. Heller*, 830 F.2d 150, 152-54 (11th Cir. 1987) (federal agent's threats to prosecute witness).

Similarly, it is axiomatic that "witnesses do not 'belong' to either side in a criminal case." *United States v. Peter Kiewit Sons' Co.*, 655 F. Supp. 73, 77 (D. Colo. 1986); s*ee also Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) ("Witnesses…are the property of neither the prosecution nor the defense….A criminal trial, like its civil counterpart, is a quest for truth."). "[T]he prosecution may not interfere with the free choice of a witness to speak with the defense

6

absent justification by the clearest and most compelling considerations." *United States v. Pinto*, 755 F.2d 150, 152 (10th Cir. 1985) (quotation omitted); *see also United States v. Troutman*, 814 F.2d 1428, 1453-54 (10th Cir. 1987); *United States v. Gonzalez*, 164 F.3d 1285, 1292 (10th Cir. 1999). "[T]he right of the defense to have access to witnesses in a criminal case should be unfettered and free of government intervention." *Peter Kieweit Sons' Co.*, 655 F. Supp. at 77.

The case law also recognizes that the government has awesome power that is "likely to have a chilling effect on witnesses" if wielded against them. *Peter Kieweit Sons'*, 655 F.Supp. at 77-78 ("They had seen their business associates, the defendants, indicted for six federal felonies, not through action of any local official or familiar United States Attorney in Colorado or New Mexico, but by the Justice Department itself reaching from Washington, D.C. into their lives. They apparently were concerned that if the defendants could be indicted so could they be."). Moreover, the case law recognizes that the government can exercise its leverage over corporate defendants that have pled guilty to determine how they treat their employees. *See United States v. Stein*, 541 F.3d 130, 136 (2d Cir. 2008) ("We hold that KPMG's adoption and enforcement of a policy under which it conditioned, capped and ultimately ceased advancing legal fees to defendants followed as a direct consequence of the government's overwhelming influence, and that KPMG's conduct therefore amounted to state action.").

Finally, it is generally the case that the government is "preclude[d]…from having an informant do for [it] what [it itself] cannot do." *United States v. Bennett*, 729 F.2d 923, 925 (2d Cir. 1984). That is, the government violates a defendant's rights when it induces a cooperating witness to take actions that would violate the defendant's rights if done by the government itself. *Massiah v. United States*, 377 U.S. 201, 206-07 (1964) (defendant's rights violated when government used cooperating co-defendant to elicit uncounseled statements). A cooperating corporation with a restrictive plea agreement is no different.

### B. Other Federal Authorities' Practices Do Not Impede a Defense Like the Pilgrim's Plea Agreement

Government agencies commonly include provisions barring settling defendants from publicly contradicting the facts admitted in a civil settlement or plea agreement. But, unlike the DOJ Antitrust Division's plea agreement with Pilgrim's, those provisions generally carve out testimonial obligations. This is the standard in SEC settlements,[3] CFTC settlements,[4] and even settlements with other DOJ units.[5] FINRA at one time used a standard "Acceptance, Waiver and Consent" (AWC) that, like the Pilgrim's Plea Agreement, lacked a carve out for the settling individual's testimonial obligations. When this policy was challenged, a FINRA Hearing Officer explained that the "integrity of the disciplinary process requires that all witnesses be assured they can testify truthfully" and held that "it would be unfair to permit [witnesses] to testify for [FINRA] when they are facing potential adverse consequences, including disciplinary action or other adverse action by [FINRA] if they testify truthfully but inconsistently with the findings of the AWC."[6] In the wake of this rebuke, FINRA has amended its AWC to include a carve-out guaranteeing that individuals face no negative consequences for their future truthful testimony.[7]

---

[3] *See, e.g.*, *Securities and Exchange Commission v. Honig*, 2020 WL 1150529, at *4 (Mar. 6, 2020) ("Nothing in this paragraph affects Defendant's: (i) testimonial obligations . . .").

[4] *See, e.g.*, *In the Matter of Deutsche Bank AG*, Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, at 58, https://www.cftc.gov/sites/default/files/idc/groups/public/@lrenforcementactions/documents/legalpleading/enfdeutscheorder042315.pdf ("[N]othing in this provision shall affect Respondent's (i) testimonial obligations . . . .").

[5] *See, e.g.*, USAO-Western District of North Carolina and Bank of America, N.A., Agreement, at 1, https://www.justice.gov/usao-wdnc/press-release/file/998141/download ("Nothing in this paragraph adversely affects the Bank's: (i) testimonial obligations . . .").

