## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No.:    20-cr-00330-RM

UNITED STATES OF AMERICA,

Plaintiff,

v.

PILGRIM'S PRIDE CORPORATION,

Defendant.

---

## PLEA AGREEMENT

---

The United States of America and Pilgrim's Pride Corporation ("defendant"), a corporation organized and existing under the laws of Delaware, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

### <u>RIGHTS OF DEFENDANT</u>

1.     The defendant understands its rights:

(a)     to be represented by an attorney;

(b)     to be charged by Indictment;

(c)     to plead not guilty to any criminal charge brought against it;

(d)     to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every

Court Exhibit 1

essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(e)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(f)     to appeal its conviction if it is found guilty; and

(g)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.     The defendant knowingly and voluntarily waives:

(a)     the rights set out in subparagraphs 1(b)-(e) above;

(b)     the right to file any appeal or collateral attack that challenges its conviction, including but not limited to any appeal or collateral attack raising any argument that (1) the statute to which it is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

(c)     the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement, regardless of how the sentence is determined by the Court.  For purposes of the waiver of appeal or collateral attack of the sentence, the sentence imposed is deemed consistent with or below the recommended sentence in Paragraph 9 even if the sentence imposed includes a term of probation

if it is otherwise consistent with or below the recommended sentence in Paragraph 9, unless the term of probation exceeds the length authorized by 18 U.S.C. § 3561(c).  This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)–(c).  Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.  Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the District of Colorado.  The Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.      The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.      Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)     From at least as early as 2012 and continuing through at least early 2017 (the "Relevant Period") Pilgrim's Pride Corporation ("defendant"), a corporation organized in Delaware and headquartered in Greeley, Colorado, was engaged in the production and sale of broiler chicken products.

(b)     At times during the Relevant Period, through at least one of its current and/or former employees, defendant participated in a conspiracy with at least one competitor engaged in the production and sale of broiler chicken products to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for certain broiler chicken products sold in the United States.

(c)     Defendant's participation in this conspiracy affected sales of broiler chicken products to KFC, including: (1) defendant's contract for the supply to KFC of dark meat and wings in 2013; (2) defendant's contract for the supply to KFC of dark meat in 2014; and (3) defendant's contract for the supply to KFC of 8-piece chicken on the bone in 2015 through 2017. Defendant's affected sales of broiler chicken products totaled at least $361 million.

(d)     During the Relevant Period, broiler chicken products sold by defendant and one or more conspirators, as well as payments for broiler chicken products, traveled in interstate commerce. The business activities of defendant and its relevant competitors, in connection with the

production and sale of broiler chicken products affected by this conduct, were within the flow of, and substantially affected, interstate trade and commerce. Acts in furtherance of the conspiracy were carried out in this District.

## ELEMENTS OF THE OFFENSE

5.      The elements of the charged offense are that:

(a)      the conspiracy described in the Information existed at or about the time alleged;

(b)      the defendant knowingly became a member of the conspiracy; and

(c)      the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

*United States v. Suntar Roofing, Inc.*, 897 F2d 469 (10th Cir. 1990); *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992).

## POSSIBLE MAXIMUM SENTENCE

6.      The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)      $100 million (15 U.S.C. § 1);

(b)      twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendant understands that:

(a)     pursuant to § 8D1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)     pursuant to U.S.S.G. § 8B1.1 or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

8.     The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553.  In determining the particular sentence to be imposed, the Court is required to consider seven factors.  One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission.  The defendant understands that the Court will consider the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in

which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue under the November 1, 2018, Guidelines Manual. The defendant understands that the Court will make Guidelines determinations by applying a standard of preponderance of the evidence. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. § 1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. § 1B1.8(b).

### SENTENCING AGREEMENT

9.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C) and subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $107,923,572, pursuant to 18 U.S.C. § 3571(d), payable in full before the fifteenth (15th) day after the date of judgment

("the recommended sentence").  The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. § 5K2.0.  The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement.  The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

      (a)      The United States and the defendant agree to recommend that the Court, in determining the Guidelines Fine Range for a corporate defendant for a violation of 15 U.S.C. § 1, apply the Chapter 8- Sentencing of Organizations guidelines, and the applicable offense guideline, §2R1.1- Antitrust Offenses, as follows:

      i.      Pursuant to U.S.S.G. §8C2.4(b) and §2R1.1(d)(1), the base fine is $72,238,000, 20% of $361,190,000, the volume of affected commerce;

      ii.      The Defendant's Culpability Score is 9 and is determined, pursuant to U.S.S.G. §8C2.5, as follows:

      1.      Base Culpability Score, U.S.S.G. §8C2.5:      5

      2.      Involvement in or Tolerance of Criminal Activity, U.S.S.G. §8C2.5(b)(1):      +5

      3.      Acceptance of Responsibility, U.S.S.G.

§8C2.5(g)(3):                                     -1

4.      Based on a Culpability Score of 9, the minimum and maximum multipliers are 1.80 to 3.60 (U.S.S.G. §8C2.6).

   iii.  The Guidelines Fine Range is $130,028,400 to $260,056,800.

