IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>JAYSON JEFFREY PENN, *et al.*<br>    Defendants. | No. 20-cr-00152-PAB |

**DEFENDANTS' JOINT OPPOSITION TO THE GOVERNMENT'S UNTIMELY MOTION FOR LEAVE TO OFFER ADDITIONAL EXHIBITS INTO THE *JAMES* HEARING RECORD**

This Court granted the defendants' motion for a *James* hearing on August 4, 2021. (Doc. 326). The Government's *James* proffer was due August 13, 2021, and the hearing began September 2, 2021. The Court allowed the Government to include additional evidence in its *James* submission after the Government had completed the direct examination of its sole witness. (Doc. 448; Tr. 145:16-18). The evidentiary hearing ended on September 8, 2021, with Mr. Blake's cross-examination being terminated before it had concluded, not because the cross-examination was improper or cumulative, but to give the Government more time for a redirect examination of its witness than Mr. Blake had to cross-examine. (Tr. 270:11-24). The defendants' post-hearing briefs were filed pursuant to the Court's order on September 13, 2021, and the Government's post-hearing brief was filed September 16, 2021. On September 19, 2021, after the hearing was closed and all post-hearing briefs filed, the Government now seeks leave to introduce over 500 pages of additional exhibits containing hearsay statements.

There is no excuse for the delay, and the Government offers none. The Government argues the defendants will suffer no prejudice, but if its motion were granted, absent re-opening the

1

hearing, the defendants will be deprived entirely of the opportunity to cross-examine Agent Taylor about these exhibits, despite their constitutional right to confront witnesses against them. The extreme untimeliness of the Government's motion is only made worse by the evidentiary shortcomings of its latest proffer. Even if the Court allowed the Government to introduce 500 pages of additional exhibits without a sponsoring witness and without cross-examination, the exhibits fall well short of meeting the standard for admissibility under Rule 801(d)(2)(E). The Court should deny the motion or, in the alternative, re-open the evidentiary hearing and require the Government to seek to introduce these exhibits through a sponsoring witness, hear and rule on objections to admissibility for purposes of the *James* hearing, and allow cross-examination.

I.     THE GOVERNMENT'S MOTION IS UNTIMELY.

The seven new exhibits the Government offers, which span more than 500 pages in total, have been in the Government's possession since at least May of this year, and the Government had every opportunity to include them in its submissions before (or at) the *James* hearing. The Government offers no explanation—none—as to why the exhibits it now proffers could not have been offered for admission at the evidentiary hearing the Court conducted over a two-day period. Indeed, the Court has already permitted the Government to amend its *James* proffer, including by adding new exhibits, where the Government claimed such amendments were necessary to correct errors and make minor, non-substantive changes. (Tr. 145:17) (allowing the Government to add documents specifically because they were "purport[ed] to be corrections" that were "non-substantive"). The same cannot be said of the Government's latest motion. The Government does not and cannot claim the seven additional documents it seeks belatedly to introduce are anything other than an untimely request—*after* it has had the opportunity to read the defendants' post-

2

hearing briefs—to materially change its submission.

Allowing the Government substantively to alter its *James* submission now would cause extreme prejudice to all of the defendants but particularly to Mr. Blake, as six of the seven newly offered exhibits are relevant to him. This stands in stark contrast to the hearing itself, where only 16 of the 333 statements offered were documents sent or received by Mr. Blake or documents that mentioned him. The hearing involved lengthy testimony by the Government's lead case agent, Special Agent LaNard Taylor. While Mr. Blake's cross-examination was truncated, each defendant was given some opportunity to cross-examine Agent Taylor about the statements the Government sought to introduce, and several, including Mr. Blake, introduced additional exhibits into evidence to counter the Government's misleading, incomplete narrative. (*E.g.*, Exs. A-004, A-013).

The Court allowed the hearing to proceed with those limits on cross-examination, in part, because "each defendant had an opportunity to file a brief" responding to the documents the Government sought to introduce. (Tr. 148:7-22). By waiting until the hearing and all briefing has concluded to offer these latest statements into evidence, the Government has deprived the defendants of the opportunity for briefing and cross-examination: they cannot develop the factual record related to the additional documents the Government has identified, to evaluate whether they satisfy the elements of Rule 801(d)(2)(E); they cannot fully brief legal arguments about the admissibility of the statements under Rule 801(d)(2)(E); and, most importantly, they cannot cross-examine Agent Taylor or any other sponsoring witness about the admissibility of the statements.[1]

