IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

## ORDER

This matter comes before the Court on the United States' Motion for Pre-Trial Ruling Regarding Authentication of Evidence Pursuant to Federal Rules of Evidence 902(11) and 902(13) [Docket No. 622] and the United States' Motion for Pre-Trial Ruling Regarding Authentication of Evidence Pursuant to Federal Rules of Evidence 902(11), 902(13), and 902(14) [Docket No. 623], both filed on October 11, 2021.[1] Defendants filed a response. Docket No. 643. On October 18, 2021, the government filed a motion for leave to supplement its motions regarding authentication of evidence,

---

[1] On October 1, 2021, the government filed a notice regarding its intent to use self-authenticating evidence pursuant to Rules 902(11), 902(13), and 902(14). Docket No. 546. On October 5, 2021, defendants filed an objection. Docket No. 566.

Docket No. 653, wherein it provided a "table mapping each certification of authenticity to a corresponding exhibit on the government's exhibit list," in case "the Court prefer[red] to rule on authenticity for the subset of the documents mentioned in each certification, rather than the complete set of certified documents as sought in ECF 622-623." Docket No. 653-1 at 3.

Defendants oppose to the government's intent to use self-authenticating evidence, arguing that the government has not provided them with a fair opportunity to challenge the certifications because the government filed its notice to self-authenticate millions of documents 25 days before trial and the various certifications are signed by individuals who are not qualified. Docket No. 566 at 1-2. Under Fed. R. Evid. 902:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
> . . . .
>
> (11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.
>
> . . . .
>
> (13) Certified Records Generated by an Electronic Process or System. A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).
>
> (14) Certified Data Copied from an Electronic Device, Storage Medium, or File. Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a

certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12).  The proponent also must meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902(11), (13)-(14).

The government intends to use certificates of authenticity for documents from the following businesses:

**1. Electronic written communications, contracts, and other business documents**
- Chick-fil-A Inc.
- Church's Chicken/Cajun Operating Company Claxton Poultry Farms
- George's Inc.
- Golden Corral Corporation
- Koch Foods, Inc.
- Mar-Jac Poultry Inc.
- Norman W. Fries, Inc. d/b/a Claxton Poultry Farms
- O.K. Foods, Inc.
- Pilgrim's Pride
- Restaurant Supply Chain Solutions, LLC ("RSCS")
- Supply Management Services, Inc. ("SMS")
- Sysco Corporation
- Tyson Foods, Inc.
- Case Farms, LLC

**2. Toll records**
- AT&T Inc.
- CenturyLink Inc.
- Cellular South Inc. ("C Spire")
- Charter Communications Inc.
- Comcast Corp.
- T-Mobile US Inc.
- Verizon/Cellco Partnership d/b/a Verizon Wireless
- Verizon Business
- Windstream

**3. Extractions of electronic devices**
- FBI Computer Analysis Response Team
- Consilio
- Digital Discovery
- ELIJAH

- FTI Consulting, Inc.
- TransPerfect Legal Solutions

Docket No. 546 at 6-7; Docket No. 622 at 9. Defendants do not object to the second and third categories, toll records and extractions of electronic devices. *See* Docket No. 566 at 2 n.1. Defendants raise a general argument that the notice is untimely, as well as specific arguments with respect to each of the certifications in category one. *Id*. at 3-14.

The government obtained documents from grand jury subpoenas as part of its investigation in this case. Docket No. 622 at 2. The government has produced the records to defendants. *Id.* The documents produced pursuant to grand jury subpoenas were accompanied by certifications under Rules 902(11) and 902(13). *Id.*

**I. Timeliness**

Defendants argue that the government's notice pursuant to Rule 902 is untimely because the government informed defendants of its intent to self-authenticate millions of documents 25 days before trial. Docket No. 566 at 2. The government, however, states that it first sent Rule 902 certifications and draft authenticity stipulations to defendants on September 13, 2021, but defendants declined to stipulate because the draft stipulations covered millions of documents. Docket No. 622 at 6. The government argues that it is the number of certifications, not the number of documents covered by the certifications, that is most relevant to whether defendants received a fair opportunity to challenge the certifications. *Id.* The Court agrees.

First, defendants are not contesting the bulk of the certifications. As a result, there are approximately 28 certifications at issue.[2] Second, the government is not attempting to admit the documents, but rather is seeking a ruling, pursuant to Rule 902(11) or 902(13), that the transmittal data and the content of any communication, such as an email, are authentic. *See* Docket No. 622 at 2 ("The contents of the communication should be deemed authentic under Rule 902(13), and their admissibility will be determined on a case-by-case basis, depending on whether they meet a hearsay exclusion or exception."). As a result, review of the underlying documents is far less relevant than review of the certifications themselves. Defendants have had since September 13 to review the certifications and have had the underlying documents for many months. Therefore, the Court finds that the government has met the notice requirement.

