IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

      Defendants.

## DEFENDANTS' JOINT MOTION SEEKING A MODIFIED SUBSTANTIVE PRELIMINARY JURY INSTRUCTION

Defendants, by and through undersigned counsel, respectfully submit this Joint Motion Seeking A Modified Substantive Preliminary Jury Instruction.

### INTRODUCTION AND BACKGROUND

On October 7, 2021, the Court agreed that a preliminary jury instruction would help orient the jury throughout the course of this trial and provided the following instruction setting forth the elements of a Sherman Act violation:

> Each defendant is charged in the indictment with a violation of 15 U.S.C. § 1. This law makes it a crime to restrain trade. The indictment charges the defendants with

> conspiring to rig bids and fix prices in the broiler-chicken industry between August 2011 and early 2019.
>
> To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements against him beyond a reasonable doubt:
>
> First: that the charged price-fixing conspiracy existed at or about the time alleged;
>
> Second: that the defendant knowingly—that is, voluntarily and intentionally— became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it; and,
>
> Third: that the conspiracy affected interstate commerce.

(ECF No. 603 at 3.)

The Court declined to provide the jury with Defendants' proposed preliminary instruction summarizing conduct that does and does not meet the requirements of element one of the charged offense. The Defendants' objective in seeking this preliminary instruction was, and is, to maximize the jury's understanding of these complex issues in light of empirical research that repeating instructions before and after evidence is presented is the most effective way to ensure the best jury understanding. Here, giving the jury guidance about conduct that is or is not a *per se* violation of the Sherman Act in order to prevent the jury from observing weeks of evidence, including evidence of ordinary business communications, with no understanding of what is and is not a violation of the Sherman Act should improve the result for all concerned.[1] While the Court will instruct the jury at the end of the case, an impression in any juror's mind, that exists for weeks is unlikely to be cured by the reading of the jury instructions. *See* Chalmers James & Leverick Fiona, *Methods of Conveying Information to Jurors: An Evidence Review* 30 (2018) (explaining that one study

---

[1] The Defendants accept that the Court has ruled on this issue, but we respectfully reassert that the *per se* rule is an unconstitutional conclusive presumption and that, even if it were not, it is inapplicable on the facts of this case. The Defendants believe the jury should be instructed it must find proof beyond a reasonable doubt of an "unreasonable" restraint on trade.

2

found that jurors' comprehension of the legal issues in the case was "significantly better" for "jurors who had been both pre- and post-instructed" rather than those who only received instructions at the end of the case).

On the other side of the scale, there is no harm or risk of jury confusion in giving the instruction at the outset of the case, a practice many courts have adopted in complex, long duration cases. *See id.* at *27* (noting that "[t]here is no evidence that [pre-instruction] causes jurors to decide cases prematurely"); J. Alexander Tanford, *The Law and Psychology of Jury Instructions*, 69 Neb. L. Rev. 71, 84 (1990) ("The one point upon which all researchers are agreed is that repeating the instructions two or more times aids comprehension and improves the accuracy of verdicts"). The fact the instruction is so squarely set in antitrust jurisprudence leaves no material risk of jury confusion.

**ARGUMENT**

Defendants request that the Court add a summary of Jury Instruction No. 18, which describes conduct that is and is not within the scope of the first element of Section 1, to its current preliminary instructions. (*See* ECF No. 921 at Instruction No. 18.)

Given the additional information now available to the Court as to the expected duration of the case, the extensive testimony at the first trial regarding information sharing, and the many questions the jurors published during their deliberations, which indicated their struggle to understand the complexity of the application of antitrust law to the facts, Defendants respectfully request the Court expand its substantive preliminary jury instruction to provide the jury with more guidance regarding what constitutes the first element of a violation of the Sherman Act—the existence of a price-fixing and bid-rigging conspiracy.

