IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCLOSURE REGARDING WITNESS INTERVIEWS AND FOR OTHER APPROPRIATE RELIEF

The defendants' motion to strike the testimony of government witness Carl Pepper, provide a curative instruction to the jury, and order immediate production of interview notes taken by all government representatives, should be rejected. Simply put, the defendants quibble with three so-called "discrepancies" between hand-written notes and interview reports, and ignore the fact that the government disclosed the supposedly "suppressed" information well before Mr. Pepper took the stand.

*2015 Popeyes Promotional Discount*. The defendants point to SA Koppenhaver's handwritten notes from a July 17, 2020, interview indicating that Popeye's buyer, Kent

Kronauge, "may have" been the source of the 2-cent discount number. ECF No. 1130 at 5. However, a July 21, 2020, interview report from just four days later, produced to the defendants in 2020, states: "Kent Kronauge (KRONAUGE) asked if everyone was able to do a $0.02 per pound discount." Moreover, before trial the government produced agent notes from a February 17, 2022, interview:

> Past experience: Kurnagi [sic] had asked for 2 cent higher discount; post-2015 a 3-5 cent discount (it varied pre- and post-2015); Witness would then call competitors to inform them of the discount Kronauge was asking about.

Not only did the defendants already possess the information, they also cross-examined Mr. Pepper on the source of the 2-cent figure and he in fact testified that Mr. Kronauge asked all suppliers to offer the 2-cent discount. R. Tr. Mar. 7, 2022 at 30:8-23.

*Length of Popeye's Contract*. The defendants next point to SA Koppenhaver's November 25, 2019, which state: "Kent [Kronauge] told [Mr. Pepper] everyone is doing two years" for the duration of the 2018 Popeye's contract. ECF No. 1130 at 6. However, SA Koppenhaver's corresponding November 25 interview report contains the information the defendants claim was omitted. The notes and report both include a reference to TY-001632749 (GX-751), a text message that Mr. Pepper sent to defendant Mulrenin, that says: "Just got some info from Popeyes. Everyone seems to be doing 2 years and spreading it out." The report further reveals that "Pepper passed information learned from KRONAUGE to MULRENIN." Again, not only did the defendants possess the information, Mr. Pepper testified about the two-year contract term when he was questioned about GX-751. R. Tr. Mar. 3, 2022 at 148:21-149:13.

2

<u>Purchases from Claxton</u>. Finally, the defendants point to SA Koppenhaver's notes from an August 12, 2020, interview stating that Tyson "bought a lot from Claxton." ECF No. 1130 at 6. But the defendants received that information multiple times. For example, a report from an August 14, 2020, interview contains substantially the same information:

- "When PEPPER needed product to cover a Popeyes shortage, he typically called Scott Brady (BRADY), on behalf of Claxton Poultry (CLAXTON)…."
- "When PEPPER needed product to cover KFC store-door shortages, he typically called BRADY…."
- "Once he [Pepper], obtained details about what he needed, PEPPER called other suppliers, including CLAXTON…."
- "BRADY reached out often and ask [sic] if TYSON needed chicken."

The defendants thus had ample information to cross-examine Mr. Pepper regarding shortage purchases.

The cases the defendants cite in their brief are inapposite. For example, the defendants claim "SA Koppenhaver's notes are exactly like the agent's notes that were not produced in" *United States v. Service Deli Inc.*, 151 F.3d 938 (9th Cir. 1998). ECF No. 1130 at 8. The type of "material information" not timely disclosed in *Service Deli*, however, is significantly different. There, the notes showed that the government's key witness in an antitrust case (1) "repeatedly denied sharing specific price information," despite an earlier "statement that he in fact did share prices"; (2) was "told of a possible jail sentence back in Sept. *So he wanted to avoid this happening*"; and (3) explained his prior inconsistent statements by telling the government "[h]e had a stroke which affected his memory." *Id*. at 943–44 (emphasis added). Those significant omissions are worlds apart from the minor omissions alleged by the defendants here.

3

The defendants also point to *Pelullo*, in which the Third Circuit upheld a new trial based on the government's failure to disclose rough interview notes, where those notes contained "material" exclusions which significantly undermined the testimony of "pivotal" government witnesses. *United States v. Pelullo*, 105 F.3d 120, 122 (3d Cir. 1997). Crucially, the court concluded the "jury very well could have reached a different verdict had [the defendant] been armed with" the impeachment evidence the government disclosed only after the defendant's third trial due to the nature of the omissions. *Id*. In contrast, the defendants here *were* armed with relevant impeachment evidence; there is no prejudice because the defendants timely received all the allegedly omitted information in discovery, and received SA Koppenhaver's handwritten notes from Mr. Pepper's interviews well before Mr. Pepper was cross examined.

Even if the three alleged discrepancies are material (they are not) and were suppressed (they were not), the relief the defendants seek is unwarranted. The defendants received the notes on March 3 and cross-examination resumed on March 7. They had ample time to review the notes and adjust their strategy. Moreover, in the unlikely event that the long weekend was insufficient, the defendants could have and should have sought a continuance. *See United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002) ("The preferred sanction is a continuance. It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."); *United States v. Johnson*, 911 F.2d 1394, 1405 (10th Cir. 1990) (defendant "should have moved for a continuance"); *United States v. Washington*, 162 F.3d 1175 (10th Cir. 1998). But, they did not. In fact, they waited until Mr. Pepper was

4

off the stand to raise the issue at all. In such circumstances, the defendants cannot be heard to complain about prejudice.

Respectfully submitted this 10th day of March 2022.

By:  /s/ Michael T. Koenig_____
Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: 202-616-2165
Email: michael.koenig@usdoj.gov