IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **WILLIAM WADE LOVETTE,**

    Defendants.

---

**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR EXPANDED VOIR DIRE AND PEREMPTORY CHALLENGES**

---

Defendants' Motion for Expanded Voir Dire and Peremptory Challenges (the "Motion") is predicated upon an inaccurate and incomplete retelling of portions of statements by Assistant Attorney General Jonathan Kanter.

The complete record makes clear that AAG Kanter did not make extrajudicial statements about *this* prosecution. The cited snippets in the Motion instead concern the following: (1) unrelated proceedings where jury trials have concluded; and/or (2) general law enforcement mission, purpose, and goals. The Motion does not accurately reflect the record and establishes no prejudice that would warrant expanded voir dire and additional preemptory challenges.

Second, the Motion's invocation of third-party reporting *about* AAG Kanter's statement as statements *attributable to* AAG Kanter is equally problematic.  The Motion not only misquotes a press report about the article, but inaccurately tries to connect AAG Kanter's statements about wage-fixing matters to the present prosecution.  In the time since the filing of the Motion, the press report relied upon by Defendants has also been updated to make clear AAG Kanter was only commenting on the wage-fixing matters.

As an officer of the court and a representative of the United States, AAG Kanter abides by and will continue to abide by the Codes of Professional Conduct, other ethical obligations, and the mission of the Department of Justice.  The Motion's attempt to cast aspersions on AAG Kanter's compliance with his ethical responsibilities is factually and legally unfounded.  The Motion should be denied.

**FACTUAL BACKGROUND**

On April 14, 2022, AAG Kanter appeared before the Court and explained why the Antitrust Division's decision to proceed with a second retrial in this case is supported by the Department of Justice's policies and principles.  That same day, *United States v. Jindal & Rodgers*, a criminal proceeding in the United States District Court for the Eastern District in Texas (Case No. 4:20-CR-00358), resulted in a mixed verdict, in which one defendant was acquitted on all counts and the other was found guilty on one count of obstruction and acquitted on the other count.  The next day, on April 15, *United States v. DaVita & Thiry* (Case No. 1:21-cr-00229-RBJ), a criminal matter tried in this District before the Honorable R. Brooke Jackson, resulted in acquittals on all counts.

Both *Jindal* and *DaVita* were labor-market enforcement cases where the government prosecuted conduct that it alleged affected American workers either through wage-fixing or employee-allocation agreements.

On April 21, 2022, AAG Kanter delivered prepared remarks at a conference focused on emerging issues in antitrust law at the University of Chicago's Stigler Center for the Study of the Economy and the State.[1]  AAG Kanter's prepared remarks centered on his "five pillars of an effective *civil* antitrust enforcement regime."  Exh. A (complete transcript of remarks and subsequent Question and Answer sessions, highlighted for clarity),[2] at 1:29-30 (emphasis added).

Defendants cited portions of these remarks as well as third-party reporting on those remarks in support of the Motion.  These strategically limited selections and the characterizations of other reports are inconsistent with what was *actually said* by AAG Kanter.

## 1. AAG Kanter's statements concerned cases where trials have concluded, not pending cases.

Defendants claim that "on April 21, 2022, Mr. Kanter boasted about **this case** and others at a public event, the Stigler Center's Competition Conference, with the press in attendance."  (Motion at 2 (emphasis added).)  The Motion further states, "Mr.

---

[1] The audience at the conference was largely academics and economists who are focused on the proper role of economics for civil antitrust enforcement in the future.
[2] Although the video of the remarks and the question and answer session are publicly available, the government attaches to this response a rough transcript that was internally generated by paralegals at the Antitrust Division in an effort to assist the Court.  The video is available at https://www.youtube.com/watch?app=desktop&v=fJdQTs11D1Y.

Kanter used the Chicago stage to commend his appearance before this Court and to publicly condemn Defendants' alleged conduct." Mr. Kanter did not, in fact, speak about this case during the cited speech, nor did he "commend his appearance" or "publicly condemn Defendants' alleged conduct." *See* Exh. A. He did conclude his remarks about *civil* enforcement by saying that he had traveled to Denver to explain the seriousness which he takes his "obligation to protect the American public," but he did not otherwise reference these proceedings either by name or in substance. *See* Exh. A 7:19-23.

