# EXHIBIT A

| Log # | Exhibit No. | Description | Testimony Excerpt | Type of document | Date | Declarant(s) | Statement(s) | Bases of 801(d)(2)(E) admissibility | Objections |
|---|---|---|---|---|---|---|---|---|---|
| 245 | GX-1890 GX-1891 | Email chain between Robbie Bryant and Tim Stiller on or about 2/3/2017 attaching Excel spreadsheet (PILGRIMS-DOJ-0001384965). | Not Applicable | E-mail (and attachment) | 2/3/2017 | Timothy Stiller Robert Bryant | TS: Call in about 30 to discuss KFC that work? RB: ready RB (spreadsheet): 2018 Proposed Supplier Margin $0.2000. | A, E, G, P | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>P: The statements do not set in motion any acts involved with any conspiracy. In any event, the DOJ's proffered basis to conclude these statements were in furtherance of a conspiracy is improper. The Tenth Circuit applies the "in furtherance" test narrowly," United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc), and the DOJ's reliance on an out-of-circuit case that "precede[s] Perez is unwarranted," United States v. Yurek, 2017 WL 2834544, at *8 n.10 (D. Colo. June 30, 2017).<br><br>This document concerns an internal communication among employees regarding pricing strategy. "[A]n internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984).<br><br>This document is subject to innocuous inferences and therefore cannot support an inference of conspiracy. See United States v. N.L. Indus., Inc., 1990 U.S. Dist. LEXIS 4171, at *22-28 (E.D. La. Apr. 6, 1990) (failing to show membership in antitrust conspiracy where declarant's activities, including meetings with competitors about future plans, telephone calls, and notations in competitor memos were subject to "innocent" inferences). |
| 101-S | D-925 | Email chain between Fabio Sandri, Bill Lovette, Jason McGuire, and Robert Bryant on or about 8/26/2014 (PILGRIMS-0006848148) | Not Applicable | E-mail | 8/26/2014 | William Lovette Jason McGuire Robert Bryant | ***The Court has previously admitted this exhibit into evidence because the statements fall within Fed.R.Evid. 801(d)(2)(E).***<br><br>***Cite: Penn 1 Trial Certified Transcript at 977:7-13.*** | A, P | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>P: The statements do not set in motion any acts involved with any conspiracy. In any event, the DOJ's proffered basis to conclude these statements were in furtherance of a conspiracy is improper. The Tenth Circuit applies the "in furtherance" test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 102-S | N/A | Trial testimony of Pete Suerken. R. Tr. 3/2/2022 at 36:16-37:20. | Q. What do you remember about the meeting with Defendant Austin and others from Pilgrim's?<br>A. They made a presentation around all they do for KFC and then explained to us how and why prices were going to move higher.<br>Q. What do you recall them saying about how prices were going to go higher?<br>A. That I didn't have a choice.<br>Q. Didn't have a choice in what?<br>A. The prices were going to move higher.<br>Q. Did they say anything else that you recall about prices?<br>A. No. I don't remember anything else, sir.<br>Q. What, if anything, did you say in reaction to the presentation that was provided at that time?<br>A. I can't remember my exact commentary, but our strategy was to basically make ourselves attractive by giving them longer term contracts at a fair margin structure. And the fact that KFC when we take loads every week, you don't -- there is no risk. You don't have to worry about the back up of the bidder. You don't have to worry about anything else. You just ship our product every week. So we were a good consistent supplier, good consistent buyer that pays its bills, we are willing to do a long-term contract and we are willing to pay a fair margin.<br>Q. You said -- was it a slide presentation?<br>A. I believe it was a PowerPoint deck.<br>Q. Did someone present sort of do the oral presentation walking through the deck?<br>A. Yes.<br>Q. Who was that?<br>A. Roger led the discussion. | Trial Testimony | 3/2/2022 (date of testimony) | Roger Austin | In summer of 2014, in Kentucky, Defendant Austin led a presentation of 9 Pilgrim's executives to RSCS including Mr. Suerken. The executives said that Suerken didn't have a choice -- the prices were going to move higher. | A | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The witness did not testify to any specific statements made by the declarants listed for this entry.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>The Government has not established the identity of the declarant, but instead seeks the Court to declare statements purportedly made by nine unidentified "Pilgrim's executives" as co-conspirator statements. Because the testimony fails to identify which individuals made the purported statement, the Government cannot show that the statement was made by a member of the conspiracy or that such statements were made during and in furtherance of it. |
| 103-S | N/A | Trial testimony of Pete Suerken. R. Tr. 3/2/2022 at 51:18-19: | A. He told us -- he told us to keep his price not quite at the top, but above the middle of the range. | Trial Testimony | 3/2/2022 (date of testimony) | Mikell Fries | During contract negotiations in 2014, Defendant Fries told Suerken to keep Fries's, meaning Claxton's price not quite at the top, but above the middle of the range. | A, G | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>The statements of the alleged co-conspirator are facially innocuous communications with a customer discussing its contract negotiation strategy. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 n.21 (1986) ("[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy.")." |
| 104-S | N/A | Trial testimony of Pete Suerken. R. Tr. 3/2/2022 at 63:19-22, 64:3-15. | A. I informed Roger that our plan was to take 20 truckloads of chicken from Pilgrim's Pride and he told me that it wasn't possible, that I couldn't do it. I was going to run KFC out of chicken.<br>Q. What else did he say to you about it not being possible, if anything?<br>A. That he knew where all the loads were and that there was no way that I had 20 extra truckloads of chicken.<br>Q. What did you understand him to mean when he said he knew where all the loads were?<br>MR. FELDBERG: Same objection, Your Honor.<br>THE COURT: Overruled.<br>BY MR. TORZILLI:<br>Q. You can answer?<br>A. Somehow some way he believed that I didn't have the 20 truckloads of chicken that he had been talking to somebody that was telling him information. | Trial Testimony | 3/2/2022 (date of testimony) | Roger Austin | In a meeting in 2014 regarding contract negotiations that occurred at a barbeque restaurant, Austin stated that RSCS could not take chicken volume (i.e., loads) away from Pilgrim's Pride. Austin told Suerken that it wasn't possible, that Suerken couldn't do it. Suerken was going to run KFC out of chicken. Austin knew where all the loads were and that there was no way that I had 20 extra truckloads of chicken. | A, B | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>The statements of the alleged co-conspirator are facially innocuous communications with a customer discussing its contract negotiation strategy. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 n.21 (1986) ("[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy.")." |
| 105-S | N/A | Trial testimony of Pete Suerken. R. Tr. 3/2/2022 at 67:16-20. | A. Mr. McCormick explained the devastating effect that these cost increases were going to have to KFC and how we couldn't possibly stomach these and weren't sure what it would do to the restaurants and Mr. Mr. Lovette explained that that's the price that they had to have and the price was what it was. | Trial Testimony | 3/2/2022 (date of testimony) | William Lovette | In August or September of 2014, there was a phone call between Lovette, Steve McCormick (head of RSCS), and Suerken. On the call, Lovette explained that that's the price that they had to have and the price was what it was. | A | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |

| # | | Source | Statement | Type | Date | Declarant | Description | Code | Objection |
|---|---|---|---|---|---|---|---|---|---|
| 106-S | N/A | Trial testimony of Pete Suerken. R. Tr. 3/2/2022 at 69:7-16. | Q. What, if anything, did Defendant Lovette say in response to the remarks that you and Mr. Imhoff were making? A. He told us that he wasn't going to move on price, that it was great to have customers like Chick-fil-A because he could get all his earnings cause [sic] calls with customers like Chick-fil-A because their business was always growing and they would pay whatever it took and the customers like KFC was a dying breed and our restaurants were shrinking and the margin wasn't attractive enough for them to continue to be in that business. | Trial Testimony | 3/2/2022 (date of testimony) | William Lovette | In late 2014 (after the call with McCormick), Suerken met Lovette in person in Colorado. Suerken told Lovette that RSCS would remove 20 truckloads of chicken + proposed lower prices. Lovette didn't budge. He told Suerken that he wasn't going to move on price, that it was great to have customers like Chick-fil-A because he could get all his earnings calls with customers like Chick-fil-A because their business was always growing and they would pay whatever it took and the customers like KFC was a dying breed and our restaurants were shrinking and the margin wasn't attractive enough for them to continue to be in that | A | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.

