IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>1.    JAYSON JEFFREY PENN,<br>2.    MIKELL REEVE FRIES,<br>3.    SCOTT JAMES BRADY,<br>4.    ROGER BORN AUSTIN, and<br>5.    WILLIAM WADE LOVETTE,<br><br>      Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANTS' MOTION IN LIMINE 3: TO EXCLUDE "SUMMARY" EXHIBITS**

The government has included 13 summary exhibits on its exhibit list that purport to summarize certain facts in this case. As in the previous two trials, Defendants object to the admission of these exhibits.[1] The government told the Court that it was going to "streamline" this case going into the third trial. *See* Dkt. 1238 at 2; 4/14/2022 Hearing Tr. 10:18–11:1.[2] But it is clear from these summary exhibits that DOJ has not streamlined anything. *See* Dkt. 1270. Instead, the government has manipulated the summary exhibits from the previous trial by adding new content, imagery, and other aesthetic changes, moving farther away from the boundaries set by FRE 1006 and 611. These are not summaries. They are argument. As argument, they are pedagogical, testimonial, advocacy, and better suited for demonstratives, but inappropriate for

---

[1] Defendants reiterate and preserve all previous objections to DOJ's summary exhibits. They should be limited to use as demonstratives.
[2] As with all of Defendants' Motions *In Limine*, to the extent the Court's recollection differs from unofficial transcript citations, Defendants defer to the Court.

1

admission under FRE 1006.

DOJ should not be allowed to benefit from its failure to convict any defendant in the prior two trials by continuing to tinker with the summary exhibits. The current versions of the summary exhibits are vastly different from those previously admitted by this Court and DOJ provides no rationale for these extensive revisions. These revisions have culminated in summary exhibits that are argumentative, confusing, and misleading. For the reasons below, the Court should exclude all of DOJ's summary exhibits, or in the alternative, exclude select portions of DOJ's summary exhibits.

**LEGAL STANDARD**

Federal Rule of Evidence 1006 permits the use of summary exhibits "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." For purposes of Rule 1006, underlying evidence is voluminous when it would be "difficult" for the jury to comprehend without summarization. *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008); *United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998). Rule 1006 summaries must be based on admissible evidence, *United States v. Channon*, 881 F.3d 806, 811 (10th Cir. 2018), and must reflect only contents of the evidence summarized. *State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (summaries that go beyond "simple compilation" of records impermissible). The summaries should not "embellish[]" or "annotate[]" the evidence summarized, "whether in the form of labels, captions, highlighting techniques, or otherwise." *Bray*, 139 F.3d at 1110-11. "[T]he district court must look at two factors when determining whether to admit summary testimony and accompanying charts: (1) the testimony's or chart's potential to aid [] the jury in ascertaining the truth,…; and (2) the possible prejudice

that may result to the defendant in allowing such evidence." Dkt. 741 at 2 (quoting *United States v. Brooks*, 736 F.3d 921, 931 (10th Cir. 2013) (internal quotations omitted)).

Federal Rule of Evidence 611(a) permits the introduction of summary evidence otherwise inadmissible under Rule 1006 only when the summary will "aid[] the jury in ascertaining the truth" and its admission will not unduly prejudice the defendant. *United States v. Ray*, 370 F.3d 1039, 1046-47 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1109; *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013).

## ARGUMENT

### I. The Government's "Summary" Exhibits Should Be Excluded As They Are Argumentative, Confusing, and Misleading.

DOJ has made extensive substantive and aesthetic revisions to the latest iteration of its summary exhibits. These changes are the type of "embellishments" that courts have found unfairly prejudice defendants. *See Bray*, 139 F.3d at 1110-11. It is immediately evident that these summary exhibits go well beyond a "simple compilation" of the underlying documents. *See State Office Sys.*, 762 F.2d at 845-46. Rather, DOJ has manipulated the exhibits into a form that furthers their argument and is bound to confuse and mislead the jury.

