IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>1.   JAYSON JEFFREY PENN,<br>2.   MIKELL REEVE FRIES,<br>3.   SCOTT JAMES BRADY,<br>4.   ROGER BORN AUSTIN, and<br>5.   WILLIAM WADE LOVETTE,<br><br>    Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANTS' RESPONSE TO DOJ'S OBJECTIONS TO DEFENDANTS' SUMMARY EXHIBITS**

DOJ challenged 31 defense exhibits identified for the third trial. These exhibits are all proper and admissible, and DOJ's objections are misplaced. The motion should be denied.

**I.    DOJ's General Objections Are Meritless**

**a.   The Exhibits Are Proper Summaries under 1006 and 611(a)**

In cursory fashion, DOJ argues generally that Defendants' "summary exhibits" are inadmissible as summary exhibits, fail to summarize voluminous material, are irrelevant under Rule 401, and are "unfairly prejudicial" under Rule 403. Dkt. 1307 at 1-2. As described below, many of the exhibits that DOJ challenges are not summary exhibits (e.g., J-240, J-268, J-271).

But even as to the exhibits that actually are summaries, DOJ's arguments take some gall. As Defendants explained in their motion to exclude DOJ's "summary" exhibits, *see, e.g.*, Dkt. 1304, DOJ has created argumentative and misleading "summary" charts designed to tell its story. Defendants' exhibits, by contrast, do exactly what a summary exhibit is supposed to do. They

1

summarize "voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006.

Mostly, Defendants' exhibits summarize prices, bids, and other numerical data, which is typical of 1006 exhibits. As this Court explained, the question is whether summary charts will "aid the jury in ascertaining the truth" balanced against any "possible prejudice." Dkt. 741 at 2 (quoting *United States v. Brooks*, 736 F.3d 921, 931 (10th Cir. 2013). DOJ's claims of prejudice are unfounded. Defendants' exhibits easily satisfy this test for admissibility.

### b. Additional Witnesses Are Not Necessary

DOJ also contends that the challenged summary exhibits are inadmissible because Defendants' have not identified a witness who prepared them. Dkt. 1307 at 2. In fact, twelve of the 31 exhibits (J-249–J-256 and J-268–J-271) pertain to Professor Edward Snyder, who already testified that he and his staff created eight of the twelve in the last trial—and who will be prepared to testify about all twelve again. Other summary exhibits were prepared from contracts and bid documents, which were admitted pursuant to Fed. R. Evid. 803(6) business records stipulations during the last trial and are expected to be the subject of a similar stipulation for the next. Still other exhibits are not summaries at all. But even more fundamentally, there is no requirement under Rule 1006 or 611(a) that a preparer testify. *See, e.g.*, *United States v. Shorter*, 874 F.3d 969, 978 (7th Cir. 2017) ("[T]here is no explicit requirement that a witness testify about [a 1006 summary] at trial . . .") (quotation omitted).[1]

---

[1] If, however, the Court disagrees and believes that the only way to ascertain the accuracy of Defendants' exhibits is through witness testimony, Defendants can of course produce a preparer to testify on any true summary exhibit.

### c. DOJ Articulates No Objections to Six Exhibits

In a footnote, DOJ brief states that it objects to exhibits J-241, J-255, J-258, J-262, J-263, and J-267. Dkt. 1307 at 1 n.1. It never mentions these exhibits again, or articulates any specific objections to them. The Court should dismiss the objections to these exhibits for lack of a basis.

### d. Repeated Objections to the Presentation of a "Y-Axis" are Meritless

DOJ objects that the y-axis in bar graphs shown in exhibits H-684-1, J-235, J-239, J-250, J-252, J-253, J-254, J-256, J-259, J-260, and J-261 does not start at zero, or in some cases is unlabeled. DOJ makes this argument on such a rote basis that it even asserts it against J-239, which *does* depict a y-axis going to zero. *Compare* Dkt. 1307 at 5 ("An accurate chart would . . . [have] a y-axis that goes all the way to zero . . .") *with* J-239 (depicting y-axis above and below zero). Regardless, this is a strange objection, because in all cases the value of the y-axis is clear from the chart and in many cases the exact value of each bar is depicted above it. Thus, DOJ only objects to the manner in which Defendants presented the information, not to the accuracy of the underlying information itself. But if it dislikes the Defendants presentation, then it is free to offer a different one, which it did during the last trial. *See* GX 10023 (DOJ exhibit showing prices with rescaled y-axis). Just because DOJ prefers a different presentation does not mean that defense exhibits should be excluded.