[6] David Spears and Monica Folch, "A Bad Enforcement Policy at FINRA," New York Law Journal (Nov. 14, 2012).

[7] *See, e.g.*, *In re Paul Tadashi Inouye*, FINRA AWC No. 2020065453101, at 5, https://www.finra.org/sites/default/files/fda_documents/2020065453101%20Paul%20Tadashi%20Inouye%20CRD%20201944879%20AWC%20DM.pdf ("Nothing in this provision affects Respondent's testimonial obligations . . . .").

### C. Courts Have Broad Powers to Remedy Unconstitutional Restrictions on the Ability to Present a Defense

Remedies for constitutional injuries must be "tailored to the injury suffered from the constitutional violation[.]" *United States v. Morrison*, 449 U.S. 361, 364 (1981). The court must "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365. But if "no other remedy will return defendants to the status quo ante," dismissal is appropriate. *Stein*, 541 F.3d at 136. The government can act to remedy the constitutional violation on its own, but the remedial action must actually be sufficient to remedy the violation. *See Thomas*, 488 F.2d at 336 (after government agents discussed potential consequences of a witness testifying, the "Government's statement that it would forego prosecution will not serve to wipe out the prejudicial effect of the event. Nothing short of complete immunity, if even that, could have relieved [the witness'] apprehension, and restored his free and voluntary choice, eliminating the prejudice.").

In crafting remedies for such injuries, courts have substantial inherent power to govern and protect their proceedings. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). For example, in *United States v. Ebrahimi*, 137 F. Supp. 3d 886 (E.D. Va. 2015), after the government requested that witnesses notify the government if contacted by the defense and allow the presence of government agents at a defense interview, the Court sent a letter to potential witnesses explaining: "[The government's requests] are not in keeping with the Court's judgment here that as a witness, you are equally available to lawyers for the defense and the Government at your own discretion….You are not required to notify the Government of contact with defense counsel. You are also not required to have a Government agent present at your interview, if you decide to consent to an interview," *id.* at 889-90. In *Peter Kieweit Sons'*, the Court ordered that

9

witnesses who declined to speak to the defense because of government pressure submit to being deposed by the defense. *Peter Kiewit Sons'*, 655 F. Supp. at 78.

### III. Argument

Defendants have the constitutionally protected right to present a defense to the government's charges, including by calling witnesses in their defense. The government's actions here raise two separate, though related, problems concerning this right. First, defendants need discovery into whether Pilgrim's has suggested its employees not speak to the defense. Depending on what this discovery reveals, a remedy may be necessary. Second, even in the absence of explicit instructions to not speak to the defense, the Pilgrim's Plea Agreement is substantially interfering with witnesses' decisions whether to talk to the defense and will interfere with their decision whether and how to testify. To remedy this violation of defendants' constitutional rights, the DOJ should stipulate that witnesses are free to speak to any party and that the DOJ will not seek to punish truthful testimony even if it contradicts the Pilgrim's Plea Agreement.

### A. Discovery into Pressure on Pilgrim's Employees Is Necessary

The uniform and similar refusal of eight Pilgrim's witnesses to speak to the defense, coupled with the pressure the DOJ has put on Pilgrim's employees through the Pilgrim's Plea Agreement, raises the distinct suspicion that Pilgrim's employees fear adverse consequences for themselves and/or their employer if they speak with the defense. The DOJ sidesteps the issue, in a carefully worded statement, claiming that "employees are free to speak with whomever they choose, *provided that those communications are consistent with court orders*." Ex. C at 2 (emphasis added).[8]

---

[8] DOJ also claims that nothing in the plea agreement "is intended, or should be construed, to encourage anything but truthfulness." Ex. C at 2. But in support of this statement, it claims that paragraph 14(b) requires Pilgrim's "to use its best efforts to secure the truthful cooperation of its current and former employees in any litigation arising from the government's investigation," Ex. C at 2, which is at best incomplete. Paragraph 13(b) requires Pilgrim's to use its "best efforts to