(b)     The defendant understands that the Court will order it to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(c)     In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offense charged in the Information.

(d)     Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement unless the Court orders the installation of a court-imposed compliance monitor, in which case the Plea Agreement, except for subparagraph 12(b) below, will be rendered void and the defendant shall be free to withdraw its guilty plea as provided in subparagraph 12(b).

(e)     The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the

United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 11, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty plea and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. § 6A1.1. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(f)     The United States contends that had this case gone to trial, the United States would have presented evidence to prove that the gain derived from or the loss resulting from the charged offense is sufficient to justify a fine of $107,923,572, pursuant to 18 U.S.C. § 3571(d). For purposes of this plea and sentencing only, the defendant waives its rights to contest this calculation.

10.     The United States and the defendant agree that the applicable Guidelines fine range exceeds the fine contained in the recommended sentence set out in Paragraph 9 above. Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13

of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. § 8C4.1, for a downward departure from the Guidelines fine range in this case and will request that the Court impose the fine contained in the recommended sentence set out in Paragraph 9 of this Plea Agreement.

11. Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's and its related entities' cooperation and its commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

12. The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a) If the Court does not accept the recommended sentence as set forth in Paragraph 9 or if the Court orders the installation of a court-imposed compliance monitor, the United States and the defendant agree that this Plea Agreement, except for subparagraph 12(b) below, will be rendered void.

(b)     If the Court does not accept the recommended sentence, as set forth in Paragraph 9 or if the Court orders the installation of a court-imposed compliance monitor, the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)(2)(A)).  If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 15 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of signature of this Plea Agreement, whichever period is greater.

## **DEFENDANT'S COOPERATION**

13.     The defendant and its related entities will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of broiler chicken products in the United States, any federal investigation

resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding, but does not include private civil actions in which the United States has or will intervene. The defendant's related entities for purposes of this Plea Agreement are entities that the defendant directly or indirectly had a greater than 50% ownership interest in as of the date of signature of this Plea Agreement. The full, truthful, and continuing cooperation of the defendant and its related entities will include but not be limited to:

      (a)    producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendant and its related entities that are requested by the United States in connection with any Federal Proceeding; and

      (b)    using its best efforts to secure the full, truthful, and continuing cooperation of the current directors, officers, and employees of the defendant and its related entities, as may be requested by the United States, but excluding Roger Austin, Jimmie Lee Little, William Lovette, Jayson Penn, and the individuals listed in Attachment A filed under seal.

Such efforts will include, but not be limited to, making these persons available at the defendant's expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.  Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the defendant or any of its related entities as of the date of signature of this Plea Agreement.

14.     The full, truthful, and continuing cooperation of the current directors, officers, and employees of the defendant and its related entities will be subject to the procedures and protections of this paragraph, and will include, but not be limited to:

(a)     producing all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b)     making himself or herself available for interviews not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject

to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), or conspiracy to commit such offenses;

(d)    otherwise voluntarily providing the United States with any material or information not requested in (a) - (c) of this paragraph and not protected under the attorney-client privilege or work-product doctrine that he or she may have that is related to any Federal Proceeding;

(e)    when called upon to do so by the United States in connection with any Federal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

(f)    when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), and contempt (18 U.S.C. §§ 401-402);

(g)     not committing, participating in, or attempting to commit or

participate in any additional antitrust crime in violation of Title 15, United

States Code, or any acts of perjury or subornation of perjury (18 U.S.C. §§

1621-22), making a false statement or declaration (18 U.S.C. §§ 1001,

1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18

U.S.C. §§ 401-402), or conspiracy to commit such offenses; and

(h)     agreeing that, if the agreement not to prosecute him or her in

this Plea Agreement is rendered void under subparagraph 16(c), the

statute of limitations period for any Relevant Offense, as defined in

subparagraph 16(a), will be tolled as to him or her for the period between

the date of signature of this Plea Agreement and six (6) months after the

date that the United States gave notice of its intent to void its obligations

to that person under this Plea Agreement.

This Paragraph 14 does not apply to Roger Austin, Jimmie Lee Little, William

Lovette, Jayson Penn, and the individuals listed in Attachment A filed under seal,

regardless of their employment status, or to any former director, officer, or

employee of the defendant or its related entities.