---

[1] For the first time, the Government in its motion now contends that it views Dale Kelly, of distributor Kelly's Foods and to whom some of the newly proffered exhibits relate, "as a co-conspirator." (Doc. 501 at 2 n.1). But other than that statement, in a footnote in its brief, the

The Government admits that it has had the documents in its possession since at least May 2021, and yet it has not offered *any* excuse for the delay. (Doc. 501). That failure alone requires denial of the motion. *See May v. Okla. Dep't of Corr.*, 215 F.3d 1337, at *2 (10th Cir. 2000) (extensions of time not required absent good cause); *Spells v. Stencil*, 2019 WL 9197863, at *1 (D. Colo. July 30, 2019) (untimely motion denied where movant "provided no explanation as to why it was filed beyond the deadline"). The need for denial is underscored in this case, however, because of the severe prejudice the defendants would suffer from the admission of additional hearsay statements against them, when they have had no opportunity to confront any witness about these statements. The very purpose of a *James* hearing is to afford a defendant an evidentiary hearing prior to the admission of hearsay statements against him under Rule 801(d)(2)(E). Granting the Government's motion would effectively deny Mr. Blake and the other defendants a *James* hearing with respect to 500 pages of hearsay statements. The Court should deny the Government's fourth bite at the apple because there is no justification for such an untimely, prejudicial modification to the Government's submission.

---

Government has not offered a shred of evidence to support this belated assertion that Mr. Kelly was a member of the charged conspiracy. The identification of Dale Kelly as a co-conspirator means the Government, in its latest motion, not only seeks to introduce *exhibits* without affording the defendants any opportunity to cross-examine Agent Taylor, but also to identify additional alleged co-conspirators with no opportunity to cross-examine him on issues such as when Mr. Kelly allegedly agreed to join a conspiracy, among *suppliers*, sharing their objective to fix prices and rig bids of broiler chicken products.

**II.     THE GOVERNMENT HAS NOT MET ITS BURDEN TO PROVE THE ADDITIONAL EXHIBITS ARE ADMISSIBLE UNDER RULE 801(D)(2)(E).**

The Court should also deny the Government's untimely request because, notwithstanding the inexcusable delay for the Government's filing, the additional hearsay statements the Government now seeks to include do not satisfy Rule 801(d)(2)(E).

For the statements to be admissible under Rule 801(d)(2)(E), the Government must establish, by a preponderance of the evidence, "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Hall*, 473 F.3d 1295, 1302–03 (10th Cir. 2007) (quotations and citations omitted). As discussed in prior submissions, the Government has failed to establish that Mr. Blake knowingly joined a conspiracy to rig bids and fix prices as charged in the Superseding Indictment. (Doc. 399 at 2-6; Doc. 465 at 1-5).

**A.     The Government Has Failed To Establish The Identity Of The Proffered Declarants, Much Less That Those Declarants Were Members Of The Conspiracy When Their Statements Were Made.**

In addition, the Government has not met its burden to establish that the statements in this untimely proffer were made by members of the conspiracy. For six of the seven new documents, the Government has failed to identify a declarant at all, even though "[k]nowledge of the identity of the declarant is essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy." *United States v. Mouzin*, 785 F.2d 682, 692–93 (9th Cir. 1986).

All but one of the Government's new documents consist of hardcopy folders that contain handwritten notes. (Doc. 501 at 1-4). The Government represents in its brief that: (1) these documents were found in George's files; and (2) there is evidence *outside the record* that

5

establishes Mr. Blake authored the handwritten notes in these documents. (Doc. 501 at 5 & n.4). The Government has admitted no evidence, or even proffered evidence, that the statements were made by Mr. Blake—if they are even "statements" at all. *See* Fed. R. Evid. 801 ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person *intended* it as an assertion.").[2] Instead, the Government suggests it will be able to establish this at trial (Doc. 501 at 5) ("the government expects to establish at trial that defendant Blake wrote the notes"). This, again, seeks to negate the very purpose of a *James* hearing to require that the Government provide an independent evidentiary basis for the admission of hearsay statements under Rule 801(d)(2)(E) *in advance of trial*.[3]

### B. The Government Has Failed To Establish That The Statements Were Made In Furtherance Of The Conspiracy.

Further, the Government has failed to establish that the additional hearsay statements are "in furtherance of" the conspiracy alleged. The pricing information identified by the Government in these new documents is monthly *current* or *historical* prices. It does not reflect bids for future contracts. (Doc. 501 at 5-6). There is, of course, nothing impermissible about one competitor

---

[2] Without evidence of who authored the handwritten notes on some of the documents the Government now seeks to introduce, it is difficult to know if they were intended as assertions.