## II. AUTHENTICITY

### A.  Fed. R. Evid. 902(11)

The government argues that "transmittal data" related to the communication can be found to be authentic under Rule 902(11). Docket No. 622 at 2-3. By "transmittal data" the government means "facts 'that communications generally took place between particular accounts, at particular times, on particular dates.'" *Id.* at 4 (citing *United States v. Edwards*, 2019 WL 5196614, at *11 (D. Kan. Oct. 15, 2019)). It is not clear what the government means by "particular accounts," *see United States v. Blechman*,

---

[2] Defendants objection only identifies 23 certifications, *see* Docket No. 566 at 4-14, but the government's motion identifies additional certifications received after it filed its notice that are similar to certifications defendants objected to. *See* Docket No. 622 at 9 n.10.

657 F.3d 1052, 1062-1066 (10th Cir. 2011) (discussing identity of person using online account), a term not defined in *Edwards*. However, the government goes further and suggests that the documents that it seeks to authenticate pursuant to Rule 902(11) are "business records" under Rule 803(6) and that the "contents of the communication[s] should be deemed authentic under Rule 902(13)." Docket No. 622 at 2.

Rule 902(11) indicates that a document can be self-authenticating if it "meets the requirements of Rule 803(6)(A)-(C), as shown by the certification of the custodian or another qualified person." Fed. R. Evid. 902(11). Rule 803(6) states that:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> (6) Records of a regularly conducted activity. A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803. The Tenth Circuit has noted that the "essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information. If any person in the process is not acting in the regular course of business, then an essential link in the

6

trustworthiness chain fails."[3] *United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008) (internal quotation marks and citations omitted); *see also United States v. Snyder*, 787 F.2d 1429, 1433-34 (10th Cir. 1986) ("The business records exception is based on a presumption of accuracy, accorded because the information is part of a regularly conducted activity, kept by those trained in the habits of precision, and customarily checked for correctness, and because of the accuracy demanded in the conduct of the nation's business. The reason underlying the business records exception fails, however, if any of the participants is outside the pattern of regularity of activity." (citation and internal quotation marks omitted)). When these fundamental principles of the business records exception are applied to emails kept on a company server, authentication under Rule 902(11) becomes challenging.

The discussion about authentication of Facebook chats in *United States v. Browne*, 834 F.3d 403, 434-36 (3d Cir. 2016), is illustrative. The defendant in *Browne*

---

[3] In 2014, Fed. R. Evid. 803(6) was amended to clarify that "if the proponent has established the stated requirements of the exception--regular business with regularly kept record, source with personal knowledge, record made timely, and foundation testimony or certification--then the burden is on the opponent to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6) advisory committee's note to 2014 amendment. The Tenth Circuit has continued to cite *Ary* and state that Rule 803(6) requires that the records are based on the personal knowledge of the author or of a person who had a business duty to submit accurate information. *See In re Kim*, 809 F. App'x 527, 540 (10th Cir. 2020) (unpublished) ("[B]usiness records are admissible despite their hearsay nature if the records' custodian, or another qualified witness, testifies the records . . . (3) were based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) are not otherwise untrustworthy." (quoting *United States v. Irvin*, 682 F.3d 1254, 1261 (10th Cir. 2012), *citing Ary*, 518 F.3d at 786)). Accordingly, the Court finds the 2014 amendment does not change the requirement that each person in the chain of information must be under a business duty to provide accurate information.

7

was convicted of child pornography and other sexual offenses. *Id*. at 427. The defendant appealed on the basis that Facebook "chat logs," containing messages exchanged between an email account that he had access to and various minor victims, were not properly authenticated pursuant to Rule 902(11). *Id.* Facebook provided five sets of chats and a certificate of authenticity executed by its records custodian. *Id*. at 428. "The certificate stated, in accordance with Rule 902(11) of the Federal Rules of Evidence, that the records that Facebook had produced for the named accounts met the business records requirements of Rule 803(6)(A)-(C). Tracking the language of Rule 803(6), the custodian certified that the records 'were made and kept by the automated systems of Facebook in the course of regularly conducted activity as a regular practice of Facebook . . . [and] were made at or near the time the information was transmitted by the Facebook user.'" *Id*. at 429. Despite the fact that the custodian certified the records pursuant to Rule 902(11) and the district court found them to be authentic as a result, the Third Circuit found that their authentication was improper. First, the court noted that the "Government's theory of self-authentication . . . is predicated on a misunderstanding of the business records exception." *Id.* at 434-35. Similar to the Tenth Circuit's explanations in *Ary* and *Snyder*, the court noted that "Rule 803(6) is designed to capture records that are likely accurate and reliable in content, as demonstrated by the trustworthiness of the underlying sources of information and the process by which and purposes for which that information is recorded." *Id*. at 435. Applying this principle to the facts, the court noted that