3

The Court has "great discretion regarding trial procedure applications." *United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) (quoting *United States v. Nicholson,* 983 F.2d 983, 988 (10th Cir. 1993)). The Tenth Circuit has acknowledged that district courts may add a "discussion of the elements of the offense" to preliminary instructions, giving district courts' discretion as to what should be included in such discussion. Tenth Circuit Criminal Pattern Jury Instruction 1.01 (2021 ed.).

Many courts routinely provide substantive jury instructions that include a discussion of the elements of the offense in cases involving particularly complex subject matters unfamiliar to jurors. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litg.*, MDL No. 1827, 2013 WL 10936486 (N.D. Cal. July 11, 2013), ECF No. 235 at 215 (providing a preliminary instruction that "it is illegal for competitors to agree on the prices to be charged for their competing products" in addition to outlining the elements of the offense); *United States v. Thompson*, No. CR-09-0088-FVC, ECF No. 670 (providing preliminary jury instructions on how to judge whether an officer acted reasonably under the Fourth Amendment in addition to instructions on the elements of the charges).

For example, in *In re Nexium Antitrust Litig.*, No. 1:12-md-02409-WGY (D. Mass.), ECF No. 1385 at 22-44, the District of Massachusetts provided detailed substantive preliminary instructions explaining patent law and antitrust law. The Court explained the goal of the antitrust laws, outlined the elements of the offense, and defined critical terms necessary to understand the antitrust issues at play, including monopoly power and rule of reason. *Id.* (explaining that "'monopoly power' is the power to charge a higher price for your item without regard to competition . . ..").

4

Here, an additional instruction providing the jury with guidance on how to assess the first element of the claim will provide jurors with a better factual and legal framework to give structure to what they "see and hear" during the lengthy trial, which empirical research establishes will enhance the jurors' "attention and memory" and assist in eliminating confusion regarding the issue which they are being asked to decide. Manual for Complex Litigation, Fourth, § 12.432; 2 Jurywork Systematic Techniques 16:28, Aiding juror comprehension of the law—Substantive Preliminary Instructions; *see also Andrews v. LeClaire*, 709 F. Supp. 2d 269, 276 (S.D.N.Y 2010) ("Current studies, particularly those conducted as part of the Jury Trial Project of the New York State Unified Court System, have demonstrated the benefits of substantive preliminary instructions.").

The proposed instruction summarizes the instruction provided by the Court in the first trial at the end of the case. The proposed instruction gives the jury at the beginning of the case a balanced summary of the law of conspiracy, Section 1 violation, and what conduct, which they will hear and see much about, is not a *per se* violation of Section 1.

Given that much of the evidence in this case relates to day-to-day business negotiations and communications, the jury must distinguish whether the evidence establishes an unlawful agreement between competitors to fix prices or rig bids; or, rather, consists of ordinary and legitimate business activities that, whether or not distasteful or improper in the opinion of various lay witnesses, do not impermissibly restrain competition. This essential distinction is critical to reaching a true verdict. If the jurors do not understand this distinction as they work each day to build an understanding of the totality of the evidence, after six weeks of testimony, potentially sixteen days of direct testimony from government witnesses alone, the jury will have little chance

5

of getting it right.[2] *See* Tanford, *supra*, at 84. (noting that some researchers have hypothesized, based on empirical studies, "that jurors decide how they will vote at some time before the end of the trial. Therefore, instructions given at the end may come too late to have a meaningful impact on juror decisions.").

There is no prejudice to either party in providing a more robust preliminary instruction because, given this is a re-trial, the parties have already had a Charging Conference and the Court has ruled on the appropriate instructions to be given. Accordingly, Defendants' respectfully request that in addition to the substantive preliminary instruction the Court provided to the jury as set forth in ECF No. 603 at 3, the Court also provide the jury with the following substantive preliminary instruction:

> A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for goods or services. A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices or pricing strategy is agreed upon. They are fixed because they are agreed on. Thus, an agreement among competitors to raise or lower a price, to set or avoid certain price promotions, to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal. The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.
>
> A conspiracy to rig bids is an agreement between two or more competitors to eliminate, reduce, or interfere with competition for something that is to be awarded on the basis of bids. . . . . If you find that one or more of the defendants entered into an agreement to fix prices and rig bids, the fact that a defendant did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objective is no defense. The agreement is the crime, even if it is never carried out. If the conspiracy charged in the indictment is proved, it is no defense that some or all of the defendants actually competed with each other in some manner or that they did not conspire to eliminate all competition. . . .