In his remarks about civil antitrust enforcement, AAG Kanter also spoke generally about the unsurprising fact that Americans often discuss economic and antitrust issues through the lens of what affects their lives and pocketbooks:

> Antitrust is a kitchen table issue. The public depends on us to police the channels of commerce against collusion and monopoly. When we fail, families struggle to afford groceries. They earn lower wages. They lose control of their own private data to dominant platforms. The American Dream slips away.

He did not "justif[y] his appearance in this Court" as necessary "to protect 'the American dream'"; "publicly tie the second retrial to these unrelated issues"; or "publicly condemn Defendants' alleged conduct" with these general comments. (Motion at 5.) In the context of prepared remarks exclusively focused on the Antitrust Division's civil enforcement program, he spoke about antitrust issues that have sparked significant public conversations and the importance of pursuing antitrust violations that impact labor markets and the collection of data by technology companies. Exh. A at 7:19-23. The overall message in support of the need for robust antitrust enforcement in this

4

particular moment in history is not new.  Indeed, multiple Division officials have connected labor-market collusion to undermining of the American Dream.[3]

Defendants also assert that "Mr. Kanter revealed that his reaction to recent unfavorable jury verdicts in criminal antitrust cases was to send an e-mail to his staff, telling them to listen to Tom Petty's 'I Won't Back Down,' and to 'dance like nobody's watching.'"  (Motion at 2.)  In fact, during an extensive question and answer session following AAG Kanter's remarks, Professor Tommaso Valletti asked the Assistant Attorney General a question about the path forward after some tough outcomes.  Although the question mistakenly referred to chicken price-fixing, its primary focus was on the Department's reactions to cases in which it "lost," and the Assistant Attorney General's response specifically cabined his response to the two matters in which juries recently acquitted defendants entirely or on some counts.  AAG Kanter stated, for example, that "*both* of those cases . . . establish[ed] that *harm to workers* is an antitrust harm."  Exh. A 10:1-2 (emphasis added).

The rest of the AAG's lengthy response repeatedly emphasizes the impacts on antitrust harms to workers, and nowhere refers to chickens price-fixing or to the defendants in this case.  His response, in part, was as follows:

> AAG Kanter: […][W]e're going to continue to bring the cases. We're not backing down. In fact, I sent out an email to our team telling them they had an assignment, which was to find the medium of their choice – for me it's vinyl – pump up Tom Petty's "I Won't Back Down", turn it up, put it on repeat, dance like nobody's watching, and sing out loud over and over and over again, [because]

---

[3] *See e.g.*, "No-poach agreements 'undermine the American Dream,' DOJ's Price says," MLex, April 6, 2022, *available at* https://content.mlex.com/#/content/1370279?referrer=email_dailycontentset&dailyId=68376c1326554e44847fdec19082bee7 (last accessed Apr. 28, 2022).

5

"we're not backing down". But I also want to make sure I get out ahead of the point. **These were- in terms of establishing viable precedent, these cases will most often be cited in our favor going forward because the courts agree that antitrust harms that affect workers, are actionable antitrust harms.** Wage-fixing is no different than price-fixing to consumers. This is a legal principle that we established as a result of these cases, these cases – which started before I got there – in the last administration, were courageous. And the team that brought them forward believed with every fabric of their being that they were good for workers, and they were. And we succeeded in proving that point. Going forward, we're going to continue to work to make sure we can bring these cases to juries and we can hold criminals accountable, but I'm extremely proud of the work that the Antitrust Division has done here.

Exh. A at 10:5-19 (emphasis added).

In response to the same question, AAG Kanter also referenced a portion of an internal email he sent.  This was one of the many ways in which he encouraged his team to continue to do the hard work of pursuing cases that violate antitrust laws, even if they will be tough to win.[4]  At no time did AAG Kanter assert that the email was about this prosecution, which is consistent with the fact that the email at issue did not mention this case at all.