This entry seeks admission of testimony by Mr. Suerken that the government knows to be incorrect and to preclude cross-examination to prove inaccuracy.

A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 107-S | N/A | Trial testimony of Mr. Robert Bryant. C. Tr. 975:18-976:1 | Q. And Mr. Penn told you that Pilgrim's was going to convert a plant in Natchitoches, Louisiana from small to big bird unless Pilgrim's could get a significant price increase for small bird, correct? A. I don't remember Jayson Penn telling me that. I do remember Jason McGuire telling me that we were going to look at it, but McGuire told me that that was not a real thing that we were going to do. It was meant to put -- apply pressure to Roger to get the price increases. | Trial testimony | 11/2/2021 (date of testimony) | Jason McGuire | Mr. McGuire told Mr. Bryant that Pilgrim's was going to look at converting the Natchitoches, Louisiana plant from small bird to big bird, but Mr. McGuire stated that it was not a real thing that Pilgrim's intended to do. Rather, it was designed to put pressure on Defendant Austin to get price increases. | A, B, F, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.

The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).

Mr. Bryant's testimony regarding the plans for the Natchitoches plant conversion is contradicted by the documentary evidence and his own testimony regarding Mr. McGuire's involvement in those plans.

A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).

B: There are no statements in this conversation that reveal the existence of a conspiracy.

F: These statements do not describe any events in any conspiracy, as alleged by the DOJ or otherwise.

H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 108-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant R. Tr. 3/8/2022 at 163:1-164:25. | Q: Without disclosing the substance of any statements by anyone at another company, Mr. Bryant, what competitors are you aware of those individuals Mr. Austin, Little, Tucker and I believe you said Gay, which companies are you aware of them reaching out to? MR. LAVINE: Objection, Your Honor, same objection. It's hearsay. THE COURT: Overruled. A. Tyson, Koch and Claxton. BY MS. CALL: Q. Now, do you have an understanding, Mr. Bryant, as to the purpose in discussing QSR bid prices with competitors? MR. FELDBERG: Your Honor, objection we discussed earlier today and I object. MR. TUBACH: Also compound, Your Honor. He has four individuals talking to three competitors. There is no specificity at all. THE COURT: Overruled. A. Can you repeat, please? BY MS. CALL: Q. Yes. Do you have an understanding as to the purpose in discussing bid prices with Pilgrim's competitors? A. I do. Q. And what is the basis of that understanding? A. Conversations in participation in bids from 2014 through 2017. Q. All right. Now, what is your understanding as to the purpose of the communications with competitors about bid prices? A. The purpose was to either increase prices or limit a decrease in price together, you know, amongst the competitors. Q. All right. So you said two things, to increase prices and to limit a decrease; is that correct? A. That's correct. Q. All right. Let's start with the first one. What do you mean by to increase prices? A. Get a substantial price increase. Q. And you said that was together with the competitors? A. That's correct. Q. Now, you also said to limit a price decrease. What do you mean by that? A. So depending on the market conditions, the customer may be expecting a price decrease, so it was about limiting the amount of the pricing concession that would be offered. Q. Together? A. Together, yes. Q. Now, did you ever, Mr. Bryant, receive competitors' bids yourself for QSR business? A. Not directly from the competitor. Q. Did you receive it from elsewhere? A. I have, yes. Q. Is that from other individuals at Pilgrim's? A. That's correct. (Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 162:23-164:25.) | Trial testimony | 3/8/2022 (date of testimony) | Roger Austin Justin Gay Jimmie Little Scott Tucker | A combination of Messrs Austin, Little, Tucker, and Gay communicated with competitors of Pilgrim's -- Tyson, Koch, and Claxton -- for the purpose of together either increasing prices or limiting price decreases. | A | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.

The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).

During the second trial, the Court struck Mr. Bryant's testimony regarding a purported agreement to raise prices in 2014 and instructed the jury to disregard that testimony, and this entry violates the Court's order.

The witness did not testify to any specific statements made by the declarants listed for this entry.

A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).

The Government has failed to identify any specific statements made by the alleged co-conspirators. Instead, this testimony is simply Mr. Bryant's summary of what he recalls generally, not specific statements, and his personal understanding of what was being discussed. |