In deciding to admit prior summary exhibits, the Court relied on the two-prong test adopted by the Tenth Circuit in *United States v. Ray*, 370 F.3d 1039, 1046-47. The first prong of the test looks to whether the summary chart "aids the jury in ascertaining the truth" considering "the length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury." *Id.* (quotation omitted). When this case was tried the first two times, there were ten defendants. After the second mistrial, DOJ dismissed five of the defendants and represented repeatedly to this Court that it planned to

"streamline" the case.[3] Given the reduced number of defendants and DOJ's stated plans to streamline its case, the first prong of the *Ray* case no longer applies as a basis for admission for the summary exhibits.

Moreover, DOJ's continued changes to the summary exhibits with even more documents and phone calls that were, in large part, admitted or stipulated to in previous trials only serves to reinforce the fact that these charts are not summaries at all, but rather, arguments. *See* Attached Ex. A (New Entries in DOJ's "Summary Exhibits"). This is further evidenced by the extensive use that DOJ made of the charts in both closing arguments in the prior two trials. For this reason alone, the charts should not be admitted. But, even if the Court is not inclined to exclude the summary exhibits in their entirety, DOJ should not be allowed to benefit from its failure to convict the Defendants by continuing to try to supplement its arguments and enhance its presentation with documents and phone calls it has long been aware of at this juncture in the proceedings. If the Court admits any of the summary charts at all, DOJ should not be permitted to use its previous failures (under the guise of streamlining) to give itself a third bite at the apple and should be required to use the same summary exhibits that were admitted at the second trial without yet another opportunity to take advantage of its failure to convict any of the Defendants in two previous trials and hone its presentation in advance of a third trial.

The following examples demonstrate some of the reasons the summary exhibits are inappropriate and should be excluded:

---

[3] During the first trial, there were a total of 34 witnesses – 30 government witnesses and 4 defense witnesses. During the second trial, the government only put on 13 witnesses. The defense put on 11 witnesses for a total of 24 witnesses at trial. Given the DOJ's announced plan of streamlining the case and the dismissal of 5 defendants, the number of witnesses should continue to decrease hence lessening any need for summary exhibits.

***Previously Dismissed Defendants.*** The summary exhibits consistently reference the previously dismissed defendants in this case. In fact, two of the summary exhibits—GX 54 and GX 55—reference only the dismissed defendants and none of the remaining five. The inclusion of these references to dismissed defendants are likely to confuse the jury and directly contradict the government's promise to "streamline" the case. *See* Dkt. 1238 at 2; 4/14/2022 Hearing Tr. 10:18–11:1.[4]

***Time Zone Conversions.*** In numerous entries throughout the summary exhibits, the government has represented that it "[a]djusted the time zone to Eastern Time" for certain documents. *See* Dkt. 1270 at 2-4. But as a general matter, these time zone conversions are not discernible from the face of the source exhibits. In order to adjust to Eastern Time, someone had to make judgment calls and calculations. Those judgment calls and calculations are reflected on the summary charts, not the direct material from the source exhibit. Thus, these time zone entries are inappropriate for summary exhibits because they go beyond a "simple compilation" of records to manipulate the information contained therein. *State Office Sys.*, 762 F.2d at 845-46.

***"Origination".*** For some, but not all, calls represented on the summary exhibits, DOJ has added a line stating "Origination…..[Location]," which presumably is to be understood as where the individual making the call was located. *See, e.g.* GX 52 at 1 (containing entries both with and without "origination" information). This inconsistency would be confusing to the jury and it is unclear why having the "origination" information for some, but not all, entries would help the jury ascertain the truth. At the same time, the inconsistent entries would be prejudicial to

---

[4] To the extent DOJ argues that the summary exhibits are nonetheless useful in showing the existence of a conspiracy, that evidence is cumulative of the other summary exhibits and evidence DOJ intends to offer.

Defendants by suggesting that there is something important or nefarious about the calls with the "origination" information. *See* Dkt. 741 at 2.