## II. DOJ's Remaining Specific Objection are Meritless

**Exhibit H-684-1:**

H-684-1 is a bar graph comparing the 8 piece bids and final contract prices for the 2015 KFC contract. It is a revised version of H-684, which was admitted during the last trial. Second

Trial Tr. 198:7-8 (Mar. 14, 2022)[2]. The bar graph lists the suppliers along the x-axis in a random order. Its data derives from approximately thirteen source documents for six suppliers. DOJ acknowledged on the record that it had received a copy of H-684 and verified its accuracy. *Id.* at 189:14-16. All of the source documents for the revised exhibit were identified and admitted last time. The only difference between H-684 and H-684-1 is revising the August 2014 bid for Mar-Jac.[3] H-684-1 is otherwise unchanged from the previously admitted H-684.

**Exhibit I-859-1:**

Exhibit I-859-1 is a chart that compiles contract pricing and weekly volumes for KFC from seven different chicken suppliers in 2014, without argument. DOJ claims this exhibit does not summarize voluminous material. To the contrary, underlying contracts do not lend themselves to being conveniently reviewed by the jury to quickly compare and contrast pricing and volume information. The Court has previously held that compiling pricing information from various sources into an exhibit is proper under Rule 1006. *See* Dkt. 741 at 7 (exhibit "properly summarized voluminous pricing information" and therefore the Court found it was a proper summary exhibit). That is exactly what I-859-1 does.

---

[2] Defendants cite the unofficial transcript from the second trial because they do not yet have a certified transcript. To the extent the Court's recollection differs from the draft transcript, Defendants defer to the Court's recollection. All citations to the first trial transcript are to the certified transcript.

[3] In H-684, the Mar-Jac August 2014 bid is reflected as $1.1062, with a corresponding source document of GX 1029. In H-684-1, the Mar-Jac August 2014 bid is $1.1161, with a corresponding source of GX 1027. GX 1027 is dated August 19, 2014 and GX 1029 is dated August 25, 2014. The reason for the difference is because H-684-1 reflects the initial August 19, 2014 bid for Mar-Jac ($1.1161, GX 1027) and H-684 reflects the later August 25, 2014 bid for Mar-Jac ($1.1062, GX 1029). GX 10023, which DOJ created mid examination during Trial Two in response to DX H-684, identifies the Mar-Jac "August 2014 Bid" as "1.1062." *See* GX 10023. Because H-684 indicates it reflects "initial" bids, the bar graph was updated to list the August 19, 2014 Mar-Jac bid of $1.1161, as reflected in GX 1027.

**Exhibit J-228:**

The Pilgrim's organizational chart in DX J-228 responds to Robert Bryant's testimony that GX 9994 did not accurately represent the entire hierarchical structure at Pilgrim's in 2014. *See* Second Trial Tr. 125:5-126:17, 129:8-13 (Mar. 8, 2022); *Id.* at 17:2-19:17 (Mar. 10, 2022). J-288 more accurately captures Pilgrim's reporting structure and rebuts the misleading picture in GX 9994.  While DOJ argues that DX J-228 "does not summarize voluminous materials, and is, at best, a demonstrative," Dkt. 1307 at 4, Mr. Bryant acknowledged that Pilgrim's organizational charts were "confusing" and "difficult to explain."  Second Trial Tr. 128:4-129:13 (Mar. 8, 2022. If Mr. Bryant, a former Pilgrim's employee, finds the organizational charts "confusing," so too will the jury and J-228 will "materially assist the jurors in better understanding the evidence." *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998).

DOJ's remaining challenges are unavailing.  First, the fact that DOJ could not discern information clearly displayed on I-995 only bolsters the Defendants' argument that J-228 would be easier for jurors to decipher than I-995.  Second, there is no misrepresentation or material change in the direct reports involving Thomas Lane and Matthew Boarman because in both J-228 and I-995 they report directly to Mr. Penn, no one else.  Lastly, DOJ raises issue with Mr. Gay being responsible for Chick-fil-A, but the evidence shows Mr. Gay was a direct report of Mr. Penn and was responsible for Chick-fil-A.  *See* F-668.