It would of course be inappropriate for the government to instruct or pressure witnesses not to speak to the defense. *Pinto*, 755 F.2d at 152 ("[T]he prosecution may not interfere with the free choice of a witness to speak with the defense absent a justification by the clearest and most compelling considerations.") (quotation omitted); *Troutman*, 814 F.2d at 1453-54; *Gonzalez*, 164 F.3d at 1292; *Peter Kiewit Sons' Co.*, 655 F. Supp. at 77. And the government cannot do through a cooperating witness, such as Pilgrim's, what it could not do itself. *Massiah*, 377 U.S. at 206-07; *Bennett*, 729 F.2d at 925. But it is quite possible that fear of voiding its plea agreement and the desire to please the DOJ has caused Pilgrim's to pressure its employees, however subtly, to toe the company/DOJ line. *See, e.g.*, *Stein*, 541 F.3d at 136 (settling employer's policies followed as "a direct consequence of the government's overwhelming influence"). Discovery is necessary to determine whether Pilgrim's pressured, explicitly or implicitly, its employees not to speak to the defense and, if so, whether that pressure was applied at the explicit or implicit request of the DOJ. Such discovery would reveal whether the DOJ is improperly using a cooperating corporation, Pilgrim's, to interfere with witnesses' decisions whether to speak to defense counsel and thereby interfere with defendants' rights to prepare their defenses. It is natural and understandable that Pilgrim's might respond to pressure to protect itself and to maintain favor with the DOJ, which now has tremendous leverage over it. But Pilgrim's should be required to respond to narrow, targeted discovery requests to determine whether it has suggested, explicitly or implicitly, to its employees that they not speak to the defense, and whether that is the result of pressure from the DOJ or language in the Pilgrim's Plea Agreement.

**B. The Department of Justice Should Agree Not to Punish Truthful Testimony**

---

secure the full, truthful, and continuing cooperation of the current directors, officers, and employees of the defendant and its related entities, *as may be requested by the United States*…." Pilgrim's Plea Agr. ¶ 13(b). Paragraph 14(b) is similarly limited to "request[s] of attorneys and agents of the United States" *Id.* ¶ 14(b).

Even if Pilgrim's has not instructed witnesses not to communicate with defense counsel, the Plea Agreement itself substantially interferes with witnesses' free and unfettered choice of whether and how to testify by threatening severe consequences for their employer. DOJ has created a situation where Pilgrim's employees are under intense pressure not to contradict the DOJ's version of events. Pilgrim's employees will naturally be interested in maintaining their jobs and their employer's solvency. They have also seen the DOJ bring its power to bear on their employer and coworkers and are therefore "vulnerable to suggestion and anxious not to offend the prosecutors." *Peter Kieweit Sons'*, 655 F. Supp. at 77-78 (describing the "chilling effect on witnesses" of the government's power). Knowing that their truthful testimony can be retroactively and unilaterally attributed to Pilgrim's with dramatic consequences cannot but have a chilling effect on employees' testimony, interfering with their "free and unhampered choice to testify" and "violat[ing] due process." *Henricksen*, 564 F.2d at 198.

This interference is substantial. Interference is "substantial" when the government uses "threats of prosecution" or "intimidation." *Serrano*, 406 F.3d at 1216. Here, the Pilgrim's Plea Agreement has a threat of prosecution embedded in it that taints the testimony of any Pilgrim's employee. In the classic case, the threat of prosecution is aimed directly at the testifying individual. *See, e.g.*, *Henricksen*, 564 F.2d at 198 (threat of prosecution embedded in witness' plea agreement); *Vavages*, 151 F.3d at 1192-93 (prosecution threat to withdraw plea agreement and prosecute for perjury). The only difference here is that the DOJ's threat is to prosecute the witnesses' employer rather than the witnesses themselves. This too constitutes substantial interference because the threat to prosecute one's employer can be nearly as dramatic as the threat to prosecute an individual. And it of course amounts to "intimidation."

If the government entered into a plea agreement with an individual witness that prohibited that individual from testifying on behalf of defendants on pain of having the individual's plea

12

agreement revoked, such an agreement would clearly violate defendants' constitutional rights. *Henricksen*, 564 F.3d at 198. If, instead, the government entered into a plea agreement with a corporation requiring the corporation to prohibit its employees from testifying on behalf of defendants on pain of having the corporation's plea agreement revoked, that too would clearly violate defendants' constitutional rights. *Cf. Stein*, 541 F.3d at 136. The effect here is practically the same. It would be strange indeed if the government was free to violate defendants' constitutional rights by intimidating witnesses, so long as the intimidation took the form of threatening the witnesses' employer.[9]

The Court has a wide variety of options for remedying constitutional violations. But the remedy must be "tailored to the injury suffered from the constitutional violation." *Morrison*, 449 U.S. at 364. Here, the injury is that witnesses are chilled because of the threat of severe consequences for their employer if they truthfully contradict the DOJ's story. The only way to "return defendants to the status quo ante," *Stein*, 541 F.3d at 136, is to remove this threat. That is, only a legally binding stipulation by the DOJ that it will not determine that any Pilgrim's employee's testimony was made on behalf of Pilgrim's, and that neither the employee nor Pilgrim's will suffer consequences for the testimony, can remedy the prejudice to defendants.