## **GOVERNMENT'S AGREEMENT**

15.     Subject to the full, truthful, and continuing cooperation of the

defendant and its related entities, as defined in Paragraph 13 of this Plea

Agreement, and upon the Court's acceptance of the guilty plea called for by this

Plea Agreement and the imposition of the recommended sentence, the United

States agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the sale of broiler chicken products in the United States. The nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses, the facts concerning which the United States is currently unaware; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

16. The United States agrees to the following:

(a) Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in subparagraph 16(c), the United States agrees that it will not bring criminal charges against any current director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its related entities that was undertaken in furtherance of an antitrust conspiracy involving the sale of broiler chicken products in the United States ("Relevant Offense"), except that the

17

protections granted in this paragraph do not apply to Roger Austin, Jimmie Lee Little, William Lovette, Jayson Penn, and the individuals listed in Attachment A filed under seal, regardless of their employment status, or to any former director, officer, or employee of the defendant or its related entities;

(b)      Should the United States determine that any current director, officer, or employee of the defendant or its related entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)      If any person requested to provide cooperation under subparagraph 16(b) fails to comply fully with his or her obligations under Paragraph 14, then the terms of this Plea Agreement as they pertain to that person and the agreement not to prosecute that person granted in this Plea Agreement will be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any Relevant Offense;

(d)      Except as provided in subparagraph 16(e), information provided by a person described in subparagraph 16(b) to the United States

18

under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses;

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in subparagraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case will be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses, the facts concerning which the United States is currently unaware; and

(g)     Documents provided under subparagraphs 13(a) and 14(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its related entities.

17.     The defendant understands that it may be subject to suspension or debarment action by state or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take.  However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the defendant and its related entities as a matter for that agency to consider before determining what action, if any, to take.  The defendant nevertheless affirms that it wants to plead guilty regardless of any suspension or debarment consequences of its plea.

## **REPRESENTATION BY COUNSEL**

18.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation.  The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

## VOLUNTARY PLEA

19.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachment A.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

20.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its related entities have failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 13 of this Plea Agreement, or have otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its related entities will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its related

entities for any offense referred to in Paragraph 15 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21.     The defendant understands and agrees that in any further prosecution of it or any of its related entities resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's or any of its related entities' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its related entities, or its current directors, officers, or employees to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its related entities. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## PUBLIC STATEMENTS BY THE DEFENDANT

22.     The defendant expressly agrees that it will not, through current or future attorneys, directors, officers, employees, agents, or any other person authorized by the defendant to speak on its behalf, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the defendant set forth above or the facts contained in the Factual Basis section of

this Plea Agreement.  Any such contradictory statement will, subject to cure

rights of the defendant described below, constitute a violation of this Plea

Agreement, and the defendant thereafter will be subject to prosecution as set

forth in Paragraphs 20 – 21 of this Plea Agreement.  The decision whether any

public statement by any such person contradicting the facts contained in the

Factual Basis section of this Plea Agreement was made on behalf of the

defendant for the purpose of determining whether it has violated this Plea

Agreement will be at the sole discretion of the United States.  If the United States

determines that a public statement by any such person contradicts the facts

contained in the Factual Basis section of this Plea Agreement, the United States

shall so notify the defendant, and the defendant may avoid a violation of this Plea

Agreement by publicly repudiating such statement(s) within five (5) business

days after notification.  The defendant will be permitted to raise defenses and to

assert affirmative claims in other proceedings relating to the matters set forth in

the Factual Basis section of this Plea Agreement provided that such defenses

and claims do not contradict, in whole or in part, the facts contained in the

Factual Basis section of this Plea Agreement.  This paragraph does not apply to

any statement made by any current or future director, officer, employee, or agent

of the defendant in the course of any criminal, regulatory, or civil case initiated

against such individual, unless such individual is speaking on behalf of the

defendant.  This paragraph does not affect the obligation of any person, who is

providing cooperation pursuant to Paragraph 14 of this Plea Agreement, to

respond fully and truthfully to all inquiries of the United States without falsely implicating any person or intentionally withholding information and to testify fully and truthfully as required by Paragraph 14 of this Plea Agreement.

## ENTIRETY OF AGREEMENT

23.     This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.     A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: <u>February 16, 2021</u>

BY: _____
    Fabio Sandri
    Chief Executive Officer
    Pilgrim's Pride Corporation

BY: _____
    Marc E. Kasowitz
    Kevin J. Arquit
    Daniel J. Fetterman
    Kenneth R. David

    Kasowitz Benson Torres LLP
    1633 Broadway
    New York, New York 10019
    Tel: (212) 506-1700
    mkasowitz@kasowitz.com
    karquit@kasowitz.com
    dfetterman@kasowitz.com
    kdavid@kasowitz.com

    Counsel for Pilgrim's Pride
    Corporation

Respectfully submitted,

BY: _____
    Justin P. Murphy
    Jonathan A. Clow
    Jillian M. Rogowski
    Trial Attorneys
    U.S. Department of Justice
    Antitrust Division
    450 Fifth Street, N.W.
    Washington, D.C. 20530
    Tel: (202) 598-8670
    Justin.Murphy@usdoj.gov