[3] The Government seems to think it has done more than enough to meet its burden, asserting that the mere fact "the notes were *contained in George's files* is enough to establish that, *regardless of the notes' author, the declarant was a member of the conspiracy*." (Doc. 501 at 5) (emphasis added). By that logic, every company-produced document would be admissible under Rule 801(d)(2)(E) if any one of its employees has been charged with a conspiracy, regardless of who authored the document or made the statements contained in it. That is a remarkable assertion— one for which the Government identifies no authority and that is at odds with the principle that courts should be "reluctant" to admit evidence under Rule 801(d)(2)(E), given "the potential for prejudice arising from the unnecessary admission" of hearsay statements under that exception. *See United States v. Avila*, 2017 WL 5989192, at *2 (D. Colo. Dec. 4, 2017). At a bare minimum, the Court should not accept such a novel proposition absent the receipt of full briefing on the issue.

knowing what other competitors are currently charging or have charged in the past and using that information to make its own independent decisions on what to bid for future contracts. The Government's motion acknowledges as much: The Government admits that proposed Exhibit 2-334 is a compilation of then-current prices, not proposed bids for future business; the Government argues that Pilgrim's used the information to make its own calculation of what it needed to propose to KFC to pursue its independent strategy of being the price leader. (Doc. 501 at 5-6). That is the opposite of price-fixing. And if the Government had timely included this document on its *James* log, the defendants would have had the opportunity to develop that point in their briefing and cross-examination of Agent Taylor.

The Government has offered no evidentiary support for its supposition that current or past prices were used in furtherance of the alleged conspiracy to rig bids for future contracts. The most the Government could muster at the evidentiary hearing was Agent Taylor's testimony, on redirect, that pricing information *could* be used to determine future bids or serve as an enforcement mechanism:

> Q. Why would it be in furtherance of the conspiracy after the collusion has already occurred for competitors then to see each other's current period pricing going forward?
> A. Well, at least one part of it was so they could know that each of the suppliers was holding up their end of the bargain and they were at the prices where they said they were. Again, I don't know every single reason why they would do that, but I believe that's at least one of the parts of it.

7

> Q. Okay. Were there other reasons possibly?
>
> A. Sure, there is possibly other reasons.

(Tr. 280:12-21; Doc. 501 at 5-6). The Government introduced no evidence at the hearing regarding a single example of such information actually being used to further the conspiracy. And it certainly adduced no evidence that the specific hearsay statements it now seeks belatedly to introduce were made in furtherance of the alleged conspiracy. There is nothing inherently wrong with tracking competitors' current or past prices that would somehow make the hearsay statements themselves evidence that they were used in furtherance of the bid-rigging conspiracy alleged, even if the Government *could* rely solely on the statements themselves and was not required, as it is, to introduce evidence independent of the statements to satisfy Rule 801(d)(2)(E).

## **CONCLUSION**

The Court should deny the Government's untimely motion for leave, after the conclusion of the *James* hearing, to introduce under Rule 801(d)(2)(E) additional hearsay statements it has not previously identified. The motion is untimely and would cause prejudice to all defendants, particularly to Mr. Blake, who would be deprived of any opportunity to confront newly proffered evidence that dramatically changes the body of hearsay statements the Government seeks to introduce against him. Further, the Government has failed on the merits; it has not made the threshold showing required for admissibility under Rule 801(d)(2)(E). The Government's motion should be denied. Alternatively, the Court should reopen the *James* hearing to allow the Government to seek to introduce these newly identified statements through a sponsoring witness, hear and rule on objections to admissibility for purposes of the *James* hearing, and allow the defendants to cross-examine the Government's witness about the additions it has proposed and

8

potentially introduce additional exhibits for the defense, to counter any misleading or incomplete narratives these additions suggest.

Respectfully submitted,

*s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP
Attorney for Ric Blake
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

*s/ Wendy L. Johnson*
Wendy L. Johnson
RMP LLP
Attorney for Ric Blake
5519 Hackett St., Suite 300
Springdale, AR 72762
(479) 439-2705
wjohnson@rmp.law

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Elizabeth Prewitt*
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

*s/ James A. Backstrom*
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*s/ Mark A. Byrne*
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  September 20, 2021           *s/ Wendy L. Johnson*
                                                                    Wendy L. Johnson