> Facebook does not purport to verify or rely on the substantive contents of
> the communications in the course of its business. At most, the records

> custodian employed by the social media platform can attest to the accuracy of only certain aspects of the communications exchanged over that platform, that is, confirmation that the depicted communications took place between certain Facebook accounts, on particular dates, or at particular times. This is no more sufficient to confirm the accuracy or reliability of the contents of the Facebook chats than a postal receipt would be to attest to the accuracy or reliability of the contents of the enclosed mailed letter.

*Id*. at 410-11. The court held that, "considered in their entirety, the Facebook records are not business records under Rule 803(6) and thus cannot be authenticated by way of Rule 902(11)."[4]  *Id*. at 436.

The Court finds the reasoning of *Browne* persuasive concerning emails where the Rule 902(11) certification either disclaims knowledge regarding the accuracy of the emails' contents or where the certification is otherwise proper, but there is no basis to believe that the person signing the certification knows whether "each actor in the chain of information is under a business duty or compulsion to provide accurate information," *Ary*, 518 F.3d at 787, in the body of the emails. The government has not provided the documents to the Court and thus the Court is unable to review even a selected portion of the documents that the government wants the Court to authenticate. However, based on the documents that the government submitted to the Court as part of its *James* log, which documents are mostly drawn from the same source, i.e. emails produced to the government from chicken suppliers, the Court finds that the emails bear no indicia of accuracy regarding their content within the meaning of the business

---

[4] The court noted that, if the government had only attempted to authenticate technical information such as timestamps and account information, there would have been a better analogy to the authentication of bank records, which the Third Circuit had allowed under Rules 902(11) and 803(6). *Browne*, 834 F.3d at 436.

rule exception. Instead, they consist of typical written conversations between two or more people in the context of running a business. While such conversations may be necessary to the conduct of business and while their frequency may be regular, the content of the emails varies and does not contain information on which the business relies because that content is accurate, as would a bank, for example, in relying upon its deposit records. Therefore, regarding emails that the government seeks to authenticate, the Court will deny authentication via Rule 902(11).[5]

### B.  Fed. R. Evid. 902(13)

The government also argues that the contents of communications "should be deemed authentic under Rule 902(13), and their admissibility will be determined on a case-by-case basis, depending on whether they are relevant and meet a hearsay exclusion or exception." Docket No. 622 at 3. Rule 902(13) states:

> (13) Certified Records Generated by an Electronic Process or System.  A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12).  The proponent must also meet the notice requirements of Rule 902(11).

A certification pursuant to Rule 902(13) must meet the certification requirements of Rule 902(11) or 902(12), but there is no requirement that it meet the provisions of Rule 803(6). Fed. R. Evid. 902(13) advisory committee's note to 2017 amendment ("The reference to the 'certification requirements of Rule 902(11) or (12)' is only to the procedural requirements for a valid certification.  There is no intent to require, or permit,

---

[5] The Court will also deny authentication under Rule 902(11) for non-emails because the government has not provided the Court with these documents and the Court's ruling could vary based on the nature of the document.

a certification under this Rule to prove the requirements of Rule 803(6)."). The advisory committee's note offers an example of when a Rule 902(13) certification would be appropriate: a plaintiff in a defamation case offers a printout of a webpage containing the defamatory statement. *Id.* A certification by a qualified person that complies with 902(13) would state how the webpage was retrieved. *Id.* This would be sufficient to establish that the webpage was authentic, but the defendant would remain free to object that the statement on the webpage was not written by the defendant. *Id.* This would also apply in the analogous situation of a "certification authenticating a computer output, such as a spreadsheet"; the certificate would authenticate that the spreadsheet came from the computer, but not the accuracy of the spreadsheet. *Id.*; *see also United States v. Bondars*, 2018 WL 9755074, at *2 (E.D. Va. Aug. 20, 2018) (finding that certification of "Wayback Machine" screenshots of webpage met the requirements of Rule 902(13)).