> The mere fact that some or all of the defendants may have engaged in similar or parallel pricing does not by itself establish the existence of a conspiracy among them. Evidence of similarity of business practices of defendants, or the fact that they may have charged identical prices for the same goods, does not alone establish an agreement to fix prices and rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market. A business may lawfully . . . adopt the same prices, conditions of sale, or other practices as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.
>
> Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange. It is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices. There may be legitimate reasons that would lead competitors to exchange price information other than fixing prices or rigging bids. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors, customers, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products so long as there is no agreement to fix prices or to rig bids.
>
> Nevertheless, you may consider such facts and circumstances, along with all other evidence, in determining whether the alleged price fixing and bid rigging resulted from the independent acts of the defendants freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.

(Excerpted from ECF No. 921 at Instruction No. 18.)[3]

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court give the above excerpts from Jury Instruction No. 18, which the Court instructed the jury after the close of the evidence at the first trial, at the commencement of the second trial as well.

---

[3] Defendants have attempted to shorten the instruction while keeping its essence and striking the same balance as the full instruction. Defendants would have no objection to giving the instruction in its entirety.

7

Dated: February 3, 2022              Respectfully submitted,

| | |
|---|---|
| s/ John A. Fagg, Jr.<br>John A. Fagg, Jr.<br>MOORE & VAN ALLEN PLLC<br>Attorney for William Wade Lovette<br>100 North Tryon Street, Suite 4700<br>Charlotte, NC 28202<br>(704) 331-3622<br>johnfagg@mvalaw.com | s/ Michael F. Tubach<br>Michael F. Tubach<br>O'MELVENY & MYERS LLP<br>Attorney for Jayson Jeffrey Penn<br>Two Embarcadero Center, 28th Floor<br>San Francisco, California 94111-3823<br>(415) 984-8700<br>mtubach@omm.com |
| s/ Richard K. Kornfeld<br>Richard K. Kornfeld<br>RECHT KORNFELD, P.C.<br>Attorney for Mikell Reeve Fries<br>1600 Stout Street, Suite 1400<br>Denver, CO 80202<br>(303) 573-1900<br>rick@rklawpc.com | s/ Michael S. Feldberg<br>Michael S. Feldberg<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>Attorney for Roger Born Austin<br>750 Third Avenue, Suite 2400<br>New York, NY 10017<br>(212) 381-1965<br>mfeldberg@reichmanjorgensen.com |
| s/ Bryan Lavine<br>Bryan Lavine<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>Attorney for Scott James Brady<br>600 Peachtree St. NE, Suite 3000<br>Atlanta, GA 30308<br>(404) 885-3170<br>Bryan.lavine@troutman.com | s/ Elizabeth Prewitt<br>Elizabeth B. Prewitt<br>LATHAM & WATKINS LLP<br>Attorney for Timothy R. Mulrenin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br>elizabeth.prewitt@lw.com |
| s/ James A. Backstrom<br>James A. Backstrom, Counsellor at Law<br>Attorney for William Vincent Kantola<br>1515 Market Street, Suite 1200<br>Philadelphia, PA 19102-1932<br>(215) 864-7797<br>jabber@backstromlaw.com | s/ Mark A. Byrne<br>Mark A. Byrne<br>BYRNE & NIXON LLP<br>Attorney for Jimmie Lee Little<br>888 West Sixth St, Suite 1100<br>Los Angeles, CA 90017<br>(213) 620-8003<br>markbyrne@byrnenixon.com |

8

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

_s/ John A. Fagg, Jr._