In the same multi-part question, Professor Valletti also asked AAG Kanter about a book published in 2017 and titled <u>The Chickenshit Club</u>.  Defendants' pique at the use of the term "chickenshit" is misdirected. (Motion at 5.)  AAG Kanter's use of the title of a publicly-available and popular piece of publishing was in direct response to a question *which used the name of the book*.  His answer did not mention or reference this matter.  *See* Exh. A at 9:38-42, 9:44-10:19.  AAG Kanter noted that the author of the book had previously participated in the Stigler Center conference and added that he was "not

---

[4] Indeed, one of the later questions from the audience in the Q&A session further focused on morale and encouragement of lawyers.  Exh. A at 17:18-21.

part" of that club.  The book and its well-known title are not referencing broiler chickens; instead, the book takes its name from an expression that then-U.S. Attorney James Comey used to refer to prosecutors who had never lost cases.[5]

In response to the same question about tough outcomes and Eisinger's book, AAG Kanter described the important legal precedent established in the *Jindal* and *DaVita* labor-market cases, but once again, he did not describe the *Penn* proceedings. He stated:

> those cases were not examples of the courts' disagreement [with the Division's legal theory].  In fact, both of those cases—which were extremely important programmatic cases establishing that harm to workers is an antitrust harm—survived motions to dismiss.  They generated courts [*i.e.*, precedents] that say these are legally sound cases.  We won those decisions, right?  What happened is a jury in one case didn't convict; in the other case [it] convicted only on obstruction of justice, not on the antitrust charges.  So we're going to continue to bring the cases.  We're not backing down.

Exh. A at 9:46-10:6.

Contrary to the defendants' assertions, AAG Kanter did not speak "specifically about this prosecution" in describing his resolve to bring righteous cases.  (Motion at 4.) As is apparent from his references to "wages" and "mobility," in response to a different question from the audience, AAG Kanter again referred to recent wage-fixing and no-poach prosecutions when he confirmed his intention to continue his enforcement efforts in those arenas:

> just because a jury or two decided not to convict on a specific case doesn't mean the public isn't demanding more.  We're hearing from the public on a regular basis.  They want more enforcement.  They want help. **They want mobility**.  **They want competition for wages**.  And so that's why we have to make sure we strengthen our resolve.  And we are

---

[5] *See* Eisinger, Jesse, The Chickenshit Club, at xiv (2017).

> bringing the cases that we believe are righteous, that are—we can prosecute under the law, and that will make a difference.  They're hard, but—you know—if it's worthwhile, sometimes it's difficult and we're going to stick with it.

Exh. A at 17:29-35 (emphasis added).

A complete review of AAG Kanter's public remarks and answers to the Q&A reveal that he made no remarks about this pending prosecution beyond the single, general reference to traveling to Denver and taking seriously his obligation to protect Americans.[6]  To assert otherwise misstates the record.

2. **The Motion includes statements from third-party reporting that are misquoted and otherwise misleading**.

The Motion relies on a third-party press report about the speech, rather than the speech itself, to force connection between AAG Kanter's remarks and this prosecution. (Motion at 3.)

As an initial matter, the author of the press report cited by Defendants has since published a correction to make clear, again from the publicly available video of the remarks, that AAG Kanter's comments related to wage-fixing cases.[7]

---

[6] *See* https://www.youtube.com/watch?app=desktop&v=fJdQTs11D1Y.
[7] *See* https://www.law360.com/articles/1486196/doj-antitrust-head-no-chickenshit-club-despite-losses (last accessed on Apr. 28, 2022) ("At Thursday's conference, Kanter reaffirmed his belief that difficult cases are worth fighting for.  'We have to strengthen our resolve and bring cases that are righteous," he said, **referring to the wage-fixing cases**. "They're hard. But if it's worthwhile, sometimes it's difficult. And we're going to stick with it.' …. *Correction: An earlier version of this article misspelled the first name of Jesse Eisinger and mischaracterized a portion of Kanter's remarks. The errors have been corrected*.) (emphasis added).

8

Correction notwithstanding, Defendants otherwise misstated the record. The original version of the cited article stated, "At Thursday's conference, Kanter reaffirmed his belief that *the case is worth fighting for*. 'We have to strengthen our resolve and bring cases that are righteous,' *he said*. 'They're hard. But if it's worthwhile, sometimes it's difficult. And we are going to stick with it." (emphasis added). The original version of the article incorrectly connects AAG Kanter's comments *about the outcome of the labor-market cases* to the pending case. This inaccuracy is apparent from reviewing the video of the remarks. But the Motion also misleadingly altered the quotation from the original article to suggest that AAG Kanter himself said, "the case is worth fighting for." This misimpression was accomplished by the fact that the Motion, in addition to beginning its quotation where it did, also omits, without appropriate note of alteration, the "he said" from the middle of the press quotation along with internal quotation marks. (*See* Mot. at 4 ("Speaking specifically about this prosecution, Mr. Kanter reaffirmed his belief that "the case is worth fighting for. We have to strengthen our resolve and bring cases that are righteous. They're hard. But if it's worthwhile, sometimes it's difficult. And we're going to stick with it.").) The accurate inclusion of both the internal quotation marks and the "he said" would have made clear what AAG Kanter actually said.

The full record is clear: AAG Kanter did not make extrajudicial statements about this prosecution. AAG Kanter made statements about other cases where juries had already reached verdicts and a single, general statement about his appearance in court in Denver in connection with a reflection on his overall duties. These statements concerned the importance of law enforcement's resolve, purpose, and mission. As

9

discussed below, these statements are permissible under applicable ethical rules and do not merit the relief sought.

## ARGUMENT

**1. The Court's prior order on jury selection protocol—to include the number of preemptory challenges—should stand.**

The Motion fails to demonstrate why the Court's prior ruling with respect to time for voir dire and preemptory challenges should be revisited now. Federal Rule of Criminal Procedure 24 governs the number of preemptory challenges. Although the Court has discretion under the rule to allow additional preemptory challenges, "[m]ultiple defendants have no right to more peremptory challenges than given them by the rule, even when they disagree on how to exercise them, as long as they are given trial by an impartial jury." *United States v. Hueftle*, 687 F.2d 1305, 1309 (10th Cir. 1982) (en banc).

Defendants have previously cited "extensive press coverage" as a justification for additional preemptory challenges. *See* Dkt. 525. The Court has already rejected this justification. *See* Dkt. 603 at 5. The Motion fails to demonstrate why that order should be revisited. Comments made at a niche antitrust conference in Chicago about other cases that have already been tried are unlikely to prejudice *this* Colorado venire who will be tasked with evaluating a different legal theory in an entirely different industry. It stands to reason that any member of the venire listening to AAG Kanter's remarks at a specialized antitrust conference was already likely to be aware of this matter, and such awareness can be properly examined during the previously-ordered amount of voir dire. In addition, as Defendants admit, the amount of voir dire from the first two trials

10

adequately elicited information from potential jurors who were familiar with the case, and whether that familiarity prejudiced them.  (Mot. at 6.)  There is nothing about the statements cited by the Motion—statements about other matters in other industries and general law enforcement purpose and priorities—that changes the landscape with respect to the venire.  That is, there is no tie between the requested relief and the conduct Defendants complain of.

The Court's prior order should not be disturbed based on the facts presented here.

## 2. AAG Kanter's statements at the Stigler Conference are permissible under the Colorado Rules of Professional Conduct.

AAG Kanter's remarks do not violate Colorado Rules of Professional Conduct 3.6, 3.8, or any other professional or ethical obligation.

RPC 3.6(a) prohibits "[a] lawyer who is participating or has participated in the investigation or litigation of a matter" from "mak[ing] an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."  RPC 3.8, which sets forth additional requirements for criminal prosecutors, precludes prosecutors from "making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the

11

accused unless such comments are permitted under Rule 3.6(b) or 3.6(c)[.]" RPC 3.8(f).[8]

First, the statements AAG Kanter made at the Stigler conference concerning an internal email do not violate Rules 3.6 or 3.8. AAG Kanter specifically made those statements about two criminal matters unconnected to this prosecution where juries have already rendered verdicts. Neither the statements at the Stigler Conference about the internal email nor the email itself refer to this prosecution or the Defendants in this case. Internal statements about two recent, unrelated cases and made to encourage his staff in the pursuit of the Department of Justice's mission neither affect this proceeding, nor in any way prejudice the Defendants in this proceeding.

Beyond the referenced internal email, the statements in AAG Kanter's prepared remarks as well as his answers to questions were general comments about the important programmatic value of the *Jindal* and *DaVita* prosecutions as well as the government's overall commitment to investigate and prosecute antitrust violations that affect labor markets. The only reference—and an oblique, general one at that—to this prosecution was to note that AAG Kanter had appeared before a federal court in Denver where he had stated the seriousness with which he takes his obligation to protect Americans pursuant to the antitrust laws.

---

[8] The purpose of Defendants' citations to the Google results of their names is unclear. First, Defendants admit this is a high-profile case that garnered significant press attention. (Motion at 6-7.) They have previously cited to extensive press coverage. Dkt. 525. Second, they do not identify anything that AAG Kanter did with respect to these results that could constitute an ethical violation. Finally, nothing in either RPC 3.6 or RPC 3.8 preclude a prosecutor from discussing the facts of an indicted case, including the Defendants' names and the status of the investigation or prosecution.

It is well-settled that statements—here, about the labor-enforcement cases—made after trials have concluded are ethically permissible.  *See* 28 C.F.R. § 50.2(b)(1), (2) (DOJ regulations do not bar the "release of information to news media" once "any proceeding resulting from [] an investigation has been terminated by trial or otherwise" and instead focus on information "expected to influence the outcome of a pending or future trial"); ABA Standards for Criminal Justice § 3-1.10 (4th ed. 2015) ("The prosecutor should not offer commentary regarding the specific merits of an *ongoing* criminal prosecution or investigation." (emphasis added)).

It is equally unremarkable that statements made in support of law enforcement's mission and purpose and about the enforcement priorities the government intends to pursue are permissible.  Indeed, these statements are not only proper, but are important to encourage transparency and participation in our government.  *See, e.g.*, *Phelps v. Hamilton*, 59 F.3d 1058, 1068 (10th Cir. 1995) ("We must allow for and encourage debate about law enforcement strategy because prosecutorial decisionmaking and the political process for selecting prosecutors should reflect the public's judgment as to the proper enforcement of the criminal laws."); Justice Manual § 1-7.500 ("The public policy significance of a case may be discussed by the appropriate United States Attorney or Assistant Attorney General when doing so would further law enforcement goals."); ABA Standards for Criminal Justice § 3-1.10(c) ("The prosecutor should not make, cause to be made, or authorize or condone the making of, a public statement that the prosecutor knows or reasonably should know will have a substantial likelihood of materially prejudicing a criminal proceeding or heightening public condemnation of the accused,

13

**but the prosecutor may make statements that inform the public of the nature and extent of the prosecutor's or law enforcement actions and serve a legitimate law enforcement purpose**.") (emphasis added); *see also* RPC 3.6, cmt. 1 ("[T]here are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves.").

The statements Defendants complain of do not violate the Colorado Rules of Professional Conduct or any other ethical rules or obligations and do not merit revisiting the Court's prior ruling regarding voir dire and peremptory challenges.

## CONCLUSION

The Motion misrepresents public remarks made by AAG Kanter and lacks merit. Upon full review of the record, it is clear that AAG Kanter made a single, general statement regarding his appearance before this Court and his duty to pursue the mission of the Antitrust Division. His other statements concerned the Division's programmatic mission or other cases where juries have already reached verdicts. Defendants have failed to state a basis to disturb the Court's prior ruling (Dkt. 603) setting forth the jury selection protocol. The United States respectfully requests that the Motion be denied.

Dated: April 29, 2022          Respectfully submitted,

/s/ Kevin B. Hart
KEVIN B. HART
LESLIE A. WULFF
PAUL TORZILLI
DANIEL LOVELAND, JR.
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 598-8242
Email: kevin.hart@usdoj.gov
*Attorneys for the United States*