| # | | Source | Testimony/Statement | Type | Date | Speakers | Description | Obj. | Court's Analysis |
|---|---|---|---|---|---|---|---|---|---|
| 109-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 168:1-169:13. | Q. All right. Now, when you actually formulated the bid with the folks in the QSR team, that decision and the number you arrived on, did you arrive on that just with people at Pilgrim's or with a larger group of people?<br>MR. FAGG: Objection, leading.<br>THE COURT: Overruled.<br>A. So the number we arrived at speaking specifically to 2017 was really in relation to the competitor bids, so similar I described earlier we ran the model to see where Pilgrim's cost and with have put a price, but we changed the model to be in line with the competitor bids that we received.<br>BY MS. CALL:<br>Q. All right. And just to make sure I ask the right question, when you did change the model, who was the conversation with when you actually landed on your numbers?<br>A. The final number was -- what I recall is -- it was a call between myself, Tim Stiller and Roger Austin where we had the competitor --<br>MR. FAGG: Objection, Your Honor, response -- he is not responsive to the question. She asked him who.<br>THE COURT: Overruled.<br>A. We had a list of competitors in there and the bid information and then we -- we made our bid to be third highest in price.<br>BY MS. CALL<br>Q. So it was an internal discussion at Pilgrim's?<br>A. That's correct, yes.<br>Q. Did you consider the price that you landed on to be an independent decision of Pilgrim's?<br>A. It was -- in my opinion, it was dependent on the pricing information that we received from the competitors. What I recall is if we would have turned in the model in 2017 based off our costs because our costs went up over the three years, we actually would have asked for a price increase, but we used the pricing information that was provided to actually lower our price and be third in price.<br>Q. Third amongst whom?<br>A. The competitors. | Trial testimony | 3/8/2022 (date of testimony) | Roger Austin<br>Robert Bryant<br>Timothy Stiller | In 2017, Tim Stiller, Defendant Austin, and Mr. Bryant used competitors' bid information to make Pilgrim's bid the third-highest. This occurred during a phone call between the three of them. | A, F | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James Log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>This entry relates to Mr. Bryant's misleading and false testimony that Pilgrim's received other suppliers' bids for KFC in 2017, when in fact GX1919 reflects current period pricing, and the Court should not permit the government to use Rule 801(d)(2)(E) to continue to sponsor materially inaccurate testimony.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>F: These statements do not describe any events in any conspiracy, as alleged by the DOJ or otherwise.<br><br>The Government has failed to identify any specific statements made by the alleged co-conspirators. Instead, this testimony is simply Mr. Bryant's summary of what he recalls generally, not specific statements, and his personal understanding of what was being discussed. |
| 110-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 190:18-191:11. | Q. All right. So could you describe particularly when you became aware of a plan to increase pricing that year?<br>A. I don't recall exactly. It was probably late June, early July. I had a conversation with Jason McGuire where he called and asked me to help him build a presentation. It was part of a basis for price increases from our customers.<br>Q. All right. And did he use a term for those presentations to your customers?<br>A. He did.<br>MR. LAVINE: I am going to object, Your Honor, hearsay.<br>THE COURT: Overruled.<br>A. During that phone call when he asked for -- asked for my help in developing the basis for the price increases once he said once we got that done, we were going to blitz the customers with basically what the plan was is we were going to use two reasons to justify a price increase to our customers and those same two points were going to be made to basically all those customers. | Trial testimony | 3/8/2022 (date of testimony) | Jason McGuire | In probably late June or early July 2014, Jason McGuire asked Mr. Bryant to help prepare of presentation as a basis to obtain price increases from Pilgrim's customers. Mr. McGuire also stated that once the presentations were completed, they would blitz the customers, first the QSR customers but then all customers. And use two reasons to justify the price increases. | A, F, G, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>F: These statements do not describe any events in any conspiracy, as alleged by the DOJ or otherwise.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 111-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 194:14-195:11. | Q. Now, I guess back into the room at these meetings, do you recall a time when one of those customers left the room?<br>A. I do.<br>Q. Was the door open or closed when the customer left the room?<br>A. It was closed.<br>Q. And who do you recall being in the room?<br>A. Myself and I do recall Jason McGuire and Roger Austin. I don't know if Justin Gay would have stepped out. I just remember the three of us because I remember the comment that was made and I don't remember who else was in the room at that point in time other than the customers were not.<br>Q. Do you recall specifically which customers' office this meeting was at?<br>A. I thought it was Church's, but I am not a hundred percent sure which customer's office it was.<br>Q. All right. Now, is there a conversation that you recall happening after the customer left the room?<br>A. Yes.<br>Q. Could you please describe it.<br>A. I just remember that Jason McGuire in referencing the PowerPoint presentation said -- told Roger Austin, I need you to put this out to the industry. | Trial testimony | 3/8/2022 (date of testimony) | Jason McGuire | Jason McGuire stated to Defendant Austin: I need you to put this out to the industry. | A, G | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ. |
| 112-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 216:13-217:2. | Q. All right. Now, did you attend that meeting with KFC the following day?<br>A. I did.<br>Q. Who else from Pilgrim's attended?<br>A. I know myself, Roger Austin and Scott Tucker. I don't recall if anyone else from Pilgrim's attended or not.<br>Q. Who do you recall from RSCS or KFC attending?<br>A. Pete Suerken, Rich Eddington, Steve Campisano and Sara Fisher.<br>Q. And what happened at that meeting?<br>A. They did ask for pricing concessions from us in that meeting and I remember Roger's response to that request to KFC or RSCS team was that the price was the price. I just need to know how many loads you want at that price. There was no negotiation on price. | Trial testimony | 3/8/2022 (date of testimony) | Roger Austin | In a meeting with RSCS in the summer of 2014, Defendant Austin stated that the price was the price and he just needed to know how many loads of Pilgrim's chicken RSCS wanted at that price. | A | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 113-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 217:24-218:21. | A. I don't recall if it was before or after this meeting, but I remember pacing in Roger's office and he was on the phone. There were two conversations or he had two different phone calls while I was in and out of his office. And he was kind of bragging or saying rather loudly, I just told them the price is the price. I just need to know how many loads you want at that price. And then after he got done -- when he hung up the phone, he said, That was Kantola. He had a similar conversation when I was in the room a short time later. And when he hung up, I just told them the price is the price, I just need to know how many loads you want at that price, same thing. When he finished his conversation he hung up the phone, he said, That was Brady. I don't remember the order and how long the calls were. I just remembered those -- that comment made to both. And then as Roger hang up the phone announcing who he was -- had just talked to.<br>Q. When Defendant Austin told you he had been talking to Kantola, who did you understand that to be a reference to?<br>A. Bill Kantola.<br>Q. When he told you he was talking to Brady, who did you understand that to be a reference to?<br>A. Scott Brady. | Trial testimony | 3/8/2022 (date of testimony) | Roger Austin | During separate telephone conversations with William Kantola and Defendant Brady, Defendant Austin stated that he told RSCS, that the price is the price and he just needed to know how many loads at that price. After each call, Defendant Austin announced whom he had talked to: Mr. Kantola and Defendant Brady. | A, B, E | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. |
| 114-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 228:16-22. | Q. All right. Now, you described a follow-up conversation to that e-mail; is that correct?<br>A. That's correct.<br>Q. What was the follow-up conversation to that e-mail?<br>A. It was the conversation was between myself and Jason McGuire and him reassuring me that our competitors are going along with the price increases. | Trial testimony | 3/8/2022 (date of testimony) | Jason McGuire | As a follow up to emails [contained in GX-1066] Mr. McGuire in a conversation with Mr. Bryant assured him that Pilgrim's competitors were going along with the price increase. | A, H, I | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>During the second trial, the Court struck Mr. Bryant's testimony regarding a purported agreement to raise prices in 2014 and instructed the jury to disregard that testimony, and this entry violates the Court's order.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>I: No part of this conversation reflects an intention by any alleged co-conspirator to assure another of their ability to consummate a transaction associated in any way with the alleged conspiracy. |
| 115-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 243:8-17. | Q. Do you have an understanding, Mr. Bryant, as to whether Pilgrim's was the price leader following those 2014 negotiations?<br>A. Yes.<br>Q. And what is your basis of that understanding?<br>A. Communications with Roger Austin and Jason McGuire from the outcome of those negotiations and that we were the highest priced.<br>Q. Sorry. The highest price among whom for what?<br>A. Among our competitors to KFC. | Trial testimony | 3/8/2022 (date of testimony) | Roger Austin<br>Jason McGuire | Mr. McGuire and Defendant Austin stated to Mr. Bryant that Pilgrim's was the highest-priced supplier to KFC resulting from the 2014 negotiations. | A, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 116-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/8/2022 at 248:23-249:3. | Q. Why do you associate Koch with Bill Kantola?<br>A. Same reason as Scott Brady with Claxton. I knew Bill Kantola handled the QSR accounts and that those, you know, in conversations with Roger Austin, you know, when he relayed information from Koch, it came -- generally speaking it came from Bill Kantola. | Trial testimony | 3/8/2022 (date of testimony) | Roger Austin<br>William Kantola | When Defendant Austin provided information to Mr. Bryant it typically was information obtained from William Kantola. | A, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government's characterization of Mr. Bryant's testimony fails to specify that any information allegedly obtained from Mr. Kantola related to Koch.<br><br>The witness did not testify to any specific statements made by the declarants listed for this entry.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 117-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 5:1-11. | A. It was after we had our meeting with KFC on January 27th. I believe the bid was due the -- by Friday the following week. My boss, Tim Stiller, called to talk about the progress of the bid.<br>MR. LAVINE: Objection, Your Honor, hearsay.<br>THE COURT: Overruled.<br>A. While we were discussing the bid, he asked if I had pricing information from Roger yet and I told him I had not received any pricing information from Roger. He got upset and he told me that I didn't know shit and he would call and find out for himself or get it himself. And then he hung up the phone on me.<br>(Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 5:1-12) | Trial testimony | 3/9/2022 (date of testimony) | Timothy Stiller<br>Robert Bryant | In 2017, after Pilgrim's meeting with KFC, Mr. Stiller asked Mr. Bryant if he had received pricing information from Defendant Austin yet. Mr. Bryant responded that he had not received it yet. Mr. Stiller, upset by that response, told Mr. Bryant that he did not know shit adding that he would find out the information for himself. | A, E, G, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). United States v. Mobile Materials, Inc., 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 118-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr.: 3/9/2022 at 5:21-6:15. | A. I don't recall Roger reaching out to me. I remember calling Roger after the phone call with Tim Stiller. I relayed the conversation that I and Tim Stiller had and Roger Austin told me that he had a similar conversation and he would make some calls and see what he could find out.<br>Q. And did Defendant Austin call you back after that?<br>A. He did.<br>Q. When?<br>A. It was relatively quickly. I believe that -- our call may have happened that afternoon and then I believe he called me, returned my call the following morning, so I would say within -- less than 24 hours later.<br>Q. All right. Now, that following morning what did Defendant Austin tell you?<br>A. The following morning when Roger called me, you know, after a brief hello he was like, are you ready? I got it. And at that point he gave me pricing information from several competitors.<br>Q. What do you mean when you say pricing information?<br>A. Bid information for the upcoming KFC bid. | Trial testimony | 3/9/2022 (date of testimony) | Roger Austin<br>Robert Bryant | In 2017, after a phone call between Mr. Stiller and Mr. Bryant, Mr. Bryant called Defendant Austin. Mr. Bryant relayed to Defendant Austin the Bryant/Stiller conversation. Defendant Austin stated he had a similar conversation and he would make some calls and see what he could find out.<br><br>Shortly thereafter, likely within 24 hours, Defendant Austin called Mr. Stiller and provided bid information for Pilgrim's competitors. Defendant Austin added that it was not a big deal and that he had price information going back tot he 1990s. | A, B, E, G, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>This entry relates to Mr. Bryant's misleading and false testimony that Pilgrim's received other suppliers' bids for KFC in 2017, when in fact GX1919 reflects current period pricing, and the Court should not permit the government to use Rule 801(d)(2)(E) to continue to sponsor materially inaccurate testimony.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 119-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 20:4-17. | Q. Mr. Bryant, I believe you were describing a conference call with Tim Stiller and Roger Austin. Can you describe what was said on that call?<br>A. Yes. Once again, during the course of that phone call, I presented model that placed Pilgrim's price No. 2 in price in order of the list from my handwritten notes. And while on that phone call, and I do believe it was Mr. Austin, I am not a hundred percent sure if it was Mr. Austin or Tim Stiller, but I do believe it was Mr. Austin that said that he believed that we needed to be more middle of the pack. And based off that conversation, I adjusted the model and ranked Pilgrim's third in price according to that -- the order on my handwritten notes and it's my understanding that was what was ultimately submitted to KFC. | Trial testimony | 3/9/2022 (date of testimony) | Roger Austin<br>Timothy Stiller | During a call between Defendant Austin and Messers Stiller and Bryant regarding bids to KFC in 2017, Defendant Austin or possibly Mr. Stiller stated that Pilgrim's bid needed to be more middle of the pack compared to their competitors' bids. | A, G | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ. |
| 120-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 21:25-22:10. | A. I recall Tim Stiller being very upset with the amount of price concession that KFC had requested. What I recall is KFC gave feedback that they thought our first round bid was received well. However, they wanted -- I don't recall exactly, but I think it was around 7 cents of total price concession. And Mr. Stiller was very upset with that request. And then our conversation that he told -- he had told me that he had asked Roger to tell the competition that we were going to hold and that we needed to find a new hundred million pound customer which meant that he wanted to have an option to completely replace KFC. | Trial testimony | 3/9/2022 (date of testimony) | Timothy Stiller | After learning that KFC sought a price concession from Pilgrim's, Mr. Stiller told Mr. Bryant that he had instructed Defendant Austin to tell Pilgrim's competitors that Pilgrim's was going to hold and that Pilgrim's needed to find a new 100 million pound customer to have the option of completely replacing KFC as a customer. | A, B, E, F, G, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James Log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>F: These statements do not describe any events in any conspiracy, as alleged by the DOJ or otherwise.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 121-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr.: 3/9/2022 at 24:10-26:22. | Q. And did there come a time that one of your colleagues referenced that agreement in a conversation with you?<br>A. Yes.<br>Q. And did he tell you something about owning a contract?<br>A. Yes.<br>Q. What contract did he refer to?<br>A. The 2017 KFC contract.<br>MR. TUBACH: Object. Can we have a side bar, please.<br>THE COURT: Yes.<br>(At the bench:)<br>THE COURT: Mr. Tubach, go ahead.<br>MR. TUBACH: Your Honor, I could be mistaken but I thought this was the subject of a hearing in the prior trial where the witness is now going to get into sort of obstruction type testimony that Mr. Stiller supposedly told Mr. Bryant that he should own the contract because it would be -- he had immunity and therefore could do it. And I could be wrong, but I thought the Court disallowed that testimony in the last trial, but I can be corrected if I am wrong.<br>THE COURT: I can't recall. Ms. Call, do you?<br>MS. CALL: Yes, Your Honor. I reviewed the transcript. There was briefing and a hearing on this precise issue and this line of questioning was allowed in the prior trial and it is contained on pages 859 to 860 on the official trial transcript. That's the actual testimony, I should note, not the hearing.<br>MR. TUBACH: Okay. I will take Ms. Call's representation.<br>THE COURT: Thank you.<br>BY MS. CALL:<br>Q. Mr. Bryant, I believe you said the conversation about owning a contract, it related to a particular one?<br>A. That's correct.<br>Q. Which contract was that?<br>A. The 2017 KFC contract negotiations.<br>Q. So these ones we have just been talking about?<br>A. That's correct.<br>Q. What did you believe Mr. Stiller meant when he told you you owned the contract?<br>MR. TUBACH: Objection, calls for speculation.<br>THE COURT: I will sustain it. If you can lay some foundation.<br>BY MS. CALL:<br>Q. Could you describe the context of your conversation with Mr. Stiller about this? | Trial testimony | 3/9/2022 (date of testimony) | Timothy Stiller | Mr. Stiller told Mr. Bryant that because Mr. Bryant had immunity from prosecution Mr. Bryant needed to own the 2017 KFC contract. | A, R | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>R: Nothing in these statements says anything, or could be understood as saying anything, about avoiding detection from law enforcement. |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | A. Yes. The agreement, the immunity and corporation agreement had been implemented six months or more before this conversation, so --<br>Q. Mr. Bryant, let me perhaps ask you some specific questions.<br>A. Okay.<br>Q. All right. So the agreement was already in place under which you had immunity?<br>A. That's correct.<br>Q. And based on your conversation with Mr. Stiller, were you aware whether he had an understanding of that agreement?<br>A. Yes, he did.<br>Q. So what did you understand him -- and was that agreement in any way a subject of your conversation with him that we are describing?<br>A. It was.<br>Q. All right. And was it in that discussion that he mentioned you owning this contract?<br>A. That is correct. | | | | | | | |
| 122-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr: 3/9/2022 at 30:8-31:11, 32:12-20. | Q. Mr. Bryant, I believe you were just getting into a time when you were negotiating with US Foods. Why were you negotiating with US Foods in 2017?<br>A. We believed that our boneless breast was -- needed a price increase.<br>Q. And what was your position at this time in 2017?<br>A. I was director of sales.<br>Q. And at the beginning of your testimony yesterday, you described certain channels of sales at Pilgrim's. What channel is US Foods in?<br>A. The broad line.<br>Q. And who supervised that group?<br>A. In 2017, I believe Brenda Ray was still with us then.<br>Q. Now, you said you were trying to increase the price on boneless breasts?<br>A. That's correct.<br>Q. And did you have discussions with anyone at Pilgrim's regarding that price increase?<br>A. I did.<br>Q. Can you describe the subject of those discussions?<br>A. Yes. So myself and Tim Stiller had a conversation about the need to increase pricing on our boneless breast to US Foods. We were concerned that raising price to US Foods would potentially lead to a loss of business. So we recalled that or I believe it was I that recalled that Scott Tucker had a prior working relationship with a person at Mar-Jac, so Tim Stiller asked if I could get Scott Tucker to reach out to his contact the Mar-Jac and see if they would be willing to increase prices with us. . . . .<br>A. Mr. Stiller instructed me to ask Scott Tucker to call --<br>MS. LaBRANCHE: Objection, non-responsive, move to strike.<br>THE COURT: Overruled.<br>A. Mr. Stiller instructed me to ask Scott Tucker to do this, up until this point I don't recall asking Mr. Tucker to do something like this. And when Tim Stiller directed me to do that, it gave me the confidence that Mr. Stiller had a belief that Scott Tucker would be able to do this. | Trial testimony | 3/9/2022 (date of testimony) | Robert Bryant Timothy Stiller | Messrs Bryant and Stiller discussed increasing the price of boneless breast to US Foods including their concern that if they raised the price, Pilgrim's would lose sales. Mr. Bryant stated that Scott Tucker had a prior working relationship with a then-current Mar-Jac employee. Mr. Stiller asked Mr. Bryant to instruct Mr. Tucker to contact the individual at Mar-Jac and see if the Mar-Jac individual would increase price in concert with Pilgrim's. | A, B, E, G, P | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>These statements cannot have been "in furtherance" of the charged conspiracy because they are outside the alleged scope of the conspiracy as testified to by Mr. Bryant.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ.<br><br>P: The statements do not set in motion any acts involved with any conspiracy. In any event, the DOJ's proffered basis to conclude these statements were in furtherance of a conspiracy is improper. The Tenth Circuit applies the "in furtherance" test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 123-S | N/A | Trial testimony of Mr. Robert Bryant. Bryant R. Tr. 3/9/2022 at 32:24-33:7. | Q. Now, did you ultimately reach Ute to Mr. Tucker?<br>A. I did.<br>Q. And what did you tell him?<br>A. I explained, you know, our need for a price increase to US Foods and our concern that if we just went to a price increase with them, that there was a potential to lose business, so I asked Mr. Tucker if he would reach out to his contact at Mar-Jac and see if they would be willing to increase prices along with us. | Trial testimony | 3/9/2022 (date of testimony) | Robert Bryant | Mr. Bryant explained to Mr. Tucker that Pilgrim's needed a price increase from US Foods on boneless breasts products and his concern that if Pilgrim's asked for a price increase there was a potential to lose sales. Mr. Bryant asked Mr. Tucker to communicate with his contact at Mar-Jac to determine if Mar-Jac would be willing to increase prices in concert with Pilgrim's. | A, B, E, G | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>These statements cannot have been "in furtherance" of the charged conspiracy because they are outside the alleged scope of the conspiracy as testified to by Mr. Bryant.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>G: The conversation provides no direction to facilitate the objectives of the conspiracy charged by the DOJ. |
| 124-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 33:8-19. | Q. Do you know whether Mr. Tucker actually did reach out to Mar-Jac?<br>A. He did.<br>Q. And how do you know that?<br>A. He gave me regular updates on his progress.<br>Q. What did he tell you?<br>A. After he reached out to his contact at Mar-Jac, he followed up with me and said that they were willing to increase prices with us. They said that they would submit something similar to our price increase. However, they wanted to wait a few weeks to submit because they didn't want an appearance that we were going after those price increases together. | Trial testimony | 3/9/2022 (date of testimony) | Scott Tucker | Mr. Tucker told Mr. Bryant, after Mr. Tucker spoke to his Mar-Jac contact, that Mar-Jac agreed to increase prices in concert with Pilgrim's. M. Tucker stated that he understood Mar-Jac would submit a price increase of similar amount to Pilgrim's price increase. But that Mar-Jac intended to wait a few weeks to communicate the price increase to the customer to avoid the appearance that the competitors were increasing prices in concert. | A, H, L | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>These statements cannot have been "in furtherance" of the charged conspiracy because they are outside the alleged scope of the conspiracy as testified to by Mr. Bryant.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H - The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>L - Nothing about these statements has anything to do with concealing the objective of any conspiracy and particularly not the conspiracy alleged by the DOJ. |

| ID | | Source | Question/Testimony | Type | Date | Speaker | Summary | Grounds | Response |
|---|---|---|---|---|---|---|---|---|---|
| 125-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 34:8-16. | Q. Do you have an understanding as to whether Mar-Jac did as well?<br>A. Yes.<br>Q. What's the basis of that understanding?<br>A. The same conversations with Mr. Tucker where he gave regular feedback.<br>Q. Now, what is your understanding as to whether Mar-Jac also proposed a price increase to US Foods?<br>A. They did. | Trial testimony | 3/9/2022 (date of testimony) | Scott Tucker | Mr. Tucker reported to Mr. Bryant that Mar-Jac proposed a price increase to US Foods. | A, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>These statements cannot have been "in furtherance" of the charged conspiracy because they are outside the alleged scope of the conspiracy as testified to by Mr. Bryant.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 126-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 41:14-22 42:5-8. | Q. Mr. Bryant, did you receive a follow-up call from Mr. Stiller following this e-mail?<br>A. I did, a text message.<br>Q. Sorry, following this text message, thank you. What did Mr. Stiller tell you?<br>A. He scolded me for sending him the two e-mails with competitors name in them and he instructed me to be more strategic when I shared that type of information in the future, that I didn't need to be putting things in writing any longer. . . . .<br>Q. Do you recall Mr. Stiller ever telling his subordinates to stop contacting competitors?<br>A. No. I recall that conversation where he instructed me to be more strategic. | Trial testimony | 3/9/2022 (date of testimony) | Timothy Stiller | After Mr. Stiller sent Mr. Bryant the text message marked as GX-3039, Mr. Stiller called Mr. Bryant to scold Mr. Bryant for putting competitor names in a company email. Mr. Stiller instructed Mr. Bryant to be more strategic when he shared that type of information in the future and that he did not need to be things in writing any longer. | A, B, E, J, R | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role.<br><br>J: The statements do not discuss the alleged conspiracy or any conspiracy and thus are not intended to control damage to a conspiracy.<br><br>R - Nothing in these statements says anything, or could be understood as saying anything, about avoiding detection from law enforcement. |
| 127-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr: 3/9/2022 at 127:21-25. | Q. Good afternoon, Mr. Bryant. Yesterday on direct examination by Ms. Call, you told the jury that Mr. Austin told you that he and Carl Pepper shared information. Do you recall that?<br>A. That's correct. | Trial testimony | 3/9/2022 (date of testimony) | Roger Austin | Defendant Austin told Mr. Bryant that Austin and Mr. Pepper shared price information. | A, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>This entry relates to testimony provided on cross-examination when asked about prior testimony.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H - The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 128-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr: 3/9/2022 at 154:7-17. | Q. Were you asked the following question and gave the following answer on November 2, 2021: Question: This is for the record Page 1062 to 1063 of the transcript.<br>  When you testified earlier about what that feedback meant on Government's Exhibit 9140, what you said was the feedback that I got from Scott Tucker from Mar-Jac is that they agreed to raise prices similar to ours, however they wanted to wait a couple weeks to submit those price increases so there would be the appearance that we were not working together, right?<br>  Answer, That sounds accurate.<br>  Question, that's the feedback you are talking about on Exhibit 9140?<br>  Answer, Yeah?<br>A. Okay.<br>Q. So that's your testimony in November, correct?<br>A. Okay.<br>(Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 154:7-23) | Trial testimony | 3/9/2022 (date of testimony) | Scott Tucker | Mr. Tucker told Mr. Bryant that Mar-Jac had agreed to raise its price similar to Pilgrim's price increase but wanted to wait a few weeks to communicate the increase to the customer to avoid the appearance that they were collaborating on prices. | A, H, L | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>This entry relates to testimony provided on cross-examination when asked about prior testimony.<br><br>These statements cannot have been "in furtherance" of the charged conspiracy because they are outside the alleged scope of the conspiracy as testified to by Mr. Bryant.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>L: Nothing about these statements has anything to do with concealing the objective of any conspiracy and particularly not the conspiracy alleged by the DOJ. |
| 129-S | N/A | Trial testimony of Mr. Robert Bryant. R. Tr: 3/9/2022 at 159:20-160:2. | Now, you also testified that it was Pilgrim's that wanted to get the KFC deal done first so they could then use that to try to leverage other negotiations. Did you remember that testimony?<br>A. Yes.<br>Q. Do you have any idea about whose idea it was to negotiate when the negotiations took place?<br>A. No. That what's called strategy I learned of that through Jason McGuire. (Trial testimony of Mr. Robert Bryant. R. Tr. 3/9/2022 at 159:19-160:2) | Trial testimony | 3/9/2022 (date of testimony) | Jason McGuire | Mr. McGuire told Mr. Bryant that Pilgrim's wanted to get the KFC deal done first so Pilgrim's could then use that to try to leverage other negotiations. | A, H | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>H: The conversation does not advise any alleged co-conspirators of the progress of any conspiracy or of conspiratorial activities. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |

| # | | Source | Statement | Type | Date | Declarant(s) | Description | Objections | Court's Ruling / Notes |
|---|---|---|---|---|---|---|---|---|---|
| 130-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/2/2022 at 243:14-246:5 | Q. Mr. Pepper, if I could focus your attention to the year 2014. Could you please describe the nature of your communications with competitors that you mentioned earlier? MR. McLOUGHLIN: Objection again to the form of the question as for all of the reasons just stated, Your Honor, as to relevancy, who, what, when, where, about, the question is vague. It is overbroad. It lacks a foundation. THE COURT: Overruled. A. Would you ask me that question again, please? MS. SWEENEY: May I request a read-back of the question? THE COURT: Why don't you just state the question again. BY MS. SWEENEY: Q. Mr. Pepper, directing your attention to the year 2014, you described -- if you could describe the nature of the communications you had with your competitors in that year. A. The conversations I had with -- MR. McLOUGHLIN: I apologize for interruptions and the many objections. A question might be describe the conversations, might be appropriate, but asking about what the nature of them in which then invites conclusions and narratives is improper in form. Objection to form. THE COURT: All right. Overruled. A. The nature of the conversation in 2014 was for the RSCS, KFC 2015 contract and it was concerning a substantial pricing increase that I talked to Jimmie Little at Pilgrim's and Scott Brady at Claxton and Ric Blake at George's to see if they had basically heard or if they were looking to also have a substantial pricing increase for the 2014 contract -- excuse me, 2015 contract. BY MS. SWEENEY: Q. What was your reason -- did you have a reason for talking to Defendant Little or Mr. Mr. Little, Mr. Blake and Mr. Brady about the 2015 contract? A. Yes, ma'am. Q. What was your reason for talking to them? A. It was that I knew what Tyson Foods' contract was going to be pricing-wise, and I talked to those three because I could -- to see if they were basically hearing if there was going to be a substantial increase on that price, and then I also basically trusted what those three would tell me. Q. What, if any, understanding did you have, Mr. Pepper, when engaging in that conduct? MR. McLOUGHLIN: Objection to the vagueness and form, Your Honor, as to, quote, his understanding. MS. SWEENEY: Your Honor, I am asking if he had one. It was a yes or no question. THE COURT: Overruled. BY MS. SWEENEY: Q. Mr. Pepper, what, if any, understanding did you have? Yes or no? Did you have an understanding when having a conversation -- when -- excuse me. Let me start again. Mr. Pepper, yes or no. What, if any, understanding -- did you have an understanding when you had these conversations with Defendants Little, Blake and Brady? MR. McLOUGHLIN: Objection to form, Your Honor. MR. TUBACH: Vague and ambiguous question. What does understanding mean? THE COURT: I am going to sustain that. Whatever the understanding is not defined, so that is vague. MS. SWEENEY: Yes, Your Honor. One moment to confer. THE COURT: Of course. BY MS. SWEENEY: Q. So Mr. Pepper, at the time you said you had spoken to Mr. Little, Mr. Blake and Mr. Brady. Where did they work? A. Jimmie Little worked at Pilgrim's and Scott Brady worked at Claxton and Ric Blake worked at George's. (Trial testimony of Mr. Carl Pepper. R. Tr. 3/2/2022, 243:13-246:5) | Trial testimony | 3/2/2022 (date of testimony) | Jimmie Little Ric Blake Scott Brady | Regarding, a substantial pricing increase for KFC, Mr. Pepper talked to Jimmie Little at Pilgrim's and Scott Brady at Claxton and Ric Blake at George's to see if they had basically if they were looking to also have a substantial pricing increase for the 2015 contract. | A, C, E, F | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence. The witness did not testify to any specific statements made by the declarants listed for this entry. A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. F: These statements do not describe any events in any conspiracy, as alleged by the DOJ or otherwise. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 131-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/2/2022 at 250:10-251:8; 253:2-11; 254:17-255:24. | Q. Okay, Mr. Pepper. Let's start with talking about your conversations with Mr. Little. Did you talk to Mr. Little about the substantial price increase? A. Yes, ma'am. Q. What -- about how many times I believe you told us about five? A. Somewhere in that neighborhood, yes, ma'am. Q. What was discussed on those calls? A. Basically just about the contract coming up that was in the process of coming up for the KFC contract and a substantial pricing increase that it was rumored -- I mean, I knew what we were doing, but -- and that was the main conversation, to see if Pilgrim's was considering the same thing. Q. Now, Mr. Pepper, you said, I knew what we were doing. Can you describe what you mean by that? A. Yes, ma'am, because saw an e-mail originally that talked about what the price increase at Tyson Foods was going to be for that contract year. Q. And when did you learn what Tyson Foods' price increase was going to be for that contract year? A. It was early -- early June of 2014. Q. You said the purpose was to see if Pilgrim's Pride would do the same thing; is that right? A. Yes, ma'am. Q. And when in time were those conversations? A. I don't remember the exact dates. Q. Do you remember generally when those conversations were? A. Yes, ma'am. It would have been early -- somewhere between June and the beginning of August. Q. Of what year? A. 2014. | Trial testimony | 3/2/2022 (date of testimony) | Carl Pepper Jimmie Little | During phone calls in 2014 between Carl Pepper and Jimmie Little, they discussed that upcoming KFC contract and Tyson's substantial price increase they knew they were doing, with Mr. Pepper inquiring whether Pilgrim's Pride considering doing the same. | A, C, E | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence. The witness did not testify to any specific statements made by the declarants listed for this entry. A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Q. How did you have those conversations? Were you in person were you on the phone? Was there some other way?<br>A. It was on the phone.<br><br>Q. So what was discussed with Mr. Little in that subsequent conversation?<br>A. It was if Pilgrim's was going to do a substantial pricing increase and there would be an agreement that there would be a substantial price increase.<br>Q. When you say that we would be in agreement that there would be a substantial price increase, what are you referring to? Whose agreement with whom?<br>MR. FELDBERG: Objection that's not what he said. I heard would there be.<br>MS. SWEENEY: Your Honor, I apologize if I misheard.<br>THE COURT: Overruled. He can answer.<br>MS. SWEENEY: Go ahead, Mr. Pepper.<br>A. The conversation with Jimmie Little was was Pilgrim's going -- do we have basically -- I can't word the exact words the way I said it, but an agreement that Pilgrim's was going to have a substantial pricing increase like we were, Tyson was.<br>BY MS. SWEENEY:<br>Q. And so can you describe when you said an agreement -- Pilgrim's was going to have a substantial price increase like Tysons was. Can you further explain what you mean?<br>MR. BYRNE: Objection, Your Honor. What he means now or what he meant then?<br>THE COURT: Can you clarify? You are asking him his understanding at the time?<br>MS. SWEENEY: Yes.<br>BY MS. SWEENEY:<br>Q. So Mr. Pepper, can you explain your understanding at the time?<br>A. Yes, ma'am. My understanding towards the last conversation was that Pilgrim's was going to have a substantial pricing increase just like Tyson was going to have a substantial pricing increase. | | | | | | | |
| 132-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/2/2022 at 256:5-258:3. | Q. Now, let's talk about your conversations with Mr. Brady at Claxton. In that time period that we have been talking about, 2014, do you recall when you had conversations with Mr. Brady about the substantial price increase?<br>A. I don't remember exact dates.<br>Q. Do you remember generally?<br>A. Yes, ma'am. Beginning of August.<br>Q. Of what year?<br>A. Of 2014.<br>Q. So and approximately how many conversations do you recall having with Mr. Brady of Claxton?<br>A. It could have been four or five. I don't remember the exact number.<br>Q. In that initial conversation with Mr. Brady of Claxton, what did you discuss?<br>A. We discussed the contract coming up for KFC and discussed -- talked about the substantial -- about a substantial pricing increase.<br>Q. Specifically what with regard to the substantial price increase?<br>A. Well, at the very beginning of the conversation, we just talked about that. And then towards the end it was is Claxton -- an agreement basically is Claxton going to do --<br>MR. McLOUGHLIN: Your Honor, apologies, objection, same objection, motion to strike. We are back to basically translating something because he doesn't recall what was said.<br>THE COURT: Overruled.<br>BY MS. SWEENEY:<br>Q. You can finish, Mr. Pepper.<br>A. We just -- like I said, it was multiple conversations. And towards the very end of them we were still talking about that specific contract and that Claxton was also going to agree to have a substantial pricing increase.<br>Q. And Claxton was going to agree to have a substantial price increase. Who was Claxton agreeing to? What was discussed?<br>A. We were just talking -- who was the agreement --<br>MR. LAVINE: Objection, Your Honor. We are talking about a conversation with Mr. Brady. We are not talking about conversations with Claxton?<br>THE COURT: Overruled.<br>A. Would you ask that again, please.<br>BY MS. SWEENEY:<br>Q. Yes, Mr. Pepper. So I believe you said that Claxton was going to agree to have a substantial price increase, and I am asking who that agreement was between.<br>A. Scott Brady and -- it was the one that I was talking to at Claxton.<br>Q. Scott Brady and whom?<br>A. And myself at Tyson Foods. | Trial testimony | 3/2/2022 (date of testimony) | Carl Pepper<br>Scott Brady | During the summer of 2014 Mr. Pepper had conversations with Scott Brady at Claxton generally around August 2014. Within those conversations, there was discussion of the upcoming KFC contract negotiations and the substantial pricing increase including whether Claxton was pursuing such increases. | | A, C, E | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 133-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/3/2022 at 38:8-40:6 | Q. What, if anything, happened after that meeting? A. After the meeting Tim asked me to talk to some of the people that I knew to see if they were considering doing the same thing. Q. So let's break that down. You said Tim asked me. Who is Tim? A. Tim Mulrenin, my boss. Q. When you said asked me to talk to some of the people I knew, who are some of the people I knew? A. Jimmie Little, Ric Blake and Scott Brady. Q. And I apologize. I forget the end of your sentence. Can you repeat what Mulrenin asked you to reach out to defendants Little, Blake and Brady about? MR. McLOUGHLIN: Objection, Your Honor, asked and answered. THE COURT: Overruled. BY MS. SWEENEY: Q. Go ahead. A. He just asked me to see if those companies were talking about if they were considering having a substantial price increase also. Q. And did you take any actions as a result of that request from Defendant Mulrenin? A. Yes, ma'am. Q. What actions? A. I made some phone calls to the three people we're talking about. Q. And who were those? A. Jimmie Little, Ric Blake and Scott Brady. Q. Now, why did you call -- why did you make calls to those three individuals? A. There is there was reason to see if they were considering doing a substantial price increase for the upcoming RSCS contract. Q. What did you understand Defendant Mulrenin had asked you to do? A. He asked me to see if they were going to do it and see if there was an understanding that they were going to implement it. Q. I am sorry, Mr. Pepper. I didn't hear the end of your sentence. Could you just say it again? A. I asked them if they were definitely looking at doing it and if there would be an understanding between us that those companies that -- there would be a substantial pricing increase. Q. So Mr. Pepper, I want to break that down just so I understand. So you said you were going to ask if they were looking at doing it. What did you mean by it? A. A substantial price increase for the 2015 contract. | Trial testimony | 3/3/2022 (date of testimony) | Carl Pepper Timothy Mulrenin | Mr. Mulrenin, Pepper's boss, directed Pepper to talk to some of the people that he knew to see if they were considering the price increase for the KFC 2015 contract. The individuals included Jimmie Little, Ric Blake and Scott Brady. | A, B, D | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). B: There are no statements in this conversation that reveal the existence of a conspiracy. D: The statements cannot be reasonably interpreted to recruit potential co-conspirators or induce others to assist in carrying out any action at all, much less carry out the alleged conspiracy. |
| 134-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/3/2022 at 41:6-13; 43:24-44:4; 45:1-7 | Q. Did Defendant Mulrenin tell you how to get the information? A. Well, he just told me to call the people that I had contact information -- that I had contacts with that I trusted and knew. Q. And those people that you trusted and knew, those were defendants Little, Defendant Brady and Defendant Blake; is that right? A. Yes, ma'am. Q. Do you have a recollection of what was said in the later set of calls? A. The later part of the calls is basically are you going to do a substantial pricing increase and an understanding that they were going to do a substantial pricing increase along with Tyson Foods. Q. And what did you tell Defendant Brady about Tyson's plans for the substantial price increase? A. That Tyson was going to do a substantial price increase. Q. What did you tell Defendant Blake about Tyson's plans for a substantial price increase? A. That Tyson was also going to do a substantial price increase. | Trial testimony | 3/3/2022 (date of testimony) | Timothy Mulrenin | Mr. Mulrenin told Pepper to call the people that he had contact information that he trusted and knew. This included Messers Little, Brady, and Blake. | A, B, E | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence. A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). B: There are no statements in this conversation that reveal the existence of a conspiracy. E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. |
| 135-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/3/2022 at 112:7-21. | Q. Starting with Defendant Blake at George's, what did you talk to Defendant Blake about? A. At first I asked him which I knew he most likely did if he got the e-mail from Kent asking about the big box promotion for the month of September and were they looking -- were they going -- was George's going to agree to it and what type of discount that they were looking for -- that they were willing to do. Q. What type of discount? Who was they in your answer, they were going to do? A. George's. Q. What did Defendant Blake say? A. He told me that they were going -- that George's was going to do the promotion -- the discount and that it would be 2 cents a pound. | Trial testimony | 3/3/2022 (date of testimony) | Carl Pepper Ric Blake | Pepper asked Blake if he got the e-mail from Kent Kronauge at Popeye's about the big box promotion for the month of September and were they looking to agree to a discount. Blake told Pepper George's was going to do 2 cents per pound. | A, B, C | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). ). Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence. A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). B: There are no statements in this conversation that reveal the existence of a conspiracy. C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |

| # | | Source | Statement | Type | Date | Declarant | Description | Objections | Response |
|---|---|---|---|---|---|---|---|---|---|
| 136-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/3/2022 at 141:6-144:9. | Q. And now, Mr. Pepper, I would like to direct your attention to tab 34 and that's government Exhibit 751.<br>A. Yes, ma'am.<br>Q. Do you recognize this document?<br>A. Yes, ma'am.<br>Q. What type of document is this?<br>A. It's a text message.<br>Q. And who is it -- who are the text messages between?<br>A. I sent it to Tim Mulrenin and Tim Scheiderer.<br>Q. What's the general topic of this text message?<br>A. It's concerning the Popeye's contract for 2017 and concerning the discounted price spread out over either 1 year or two years.<br>MS. SWEENEY: The government moves to admit government Exhibit 751.<br>THE COURT: Any objection to the admission of Exhibit 751?<br>That exhibit will be admitted.<br>MS. SWEENEY: Your Honor, permission to publish government Exhibit 752 through 758? I believe they are short so we would do one at a time.<br>THE COURT: You may.<br>BY MS. SWEENEY:<br>Q. If we can start with 752, please. So Mr. Pepper, government Exhibit 752, who is this from?<br>A. It's from myself.<br>Q. Who is it to?<br>A. Tim Mulrenin.<br>Q. What did you say to Tim Mulrenin?<br>A. You with your customers.<br>Q. Why did you send this message to Defendant Mulrenin?<br>A. I was trying to get ahold of him to let him know that we still hadn't sent our contract in that Kent was looking for and also I found out some information on what the other poultry companies were going to do with the discounted price of the next contract.<br>Q. If we can look at government Exhibit 753. And Defendant Mulrenin respond to your text message?<br>A. Yes, ma'am.<br>Q. What did he say?<br>A. He asked what's up?<br>Q. If we can look at Government's Exhibit 754. Did you respond to his text message?<br>A. Yes, ma'am.<br>Q. What did you say?<br>A. Popeye's proposal.<br>Q. And what time was this sent listed on this message?<br>A. 9/6/17 at 3:34 p.m.<br>MS. SWEENEY: If we could publish Government's Exhibit 755.<br>BY MS. SWEENEY:<br>Q. What time is listed on the face of the message, what time is Government's Exhibit 755 sent?<br>A. September 6, 2017, 3:34 p.m.<br>Q. Is that later in the same minute as the one we just addressed?<br>A. Yes, ma'am.<br>Q. What did you say to Defendant Mulrenin?<br>A. Got a general idea of what George's is doing.<br>Q. What did you mean when you said general idea?<br>A. That I had -- I knew what -- he had a general idea how they were going to spread out the discount.<br>Q. The discount for whom?<br>A. The discount for Popeye's.<br>Q. When you say spread out the discount, can you describe what you mean?<br>A. It was going to be done over a two-year period.<br>Q. What was going to be done over a two-year period?<br>A. The discount was going to be spread out over two years of the contract.<br>Q. And who was going to spread the discounts over two years for the contract?<br>A. George's said they were and then the other poultry companies that I talked to were also saying the same thing. They were going to spread it out over a two-year period, the discount.<br>Q. When you said it says I got a general idea of what George's is doing, where did that information come from?<br>A. That came from Ric Blake. | Trial testimony | 3/3/2022 (date of testimony) | Carl Pepper Ric Blake | In response to Mr. Pepper's question, Defendant Blake confirmed information for George's regarding spreading the discount over two years. | A, B, F | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>B: There are no statements in this conversation that reveal the existence of a conspiracy.<br><br>F: These statements do not describe any events in any conspiracy, as alleged by the DOJ or otherwise. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives" unconnected to the operation of the conspiracy and therefore are not in its furtherance. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 137-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/3/2022 at 194:9-195:6. | Q. So Mr. Pepper, in the summer of 2014 when you had these conversations with Defendant Little, did you discuss Tyson's future pricing plan with Defendant Little?<br>MR. BYRNE: Objection, Your Honor. That's the same question.<br>MS. SWEENEY: Your Honor, I believe it's been asked and answered but I don't believe it actually has.<br>MR. BYRNE: Objection, asked and answered.<br>THE COURT: The term future was not used in the past. Therefore the objections is overruled.<br>A. I told him we had -- we were going to have a substantial pricing increase, not an actual price.<br>BY MS. SWEENEY:<br>Q. So you shared -- the substantial price increase, was that Tyson's future plan for the upcoming contract that you were in the middle of negotiations for?<br>MR. LAVINE: Objection, leading, Your Honor.<br>THE COURT: Sustained.<br>BY MS. SWEENEY:<br>Q. When you say future pricing, can you describe what you mean?<br>A. I meant for the contract for the RSCS KFC contract for 2015, it was going to be a substantial pricing increase. | Trial testimony | 3/3/2022 (date of testimony) | Carl Pepper Jimmie Little | Mr. Pepper discussed Tyson's future pricing plan with Defendant Little, for Tyson to obtain a substantial price increase from KFC. | A, C, E | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)).<br><br>Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence.<br><br>The witness did not testify to any specific statements made by the declarants listed for this entry.<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 138-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/7/2022 at 242:23- 243:7 | BY MS. SWEENEY: Q. Yes, sir. So I will ask a different question. In the summer of 2014, do you recall having conversations with Defendant Blake about the substantial price increase? A. Yes, ma'am. Q. Do you recall having conversations with Defendant Little about the substantial price increase? A. Yes, ma'am. Q. Now, focusing on the conversations that you had with Defendant Blake. On cross-examination you were asked about conversations with Defendant Blake, about rumors, about whether or not you were competing. So when you spoke with Ms. Johnson about the conversation with Defendant Blake to get an idea of what George's was going to do on the contract, was that the only conversation that you had with Defendant Blake about the KFC contract negotiations? MS. PREWITT: Objection, Your Honor, compound question, objection as to form. THE COURT: Overruled. A. Was that it the only conversation? No, ma'am. (Trial testimony of Mr. Carl Pepper. R. Tr. 3/7/2022, 242:23- 243:17) | Trial testimony | 3/7/2022 (date of testimony) | Carl Pepper | Mr. Pepper had conversations with Mr. Blake and Mr. Little in the summer of 2014 about the substantial price increase for KFC. | A, C, E | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement, which was known to the government in advance of the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence. A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). E: These statements do not identify any alleged co-conspirators, nor do they describe any alleged co-conspirator's role. |
| 139-S | N/A | Trial Testimony of Mr. Carl Pepper. R. Tr. 3/7/2022 at 262:12-17. | Q. And did you report the conversations you had with Defendant Little regarding the substantial price increase during the summer of 2014 to anyone within Tyson? A. Yes, ma'am. Q. And who did you report those conversations to? A. Jimmie Little -- Tim Mulrenin. | Trial testimony | 3/7/2022 (date of testimony) | Carl Pepper | Mr. Pepper reported his conversations with Mr. Little regarding the substantial price increase discussions in 2014 to Mr. Mulrenin. | A, C | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. Mr. Pepper's testimony regarding conversations with alleged co-conspirators is unreliable, non-specific, and was repeatedly contradicted by the documentary evidence. The description of an alleged co-conspirator's participation in the alleged conspiracy and the actions of others is not subject to admission under Rule 801(d)(2)(E). *United States v. Mobile Materials, Inc.*, 881 F.2d 886, 871 (10th Cir. 1989) (Rule 801(d)(2) is not applicable to "[t]he direct testimony of a conspirator . . . describing his participation in the conspiracy and the actions of others" (citation omitted)). A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). C: These statements have nothing to do with the history of the conspiracy as alleged in the DOJ's proffer or of any conspiracy. And to the extent these statements outline the history of the conspiracy, the statements amount to "mere narratives," unconnected to the operation of the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). |
| 140-S | GX-10048 | Pilgrim's Pride Corporation Invoice No. 922142205 dated 12/30/2015 (PILGRIMS2-DOJ-0000000001) | Not Applicable | Invoice | 12/31/2015 | Pilgrim's Pride Corporation | Net invoiced amount of $1,987.51 for chicken products sold including KFC products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |
| 141-S | GX-10049 | Pilgrim's Pride Corporation Invoice No. 922147108 dated 12/30/2015 (PILGRIMS2-DOJ-0000000002) | Not Applicable | Invoice | 12/31/2015 | Pilgrim's Pride Corporation | Net invoiced amount of $32,411.40 for chicken products sold including KFC products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |
| 142-S | GX-10050 | Pilgrim's Pride Corporation Invoice No. 922147868 dated 12/30/2015 (PILGRIMS2-DOJ-0000000003) | Not Applicable | Invoice | 12/31/2015 | Pilgrim's Pride Corporation | Net invoiced amount of $1,386.65 for chicken products sold including KFC products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |
| 143-S | GX-10051 | Pilgrim's Pride Corporation Invoice No. 922147876 dated 12/30/2015 (PILGRIMS2-DOJ-0000000004) | Not Applicable | Invoice | 12/31/2015 | Pilgrim's Pride Corporation | Net invoiced amount of $1,324.57 for chicken products sold including KFC products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document. The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |

| # | Ex. | Description | Author | Type | Date | Source | Summary | Obj. | Response |
|---|---|---|---|---|---|---|---|---|---|
| 144-S | GX-10052 | Pilgrim's Pride Corporation Invoice No. 922148054 dated 12/30/2015 (PILGRIMS2-DOJ-0000000005) | Not Applicable | Invoice | 12/31/2015 | Pilgrim's Pride Corporation | Net invoiced amount of $36,666.92 for chicken products sold including KFC products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)).  The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |
| 145-S | GX-10053 | Pilgrim's Pride Corporation Invoice No. 922148064 dated 12/30/2015 (PILGRIMS2-DOJ-0000000006) | Not Applicable | Invoice | 12/31/2015 | Pilgrim's Pride Corporation | Net invoiced amount of $27,162.56 for chicken products sold including KFC products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)).  The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |
| 146-S | GX-10054 | Pilgrim's Pride Corporation Invoice No. 922160015 dated 1/4/2016 (PILGRIMS2-DOJ-0000000007) | Not Applicable | Invoice | 1/4/2016 | Pilgrim's Pride Corporation | Net invoiced amount of $26,882.81 for chicken products sold including KFC and Popeye's products. | A, S | The DOJ could have but did not seek 801(d)(2)(E) treatment for this statement at the James hearing. The DOJ does not even attempt to explain why it did not include this document on its initial James log. The Court has previously sustained hearsay objections to exhibits not on James Log (see 11.5.21 Trial Tr. at 1798:11-18). For this reason alone, the Court should exclude this document.<br><br>The government fails to establish that the invoices are a declarant's statements. See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)).<br><br>A: The statements do not promote the object of the alleged conspiracy. Any suggestion otherwise is a purely self-serving interpretation of otherwise innocuous comments and could be applied to any conversation involving any speaker in any context. The DOJ's unduly broad application of the "in furtherance" test contradicts established Tenth Circuit law, which applies the test "narrowly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc).<br><br>S: Pilgrim's invoices are not statements by a declarant related to distributing or collecting the proceeds of a conspiracy. This is a document created by Pilgrim's Pride – a corporation, which is not a declarant under Rule 801(d)(2)(e). See, e.g., *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a person may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)).  The Government has failed to identify a declarant or statement being made in this invoice. Furthermore, the Government has failed to offer any evidence that this invoice was issued in furtherance of the alleged conspiracy. |