*Company Logos*. DOJ has also added company logos throughout the charts to identify the employment for "chicken suppliers." Dkt. 1270 at 2. As a threshold matter, including the logos is argumentative and prejudicial and turns the summary exhibits into demonstratives as it is an obvious form of impermissible "labels, captions, and highlighting techniques." *See Bray*, 139 F.3d at 1110. There is absolutely nothing about the admission of company logos that "cannot conveniently be examined in court." FRE 1006. Visually, the company logos draw extra attention to supplier communications—as DOJ has only included the logos for suppliers, not other individuals—which DOJ intends to highlight as part of their argument. Including logos only for alleged conspirators is simply argument prohibited under either Rule 1006 or Rule 611. Additionally, the use of company logos presents another source of confusion for the jury as it suggests that the companies themselves—rather than the individual employees—are on trial. These logos imply that the individuals should be associated with the actions of their employers as a whole. This is exacerbated by the fact that the company logos are larger than Defendants' own names, and in some instances, DOJ has included company logos on their own without providing any additional context for the source of the communications. *See, e.g.,* GX 60 at 1 (phone call on August 29, 2014 at 7:50 AM from Mar-Jac logo to Jayson Penn (GX 9672)).

*Color Coding.* At the first trial, the government used the following color coding for entries on its summary exhibits: orange (competitor supplier phone calls), blue (all other phone calls), and green (all emails and text messages). Over Defendants' objections, the Court permitted DOJ to use color coding for entries as long as the "color association" was not

"misleading or argumentative." Tr. 3839:7-17. At the second trial, DOJ changed to the following color coding: orange (competitor supplier communications), red (internal supplier communications), blue (all other communications). Over Defendant's objections, the Court permitted the color coding again stating that it did "not believe that the new color scheme could be interpreted as a new form of unduly prejudicial or even prejudicial signaling." R. Tr. 2/24/2022 at 225:15-17.

DOJ was evidently unsatisfied with how the jury interpreted its color coding, because it has now switched the red and orange colors so that communications internal to chicken suppliers are orange and communications between employees at different suppliers are red. (Other communications are now white.) The result is that the color intensity now matches up with DOJ's theory of the suspiciousness of communications. Communications between employees of different suppliers (on which DOJ has built its entire case) are now highlighted in red, the color of danger, STOP, and fire. This involved the type of "highlighting techniques" that go well beyond the accurate and non-prejudicial summaries required under Rules 611 and 1006. *Bray*, 139 F.3d at 1110-10 (summary exhibits should not be "embellished" or "annotated" with the proponent's inferences "whether in the form of labels, captions, highlighting techniques, or otherwise"). DOJ's new highlighting scheme is yet another reason that the "summary" exhibits should be excluded.[5]

***New Entries.*** DOJ has also added 39 new entries not included on previous versions of the summary exhibits. These entries, however, are all related to documents that were available to

---

[5] In the alternative, even if the charts are not fully excluded, DOJ should remove any highlighting from the charts, or at the very least use the highlighting scheme from the charts that were admitted at the second trial.

DOJ at the time of the previous trial and many were previously admitted. *See* Ex. A (New Entries in DOJ's "Summary" Exhibits). Now, DOJ attempts—*for the first time*—to argue that these documents and entries are relevant to the summaries of the events outlined in these charts at two prior trials. At a minimum, the new entries attempt to create unwarranted inferences and shoehorn otherwise irrelevant and prejudicial evidence into the existing summaries.

***Argumentative Connecting of Unrelated Events.*** As this Court has recognized, having "a big gap" in the charts can "fall[] into a category of argument." R. Tr. 3/2/2022 at 9:7-10. DOJ's "summary" exhibits do that in multiple places, a representative sampling of which are outlined here:

GX 50[6] – This exhibit purports to start with an email from Mike Ledford to suppliers on September 28, 2012. The next entry is a phone call that does not occur until a week later, on October 5, 2012. This is followed by other phone calls days later on October 8, 2012. By juxtaposing these distant in time events, GX 50 misleadingly and prejudicially argues that there is a connection between the email and the calls that come a week later.

GX 53 – This exhibit focuses on bidding for the 2014 contract with KFC and contains entries that skip 17 days from an email on October 31, 2013 related to Round 1 Feedback from UFPC to Claxton to 17 days later on November 18, 2013 when Mr. Austin receives feedback from Mr. Ledford on Pilgrim's bid. By including the two emails 17 days apart with phone calls between suppliers occurring the day after each email, the government infers some connection between the two.

---

[6] DOJ included additional substantive information in the second entry on page two of GX 50 (11:24 AM ET 10/10/2012 Email) without giving notice of this change. Accordingly, this specific change (adding a new column for "Orange") should be excluded.

GX 55 – This exhibit relates to Church's Chicken QA Requirements for 2014 and omits an entire month: it includes an entry on December 26, 2014 and the next entry is January 26, 2014. The entries dated January 26, 27, and 28, 2014 are unrelated in time to the others on the chart.

GX 56 – This exhibit discusses Golden Corral and has wide gaps in time from September 12, 2014 to September 30, 2014 to October 8, 2014 to October 17, 2014 to November 7, 2014.

As is made clear by these examples, as well as others outlined *supra* in Section II of this motion, DOJ's summary exhibits attempt to string together unrelated events, with varying degrees of substantial time gaps, in order to pose an argumentative picture of its theory to the jury. DOJ has no reason beyond its own theory to believe certain phone calls are related to certain emails, especially given the substantial evidence of perfectly legal reasons for competitors to communicate that was adduced at the second trial. Such evidence can be argued to a jury as one way to read the evidence in this case; it should not be admitted for the jury's consideration as substantive evidence that there is a relationship between events unrelated in time or content.

Based on these deficiencies, it is clear that under the standard for Rule 1006 or Rule 611(a), the benefit of the current summary exhibits is far outweighed by their potential for prejudice. *See Brooks*, 736 F.3d at 931 (10th Cir. 2013); *Ray*, 370 F.3d at 1046-47. The Court should stop the endless cycle of revisions to the summary exhibits and prevent DOJ from getting another chance to yet again revise their inappropriate submissions. The DOJ is using these summaries, not for the presentation of voluminous records, but rather to teach the jury its theory. An inherent risk in the use of pedagogical devices as identified by the Tenth Circuit is exactly

9

the same as what is happening here, that they may "unfairly emphasize part of the proponent's proof or create the impression that disputed facts have been conclusively established or that inferences have been directly proved." *Miller v. Mudlin*, 354 F.3d 1288, 1295 (10th Cir. 2004) (citing *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984)). For these reasons, DOJ's summary exhibits should be excluded entirely.[7]

## II.  The Court Should Exclude Specific Content From The Summary Exhibits.

If the Court is inclined to admit the summary exhibits, then it should order the exclusion of content that conflicts with its previous rulings.

GX 60 – The government has ignored the Court's rulings and added entries that the Court explicitly excluded (from what was previously GX 12). Defendants explained at the second trial that the purpose of this summary exhibit is to show a series of phone calls amongst suppliers that followed an email from Robert Lewis of RSCS on August 29, 2014. *See* R. Tr. 3/2/2022 at 1:9-15. The Court agreed and excluded three entries that were not appropriately related to this summary, stating that "the purpose of summaries is to summarize voluminous information and they can't be argumentative…the fact they may be relevant to some issue doesn't mean that they fall within some proper relationship to what is contained on a summary." R. Tr. 3/2/2022 at 8:17-9:11. Specifically, the Court excluded a phone call from a company line at Mar-Jac to Jayson Penn on August 28, 2014 at 7:50 AM (GX 9672) and a handwritten note allegedly written by Pete Martin referencing that phone call (GX 1030) because they predated the email at issue in the summary. *Id.* The Court also excluded an email from Tim Stiller to Lonnie Justice on September

---

[7] If the Court decides not to exclude DOJ's summary exhibits in their entirety, Defendants ask that the Court exclude the portions of the summary exhibits identified above.

19, 2014 at 11:43 AM (GX 955) because it was sent 16 days after the previous entries, finding that its inclusion also fell into the category of argument. *Id.*

But DOJ has included all of these previously excluded entries. *See* GX 60. And DOJ goes even one step further by including an additional call from Mikell Fries to Pete Martin on August 29, 2014 at 10:38 AM ET (GX 10026) that, as with the call from a company line at Mar-Jac to Jayson Penn, predates the initial email from Robert Lewis.[8] DOJ has given no reason for the Court to reconsider its previous ruling (nor did DOJ even note that it is trying to revisit the Court's previous ruling) and the Court's reasoning is still applicable—these entries are not related to the email and ensuing phone calls at issue in the summary exhibit. They are included here only as argument and thus the Court should exclude them.[9]

GX 51 – This summary exhibit creates a narrative around the second round of bidding for the 2013 contract with KFC. The second round of submissions kicks off with an email from UFPC to the various suppliers on November 7, 2012, but DOJ includes an unrelated internal Pilgrim's email from Roger Austin to Justin Gay and Scott Tucker on October 26, 2012 at 2:41 PM ET (GX 1526, GX 1528). This email is sent 12 days before the email from UFPC to suppliers that begins the second round of bidding.

GX 57 – This summary exhibit creates a narrative around the bidding for the 2015 contract with Chick-Fil-A. All of the entries take place on either July 1, 2014 or July 2, 2014, except for a single email between two Pilgrim's employees on May 9, 2014 at 3:24 PM ET (GX

---

[8] DOJ failed to provide notice of this change. *See* Dkt. 1270 at 5. This entry should also be excluded for this reason alone.

[9] Likewise, the excerpt from GX 1238 in GX 60 is confusing and misleading because of its reference to "Roger and bill are not moving" given that Defendant Bill Kantola has been dismissed from this case and Mr. Bill Lovette remains a Defendant.

920). This email is sent 53 days before all of the other entries in the summary exhibit and is the only email in the exhibit that includes defendant William Lovette. The content of the entry presents no evidence of criminality and instead invite impermissible speculation of Mr. Lovette's involvement.

GX 58 – This summary exhibit creates a narrative around the bidding for the 2015 contract with KFC. However, DOJ included *for the first time* in this latest version an entry on August 19, 2014 at 7:45 AM ET to 9:30 AM ET referencing a meeting invite (GX 9867) and flight itinerary (GX 9868) for Jayson Penn and Bill Lovette. This was not on any previous version of the summary exhibit, even though the documents were previously in DOJ's possession. In fact, DOJ included these documents on their exhibit list for the second trial, but ultimately withdrew the exhibits before the trial began. R. Tr. 2/10/2022 at 82:12-25. And ultimately, these documents are irrelevant as it is clear from the face of the meeting invite that this was a meeting with Wal-Mart and unrelated to the KFC 2015 contract.

GX 61 – This summary exhibit creates a narrative around the bidding for the 2018 contract with KFC. While most of the entries occur on January 16, 2017 or later, DOJ includes a single email from an RSCS employee to Pilgrim's employees on December 9, 2016 at 9:24 AM (GX 1923) that is not directly related to the bidding process and occurs 38 days before the next entry on the summary exhibit.

### III.   Entries Should Properly Account for Limiting Instructions.

First, DOJ has failed to provide limiting instructions for some evidence cited in summary exhibits: GX 53 (limiting instruction for GX 1713 – statement of Roger Austin can only be considered against Roger Austin; GX 10651 – only considered for the effect on the listener), GX

58 (limiting instruction for DX D-148, D-149 – only considered for fact of transmission). If the charts are admitted, they must only summarize admissible evidence, which means that the Court should order that DOJ include limiting instructions for these entries.

Second, DOJ has included statements admissible against only one defendant: GX 53 (limiting instruction for GX 1700 – only considered against Scott Brady; limiting instruction for GX 1713 – statement of Roger Austin can only be considered against Roger Austin). But this is in direct contravention to the Court's previous order excluding entries against a single defendant as "it would be very difficult and confusing for the jury to be able to isolate out how" such statements "could be considered only against [one defendant], but at the same time appears to be associated with lots of other evidence." Tr. 3671:7-12; *see also* Tr. 4014:17–4020:4 (ruling that the statement by Mr. Austin contained in GX 1713 must be excluded from the government's summary exhibit). The Court should exclude these entries.

## CONCLUSION

For these reasons, the Court should exclude all of DOJ's summary exhibits or, in the alternative, exclude select portions of DOJ's summary exhibits.

Dated:  May 9, 2022

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

Respectfully submitted,

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

14

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael S. Feldberg*
Michael S. Feldberg