**Exhibit J-235:**

Exhibit J-235 is a chart compiling information from six contracts between Pilgrims and RSCS showing the contract prices decreasing and increasing from 2012-2018.  DOJ objects to J-235 as a summary chart on the grounds that in a bid-rigging and price fixing case, where it relies

almost entirely on circumstantial evidence, that evidence of what companies actually did and what prices they actually charged is irrelevant. To the contrary, evidence of actual prices charged is highly relevant to whether the alleged illegal agreement existed. Because DOJ has no direct evidence of the alleged conspiracy, it has relied on claims of high or rising prices as circumstantial evidence of an illegal agreement. *See, e.g.*, Second Trial Tr. 129:15-18 (Feb. 23, 2022) ("You will see in the evidence that the defendants conspired for years to raise the price of chicken . . . ."). The fact that Pilgrim's prices went down as often as they went up, or that they were lower at the end of the alleged conspiracy period than they were at the beginning, is strong evidence disproving an illegal agreement.

**Exhibit J-236:**

Exhibit J-236 is a chart showing contract prices from 2012 – 2018 from the eight primary suppliers of 8-piece COB to KFC throughout the alleged conspiracy period. DOJ objects on the grounds that it notes a 2017 mid-year price decrease for some suppliers without specifying which suppliers and that it does not include prices for OK Foods which became an 8-piece supplier in 2016. DOJ also erroneously claims that Defendants did not cite a source for the mid-year price decrease, but the source is the contracts themselves as cited on the bottom of exhibit. This Court has already ruled that summary charts do not have to include every piece of available information. This chart is neither misleading nor argumentative. DOJ's complaints about inconsequential labelling issues are not grounds for exclusion.

**Exhibit J-239:**

Likewise, DOJ does not contend that J-239 presents inaccurate information; it only quibbles with how the information is displayed. Thus, it complains that J-239 compares

suppliers' total changes in volume rather than relative changes in volume, and, again, objects that the y-axis does not "go[] all the way to zero." Dkt. 1307 at 5. These complaints are addressed in section 1.d., *supra*, and, in any event, do not accurately describe J-239.

**Exhibit J-240:**

J-240 was only used in the second trial as a demonstrative exhibit in closing arguments. DOJ's motion does nothing to show that it is inappropriate for that purpose, instead characterizing it as an improper summary exhibit because it does not summarize voluminous material. However, even if J-240 were intended to be a summary exhibit, it would be no less proper than DOJ's summary exhibits, which summarize similar amounts of information. J-240 summarizes several contracts and an email, whereas GX 3 summarizes six communications and a phone call and GX 9 summarizes five phone calls, four text messages, and an email. Both GX 3 and GX 9 were admitted in the last trial.

**Exhibits J-249 – J-256:**

Exhibits J-249 – J-256 are all exhibits created by Professor Edward Snyder and staff at Analysis Group. As DOJ admits, Dkt. 1307 at 2-3,[4] the Court ruled that the substance of these exhibits was admissible during the second trial, but found the titles admissible for demonstrative purposes only. In light of those rulings, Defendants resubmitted the slides as new exhibits for the third trial, keeping the substance identical but changing only the titles.

While the Court ruled that the titles could not be admitted as evidence, DOJ's claim that it "raised no objection to these exhibits other than to the titles" because it "only" had two days to

---

[4] DOJ's list omits J-256. It also mislabels J-249 as "J-240." Dkt. 1307 at 2-3. As noted above, its brief also articulates no objections to J-255.

review the exhibits before they were introduced, *id*. at 3, is patently false.  The exhibits were disclosed to DOJ on March 15, and most were not introduced until March 21.  And the DOJ made substantive objections to many aspects of the documents beyond the titles.  *See, e.g.*, Second Trial Tr. 209:14-19 (Mar. 17, 2022); *id.* 8:8-9:19, 35:23-41:19, 125:15-129:11 (Mar. 21, 2022).  The Court heard ample argument on those objections, but ultimately overruled them.  Even before the in-court rulings, DOJ raised similar arguments in ***five*** other motions to prevent Professor Snyder from testifying—all of which the Court rejected. *See* Dkts. 649, 809, 904, 1040, 1193.  DOJ's latest attacks are nothing more than an attempt to relitigate arguments that have been soundly rejected many times.

First, DOJ argues that it is unable to determine the source data of J-249, J-250, and J-251.  But the backup data underlying Professor Snyder's analyses was disclosed to DOJ on October 6, 2021.  *See* Second Trial Tr. 126:22-129:11 (Mar. 21, 2022).  And while DOJ now claims that it cannot understand Professor Snyder's references in these exhibits to such terms as "Pilgrim's Pride Sales Data;" "USDA" and "EMI" data; "breeder birds;" and "KFC contracts," it had no such interpretative difficulty during the last trial.  DOJ spent significant time cross-examining Professor Snyder on all of these concepts across all of the challenged charts, and he fully explained what he meant.  *Id.* at 54:10-73:21.  DOJ's claim that it now does not understand the phrase "KFC contracts" as used on J-251 is also particularly disingenuous, given its detailed questions about the KFC contracts at issue in that exhibit.  *See id.* at 72:1-73:21.

Second, DOJ argues that J-249, J-250, J-251, and J-256 are irrelevant because providing economic comparisons reflects "an attempt by Defendants to offer a business justification or rationale for the charged conduct" which is not relevant in a *per se* price-fixing case as it "does

8

not make it more or less likely that the charged conspiracy existed." *See* Dkt. 1307 at 6, 7, 10. This is the same argument that the DOJ made—and the Court rejected—many times before. The Court already ruled that Professor Snyder's economic analyses are admissible, not to justify a conspiracy, but as evidence of whether or not a price-fixing conspiracy occurred at all. Dkt. 809 at 3-4; *see also* Pretrial Hr'g Tr. 171:10-15 (Feb. 10, 2022) (rejecting attempt to exclude same information as motion for reconsideration).

Third, DOJ makes several objections to Professor Snyder's benchmark analysis in J-256. It admits that its objections are an undisguised motion for reconsideration, but does nothing to explain why reconsideration is warranted. Dkt. 1307 at 9-10. Thus, it first (incorrectly) claims that Professor Snyder's analysis is a "summary of a summary" of data provided by Edgeworth Economics, which is unavailable to DOJ. DOJ previously admitted that it ***did have*** the same Edgeworth data, and only objected to reliability. *See* Second Trial Tr. 128:2-5 (Mar. 21, 2022). But on that issue, the Court ruled that, "The most important thing that Professor Snyder said is that this is the type of data commonly relied upon by economists in terms of the reliability of the data set. That allows an expert such as Professor Snyder to testify about that data." *Id.* at 41:5-9. And because DOJ "had the ability to double-check the figures" in the Edgeworth data, even if it did not agree with them, the Court ruled that the chart was admissible as evidence. *Id.* at 128:13-18, 129:9-11. DOJ's latest motion does nothing to explain why the Court's rulings were wrong.

DOJ's remaining objections to J-256 merely argue that the other products contained in the benchmark analysis are not comparable to KFC products. When it raised this objection in the last trial, the Court noted that Professor Snyder both explained why he chose the benchmark comparisons that he did, and also acknowledged the limitations of his dataset. *Id.* at 128:19-25.

9

Because "that information [was] in front of the jury" and the jury was free to credit Professor Snyder's analysis or disregard it, the Court ruled that the exhibit was admissible. *Id.* at 128:25-129:7. DOJ has shown no reason to reconsider this ruling either.

**Exhibit J-257:**

J-257 is a table listing the KFC 8 piece contract prices for nine suppliers for contract years 2012 to 2019. The table sorts the suppliers within each contract year from highest to lowest. The data in J-257 derives from approximately fifty-one source documents and covers eight years and nine suppliers. All of the source documents are identified and were admitted in the last trial.

DOJ complains that cannot "verify the accuracy of the following prices from the following source information provided by Defendants: 2012 George's, 2018 Pilgrim's, 2018 Case Farms, 2018 Koch Foods, 2018 George's, 2018 Mar-Jac, 2018 Claxton, 2019 Case Farms, 2019 Pilgrim's, 2019 Tyson, 2019 George's, 2019 Koch Foods, 2019 Mar-Jac, and 2019 Claxton." *See* Dkt. 1307 at 10. But every source cited in J-257 was admitted during the last trial and the Court made lists of those admitted exhibits part of the record. *See* Court Exhibits 4 and 5; Second Trial Tr. 56:16-57:11 (Mar. 24, 2022). DOJ cannot credibly claim to lack them now.

Moreover, DOJ made no such complaint against J-236, which contains ***the exact same data and sources*** for the George's 2012, Pilgrim's 2018, Case 2018, Koch 2018, George's 2018, Mar-Jac 2018, and Claxton 2018 contracts.[5] *Cf.* J-236 (discussed at Dkt. 1307 at 5) *with* J-257 (discussed at Dkt. 1307 at 10). For example, J-236 cites .09686 as the George's 2012 KFC 8 piece contract price and cites F-759. J-257 likewise identifies .9686 as the George's 2012 KFC 8 piece contract price and cites F-759. J-236 lists the Pilgrim's 2018 KFC 8 piece contract price as .9621

---

[5] J-236 did not include data for contract year 2019, which is included in J-257.

10

and cites F-796.  J-257 also lists the 2018 Pilgrim's 8 piece KFC contract price as .9621 and cites F-796.  Every source cited in J-257 was also cited in J-258, to which DOJ objected at footnote 1 of its brief but never lodged a specific objection.  And all of the 2019 contract prices DOJ claims it was unable to verify were in fact contained in the *same* exhibits as the 2018 contract for the pertinent supplier.  So, DOJ would have been able to verify Pilgrim's 2019 contract price (.9494) at page 8 of F-796.

Accordingly, DOJ's claim that J-257 is "incomplete and misleading by failing to provide the necessary source information" is itself misleading, inaccurate, and disingenuous.  Dkt. 1307 at 10.  J-257 succinctly summarizes seventy data points spanning eight years for nine suppliers found in roughly fifty-one source documents.  It is exactly the kind of summary of voluminous data that this Court has found to be for summary exhibits.  Mo reason exists to exclude it.

**Exhibit J-259–J-261:**

J-259 is a bar graph comparing the KFC 8 piece initial bids and final contract prices for the 2018-2020 contract.  J-260 is a bar graph comparing the KFC 8 piece and dark meat initial bids and final contract prices for the 2014 contract.  J-261 is a bar graph comparing the KFC 8 piece and dark meat initial bids and final contract prices for the 2013 contract.  The bar graphs list eight suppliers along the x-axis in alphabetical order.  The data in J-259 derives from approximately seventeen source documents, all of which are identified and were admitted in the last trial.  The data in J-260 derives from approximately fifteen source documents.  The data in J-261 derives from approximately seventeen source documents.  All of the source documents in J-260 and J-261 are identified and many were admitted in the last trial.

DOJ claims that Tyson's bid price in J-259 is unexplained.  Dkt. 1307 at 11.  By way of

11

explanation, in J-259, Defendants plotted Tyson's 2018 bid price at "$0.9708 (approx.)" to correspond to GX 1930, which reflects Tyson's bid of a $.0075 discount if Tyson were awarded 40 loads per week.[6]

DOJ also notes confusion with regard to J-261, that initial bid information was unavailable for Marshall Durbin. Dkt. 1307 at 11. Defendants provided a citation to F-818, which does appear to include bid information for Marshall Durbin for the 2013 KFC contract. However, F-818 is undated and was not admitted during the last trial. Therefore, out of an abundance of caution, Defendants did not seek to rely on F-818 until its admissibility could be further established. Defendants identified F-818 to provide DOJ with advance notice of the exhibit. This should resolve DOJ's claim to "not understand" this "discrepancy."

At bottom, DX J-259, DX J-260, and DX J-261 are not misleading, argumentative, or prejudicial. They clearly and accurately summarize dozens of data points spanning multiple contract years for many suppliers, with the information sourced from multiple admissible documents. These summary charts are exactly the kinds of summaries of voluminous data found in admissible evidence that this Court has found to be proper summary exhibits.

**Exhibit J-264:**

Exhibit J-264 is a chart showing weekly and yearly volume from seven different chicken suppliers for 2014-2015 KFC contracts. DOJ takes issues with the use of "estimates," arguing that "[e]stimates do not show what actually happened and are irrelevant." Dkt. 1307 at 11. Estimates are not irrelevant, especially as they apply to loads of chicken. DOJ's own witness chose to describe a load of chicken as "approximately 33,500 pounds of product." First Trial Tr.

---

[6] $0.9708 is .0075 less than 0.9783, which was Tyson's 2017 Period 2 price. *See* I-054.

1331:17-18 (Nov. 3, 2021) (Lewis); *see also* Second Trial Tr. 224:6-12 (Mar. 14, 2022) (Lewis).

DOJ also argues that the "changes in volume year over year do not make it more or less likely that the charged conspiracy existed." Dkt. 1307 at 12. This statement is patently incorrect and directly contradicts evidence DOJ sought to present to the jury. Robert Bryant testified that the conspiracy was intended to increase prices or limit decreases, by sharing competitive information, and that the shared information was not used to undercut competitors or "steal" competitors' volume. *See* Second Trial Tr. 164:2-165:13 (Mar. 8, 2022); *cf. also id.* 213:7-9 (Feb. 28, 2022) (Ledford) ("I was asking [Mr. Austin] to lower the price and if they did not, they would lose volume."). J-264 directly contradicts this testimony from a key DOJ witness, by showing that in fact competitors did take volume from each other, which harmed some and helped other, during the period of the conspiracy. This is direct evidence of competition, not collusion.

**Exhibit J-265:**

Exhibit J-265 is a chart summarizing the "2013 KFC Contract Bid Negotiations." DOJ primarily challenges D-198, one of the underlying exhibits to J-265. DOJ argues that there is nothing in D-198 to show that it reflects the Round 3 bid Pilgrim's submitted to KFC. But DOJ's argument rests on a false premise. The intention of the exhibit is to show the various iterations of suppliers' pricing over the course of negotiations with KFC in 2013. D-198 does that. It has the same title—"UFPC Cost Plus Pricing Period 1 December 30, 2012 - January 26, 2013"—as D-545, Pilgrim's second Round 3 bid, which was admitted last trial without objection by DOJ. *See* Second Trial Tr. 72:23-74:3 (Mar. 22, 2022). D-198 should be admitted for the same reason as D-545. *See also* First Trial Tr. 4437:3-4 (Dec. 6, 2021) ("I will admit F-915 and

also F-916. F-915 I think is a bid. It does have independent legal significance."); First Trial Tr. 920:12-21 (Nov. 2, 2021) ("There is, of course, every reason to believe that information on a bid submission such as this would be correct.") (Bryant).

**Exhibit J-266:**

DOJ represents that it has no objections to J-266 other than a typographical error for the number listed for George's in the "Change in Price from 1st Round Bid to Final Contract" column. Defendants have corrected that inadvertent error and attached the updated exhibit to this brief. *See* Attachment A. Without further objection from DOJ, this exhibit is admissible.

**Exhibit J-268 – J-271:**

DOJ objects that J-268 and J-270 are not summaries of voluminous material. But they do not purport to be summaries; only demonstratives that Professor Snyder will use on direct examination. Professor Snyder showed many similar demonstratives during the last trial and there is no basis to exclude them.

Next, DOJ objects to these exhibits, as well as J-269 and J-270 on the grounds that they were disclosed late. All of J-268 through J-271 are supplements to Professor Snyder's analysis. The deadline for expert witness disclosures was May 2 in general and May 11 for new experts. *See* Dkts. 1283, 1286. These exhibits are part of Professor Snyder's updated analysis. Accordingly, they were produced to DOJ on the earlier deadline of May 2 and so were timely disclosed. Even if the Court disagrees, there has been no prejudice to DOJ in receiving four exhibits over a month before trial and eight weeks before Professor Snyder is expected to testify.

Finally, DOJ argues that J-271 (a benchmark analysis) should be excluded for the same reason that it challenged J-256. This objection should be overruled for the same reasons

14

discussed above.

## CONCLUSION

For the foregoing reasons, the Court should overrule DOJ's objections to Defendants' exhibits.

Dated:  May 12, 2022

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

Dated: May 12, 2022

*s/ Michael F. Tubach*

Michael F. Tubach