Moreover, there is no legitimate countervailing interest served by the threat of consequences for employees' truthful testimony. The only thing this remedy would change is that Pilgrim's

---

[9] *United States v. Brown*, 2010 WL 3359471 (S.D. Tx. Aug. 23, 2010), where the court rejected a post-trial motion to dismiss after a current employee of a company with a non-prosecution agreement had testified extensively on behalf of the defense, *id.* at *19-21, is not to the contrary. The company did not admit legal violations had occurred or any specific facts, and its agreement did not grant the government unilateral power to determine who spoke on behalf of the company. *Id.* at *20 ("Merrill Lynch's promise not to disavow responsibility for its employees' actions has no bearing on the antecedent issue of whether those actions were criminal or not. Merrill Lynch in the agreement accepted responsibility for *actions* 'giving rise to any violation,' and acknowledged that some of its employees '*may* have violated federal criminal law'…") (emphasis in original). The situation was not, as DOJ suggests, Ex. C at 3 n.1, analogous to this case.

employees would be able to testify truthfully without the threat of adverse consequences. There is no legitimate interest in undermining the judicial search for truth, as other agencies have recognized by including such assurances as a matter of course.

The Court may conclude that it lies within its inherent powers to order the government to make the necessary stipulation. But if the Court concludes that it lacks the inherent power to order this directly, there is an alternative remedy. It should grant the DOJ an opportunity to enter the necessary stipulation, and if the DOJ refuses, "in violation of the defendant's due process right, the [Court] can dismiss the charges against the defendant." *United States v. Quinn*, 728 F.3d 243, 259-60 (3d. Cir. 2013).

## CONCLUSION

For the foregoing reasons, (1) Pilgrim's should respond to discovery to determine whether it has, through its agents, officers, or employees, explicitly or implicitly instructed its employees not to speak with the defense and, if so, whether it did so at the request of the DOJ or because of the Pilgrim's Plea Agreement; (2) the DOJ should stipulate that it will not seek to punish Pilgrim's for Pilgrim's employees' truthful testimony and that any witness is free to speak to any party; and (3) Pilgrim's or the Court should send a letter to relevant employees affirming their right to speak confidentially to the defense without any requirement to disclose those communications.

Dated: July 26, 2021                                  Respectfully submitted,

s/ *Michael S. Feldberg*                              s/ *Bryan B. Lavine*
Michael S. Feldberg                                   Bryan B. Lavine
Reichman Jorgensen Lehman & Feldberg                  Troutman Pepper Hamilton Sanders LLP
LLP - New York                                        600 Peachtree Street, N. E., Suite 3000
750 Third Avenue, 24th Floor                          Atlanta, Georgia 30308
New York, New York 10017                              404-885-3170
212-381-4970                                          Fax: 404-962-6613
Fax: 212-381-4971                                     Email: bryan.lavine@troutman.com
Email: mfeldberg@reichmanjorgensen.com                *Attorney for Defendant Scott James Brady*
*Attorney for Defendant Roger Born Austin*

s/ *Richard K. Kornfeld*
Richard K. Kornfeld
Recht Kornfeld, P.C.
1600 Stout Street, Suite 1400
Denver, CO  80202
303-573-1900
Fax: 303-446-9400
Email: rick@rklawpc.com
*Attorney for Defendant Mikell Reeve Fries*

s/ *Mark A. Byrne*
Mark A. Byrne (Cal. Bar No. 116657)
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012
Email: markbyrne@byrnenixon.com
*Attorney for Defendant Jimmie Lee Little*

s/ *James A. Backstrom*
James A. Backstrom
James A. Backstrom, Counsellor at Law
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
215-864-7797
Email: jabber@backstromlaw.com
*Attorney for Defendant William Vincent Kantola*

s/ *Craig A. Gillen*
Craig A. Gillen
Gillen Withers & Lake, LLC
400 Galleria Parkway, Ste 1920
Atlanta, GA 30339
Telephone: (404) 842-9700
Facsimile: 404-842-9750
E-mail: cgillen@gwllawfirm.com
*Attorney for Defendant Gary Brian Roberts*

15

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 26, 2021, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

                                                  Michael S. Feldberg