The Court rejects the government's argument that the contents of communications can be deemed authentic pursuant to Rule 902(13). *See* Docket No. 622 at 3. The government does not explain what it means by saying that the "contents of the communication" are authentic,[6] *see id.*, and the government cites no caselaw supporting this argument. In *Edwards*, 2019 WL 5196614, at *11, the court granted the government's motion to admit financial records as business records, but denied the motion without prejudice with respect to emails. The court noted that "a custodian

---

[6] The government may simply mean that the emails are true copies, which does not seem to be disputed. But the government does not cite any case that has made a selective certification of that fact in regard to emails. In any event, such a selective certification would not get the government very far in terms of admitting the emails.

certificate will not suffice for the government to authenticate any online communication's substantive content." *Id.*

For the following reasons, the Court also rejects any argument that the government can use the certificates to authenticate the "transmittal data" under Rule 902(13). As noted above, by "transmittal data" the government means "facts 'that communications generally took place between particular accounts, at particular times, on particular dates.'" Docket 622 at 4 (citing *Edwards*, 2019 WL 5196614, at *11). The government has not attached the emails in question, but assuming that emails submitted as part of the *James* hearing are representative, the emails do not contain account identifiers or computer-generated timestamps. Rather, they simply indicated the name of the person sending the email, the recipients of the email, and the date of the email. Assuming that, by "transmittal data," the government means "to," "from," and date information on the face of an email, that information cannot be the subject of a proper 902(13) certification because the certifications supplied by the companies, on which the government relies, do not identify which email accounts are accounts of the company and to whom those accounts are assigned. Moreover, for emails sent to or received from accounts outside of the company, the certifications do not purport to deem as accurate the names associated with those accounts. In *Browne*, the Court found a certificate that purported only to authenticate that communications took place between named Facebook accounts insufficient to self-authenticate records because the relevance of the records hinged on authorship. 834 F.3d at 434. Thus, assuming that the government is asking the Court to rule that certain emails, whose "transmittal data" consists of the "to," "from," and date on the face of the email, are self-

authenticating, the Court finds that the certifications are insufficient under Rule 902(13).

The Court will deny authentication of any emails that the government seeks to authenticate under Rules 902(11) and 902(13).  As for non-email records, the Court does not have sufficient information to rule on their authenticity.  The government has not described or supplied the records at issue, and the Court is unable to evaluate the sufficiency of the certifications as to them.  *See United States v. Jeffries*, 2011 WL 13186655, at *4 (E.D. Tenn. March. 24, 2011) (reserving ruling on self-authentication under Rule 902(11) where the Court had insufficient information to conclude whether the document in question was a business record); *United States v. Wollweber*, 2019 WL 3017123, at *3 (D.N.M. July 10, 2019) (reserving ruling on the admissibility of documents the government sought to admit under Rule 803(6) because the documents were not in the evidentiary record and the government did not identify the purported hearsay statements or discuss their probative value).  Accordingly, the Court will deny the government's motion for a pre-trial ruling on the authentication of evidence under Fed. R. Evid. 902(11) and 902(13) [Docket No. 622].

### III.  Confrontation Clause

Defendants implicitly acknowledge that the custodial certifications do not violate the Confrontation Clause.  The Tenth Circuit "agree[s] with other circuits who have held that certificates of authenticity presented under Rule 902(11) are not testimonial." *United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir. 2011).  Accordingly, there is no Confrontation Clause issue regarding the certifications.

## IV. Docket No. 623

The government filed a motion for a pretrial order regarding authentication of Rule 902(11), (13), and (14) evidence to which defendants did not object. Docket No. 623. Specifically, the government moves the Court to authenticate toll records and extractions from devices. *Id.* at 1; *see* Docket No. 566 at 2 n.1 ("Defendants do not object to the certifications related to toll records and extractions of electronic devices."). The government also asks the Court to find that the records are business records and therefore admissible under the business records exception to hearsay. Docket No. 623 at 4-5. The Court finds that certificates of authenticity are sufficient to authenticate the toll records and device extractions, *see United States v. Jenkins*, 540 F. App'x 893, 900 (10th Cir. 2014) (unpublished) (finding that telephone records fell within the business records exception to the hearsay rule), but that there is no need to rule on the admissibility of the documents under the business records exception to hearsay.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the United States' Motion for Pre-Trial Ruling Regarding Authentication of Evidence Pursuant to Federal Rules of Evidence Pursuant to 902(11) and 902(13) [Docket No. 622] is **DENIED**. It is further

**ORDERED** that the United States' Motion for Pre-Trial Ruling Regarding Authentication of Evidence Pursuant to Federal Rules of Evidence Pursuant to 902(11), 902(13), and 902(14) [Docket No. 623] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that the Government's Motion for Leave to Supplement its Motions Regarding Authentication Evidence [Docket No. 653] is **GRANTED**.

DATED October 19, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge