1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF COLORADO

3     Criminal Action No. 20-cr-152-PAB

4      UNITED STATES OF AMERICA,

5             Plaintiff,

6             vs.

7     JAYSON JEFFREY PENN,
      MIKELL REEVE FRIES,
8     SCOTT JAMES BRADY,
      ROGER BORN AUSTIN,
9     TIMOTHY R. MULRENIN,
      WILLIAM VINCENT KANTOLA,
10    JIMMIE LEE LITTLE,
      WILLIAM WADE LOVETTE,
11    GAR BRIAN ROBERTS,
      RICKIE PATTERSON BLAKE,

12
              Defendants.
13    -----------------------------------------------------------

14                       REPORTER'S TRANSCRIPT

15                       Jury Trial, Vol. 21

16    -----------------------------------------------------------

17            Proceedings before the HONORABLE PHILIP A. BRIMMER,
      Judge, United States District Court for the District of
18    Colorado, commencing on the 28th day of March, 2022, in
      Courtroom A201, United States Courthouse, Denver, Colorado.
19

20                            APPEARANCES

21    For the Plaintiff:

22
      Michael Koenig, Carolyn Sweeney, Heather Call, Paul Torzilli,
23    Laura Butte and Jillian Rogowski, U.S. Department of Justice,
      450 Fifth Street N.W., Washington, DC 20530

24

25    Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
      A259, Denver, CO 80294, (303)335-2358

              Proceedings reported by mechanical stenography; transcription
                          produced via computer.

1    For the Defendants:

2    Anna Tryon Pletcher and Michael Tubach of
     O'Melveny & Myers, LLP, Two Embarcadero Center, 28th Floor,
3    San Francisco, CA 94111-3823;
     Brian Quinn of O'Melveny & Myers, LLP, 1625 I Street N.W.,
4    Washington, DC 20006, appearing for Defendant Penn.

5    David Beller, Richard Kornfeld, and Kelly Page of
     Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,
6    CO 80202, appearing for Defendant Fries.

7    Bryan B. Lavine of Troutman Pepper Hamilton Sanders, LLP, 600
     Peachtree Street NE,  Suite 3000, Atlanta, GA 30308;
8    Laura Kuykendall and Megan Rahman of Troutman Pepper Hamilton
     Sanders, LLP,  1001 Haxall Point, Richmond VA 23219, appearing
9    for Defendant Brady.

10   Michael Feldberg of Reichman, Jorgensen, Lehman, Feldberg, LLP,
     750 Third Avenue, 24th Floor, New York, NY 10017;
11   Laura F. Carwile of Reichman, Jorgensen, Lehman, Feldberg, LLP,
     100 Marine Parkway, Suite 300, Redwood Shores, CA 94065;
12   appearing for Defendant Austin.

13   Elizabeth B. Prewitt of Latham & Watkins, LLP,
     555 11th Street, N.W., Suite 1000, Washington, DC 20004;
14   Marci Gilligan LaBranche of Stimson, Stancil, LaBranche,
     Hubbard, LLC, 1652 North Downing Street, Denver, CO 80218,
15   appearing for Defendant Mulrenin.

16   James A. Backstrom, Counselor at Law, 1515 Market Street, Suite
     1200, Philadelphia, PA 19102-1932;
17   Roxann E. Henry, Attorney at Law, 5410 Wilson Lane, Bethesda, MD
     20814, appearing for Defendant Kantola.

18
     Mark A. Byrne of Byrne & Nixon, LLP, 888 West Sixth Street,
19   Suite 1100, Los Angeles, CA 90017;
     Dennis J. Canty, Canty Law Corporation,
20   1990 North California Blvd., 8th Floor, Walnut Creek, CA 94596,
     appearing for Defendant Little.

21
     John Anderson Fagg, Jr. and James McLoughlin of
22   Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700,
     Charlotte, NC 28202-4003, appearing for Defendant Lovette.

23

24

25

1                     APPEARANCES (Continued)

2    Craig Allen Gillen and Anthony Charles Lake of
     Gillen, Withers & Lake, LLC, 400 Galleria Parkway, Suite 1920,
3    Atlanta, GA 30339;
     Richard L. Tegtmeier of Sherman & Howard, LLC,
4    633 17th Street, Suite 3000, Denver, CO 80202-3622, appearing
     for Defendant Roberts.

5

6    Barry J. Pollack of Robbins, Russell, Englert, Orseck &
     Untereiner, LLP, 2000 K Street N.W., 4th Floor, Washington, DC
7    20006;
     Wendy Johnson and Christopher Plumlee of  RMP, LLP, 5519 Hackett
8    Road, Suite 300, Springdale, AR 72762, appearing for the
     Defendant Blake.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20-cr-152-PAB    Jury Trial    03-28-2022

1          P R O C E E D I N G S

2      (Proceedings commenced at 12:05 p.m.)

3          THE COURT:  All right.  Back on the record in

4    20-cr-152.  The jury has given us a number of different

5    questions.  First of all, let me point out, in case you haven't

6    noticed, that Ms. Coppock is not here today, and she won't be

7    here this week.  And Mr. Carlin is here today, and Mr. Carlin

8    does not know you.  And as a result, Mr. Carlin needs for you to

9    say your name each and every time you speak so that, you know,

10   we make the right record.  Okay.

11         First of all, let's number the questions.  All of

12   them -- well, maybe not the last one.  Yes.  The last one has a

13   different time on it, but here is how we will number them.  The

14   question that starts off with round one to round four, we will

15   call that question number four.  The question that says were

16   round two to round four bid, we will call that question number

17   five.  The question that says can an index and relevant

18   limiting, we will call that number six.  The one that says we

19   cannot unanimously agree, we will call that number seven.  And

20   the last one, which is dated -- sorry.  The time on it is 11:20.

21   We will call that question number eight.

22         All right.  Let's go back to the first two questions,

23   questions number four and number five.  Those both ask about

24   exhibits pertaining to certain bids.  How does the Government

25   propose that the Court answer those, Mr. Koenig?

20-cr-152-PAB    Jury Trial    03-28-2022

1      MR. KOENIG:  Thank you, Your Honor.  Michael Koenig on

2  behalf of the United States.  For four and five, we would

3  propose naming the exhibits and any associated cover emails with

4  them.  To the extent there are up to round four bids, with 2014,

5  there was only two rounds, basically.  2017, there might -- I'm

6  trying to remember off the top of my head.  But basically, to

7  say here are the rounds.  They're in evidence, the actual bids

8  with the cover sheet, and here are the exhibit numbers.  And I

9  think that pretty much is our proposal.

10      THE COURT:  And have you identified each of those

11  exhibits?

12      MR. KOENIG:  Excuse me?

13      THE COURT:  Have you identified each of those exhibits

14  and the emails?

15      MR. KOENIG:  We will.  I think we would need a minute

16  to.

17      THE COURT:  Understood.  Thank you.  On behalf of some

18  or all of the defendants?  Mr. Beller?

19      MR. BELLER:  Thank you, Your Honor.  Excuse me.  I'm

20  sorry.  David Beller, B-E-L-L-E-R, for Mr. Fries, F-R-I-E-S.

21  Your Honor, it's going to take some time to determine which bids

22  are relevant for the jury's -- in response to the jury's

23  question.  And of course that includes not just the companies

24  that are in the room, but also other companies that may have bid

25  during these same rounds that may or may not have been

20-cr-152-PAB     Jury Trial     03-28-2022

1    introduced.  And so the concern I have is unnecessarily

2    stressing the relevancy of certain contracts and not others.

3    And it seems like we may -- in trying to respond to the jury's

4    question, may unconsciously sway them by providing them

5    information that either is or is not relevant to their

6    information.

7            So, my proposal would be to not provide them a list

8    of -- a list of exhibits that we think may be responsive to

9    these two requests, but ultimately answer the question that all

10   evidence that may be considered to determine whether the

11   Government has carried their burden has already been provided to

12   you, and simply leave it at that.

13           THE COURT:  Okay.  Mr. Tubach?

14           MR. TUBACH:  Good morning, Your Honor.  Michael Tubach

15   on behalf of Jayson Penn.  I agree with Mr. Beller.  I think we

16   would want to simply answer their question as to the extent the

17   information you seek was introduced into evidence, it was

18   included in the exhibit binders or jump drive.  Because that

19   directly answers their first -- their questions -- the first

20   questions in both numbers four and five.  So, to the extent that

21   there is evidence relevant to what they've asked for, it is in

22   the exhibit binders or the jump drive, or was introduced into

23   evidence.

24           And as to listing off the exhibits, I think we would

25   not be in favor of doing that.  When they talk about bid

Kevin P. Carlin, RMR, CRR

20-cr-152-PAB    Jury Trial    03-28-2022

1  information, in both question number four and question number

2  five, that's not clear to me at all that that refers only to

3  bids, because they could have said bids.  So, there's obviously

4  a lot more information that could be relevant to the 2014 or

5  2017 bid negotiations.  And so our inclination would be to

6  not -- to not list the exhibits.

7          THE COURT:  Okay.  Thank you.

8          MR. TUBACH:  And again, to reiterate that it's the

9  Government's burden to prove the claims beyond a reasonable

10 doubt.

11         THE COURT:  Mr. Gillen?

12         MR. GILLEN:  Thank you, Your Honor.  Mr. Gillen,

13 G-I-L-L-E-N, for Mr. Roberts.  Your Honor, again, I would agree

14 with my colleagues that we should not be indexing or putting any

15 list down.  And fundamentally, this really is asking for us to

16 do organizational work for the jury, which we in my view should

17 not be doing.  Particularly as it relates to bid information,

18 because whether they're looking for the actual bid, or are they

19 looking for the emails for example that came from Brandon

20 Campbell to direct folks to have certain things in the bid,

21 that's a critical part of the Roberts defense.  And so on behalf

22 of the Roberts team, we are firmly against any sort of other

23 information, other than the information that's before you, and

24 then reiterating the burden of proof.  Thank you.

25         THE COURT:  All right.  Thank you.  Anyone else?

20-cr-152-PAB    Jury Trial    03-28-2022

1   Okay.  Mr. Koenig, anything more from you?

2        MR. KOENIG:  Yes, Your Honor.  I think, you know,

3   they're asking for something that's very specific.  And, you

4   know, it seems to be the most efficient route to provide it to

5   them.  I don't think it's going to take, you know, immense

6   amounts of time to just say here is where the bids are that were

7   submitted.  The other thing is I don't -- I mean, in terms of

8   the beyond a reasonable doubt standard, of course we -- you

9   know, that is our burden.  I don't know that it's -- they're

10  actually asking about the beyond a reasonable doubt standard,

11  but so I don't know how necessary that is, but it's, you know, I

12  just think that this question could be answered in very short

13  manner.

14       THE COURT:  Okay.  Let's turn our attention to

15  question number six, because that could be related to how we

16  answer the first two questions.  This question says, can an

17  exhibit index and relevant limiting instructions be provided, or

18  please clarify where they are in our info if we already have

19  this.  If the exhibits have a limiting instruction, are they not

20  in the binder?  Mr. Koenig?

21       MR. KOENIG:  Thank you, Your Honor.  I take it this

22  packet was a sample or something that the Court handed out, the

23  limiting instruction.

24       THE COURT:  Yeah.  Sorry.  I should explain that.  As

25  you will see an excerpt of an exhibit list, Ms. Grimm prepared

20-cr-152-PAB    Jury Trial   03-28-2022

1   this to demonstrate what we could provide if the Court chooses

2   to do so.  So, we could provide -- and it would look similar for

3   the defendants' list, too.  And as you can see for the limiting

4   instruction, it would be kind of a brief reference to what the

5   limiting instruction was.

6            MR. KOENIG:  Yeah.  And so the United States would not

7   oppose something like this.  I think it does help clarify.  And

8   would it be a list of all the exhibits, or just the ones with

9   limiting instructions?

10           THE COURT:  The list of -- I think what you would

11   probably provide is a list of all the instructions, which would

12   include those instructions -- sorry.  That were admitted.  Only

13   the admitted instructions.  But they would obviously include the

14   brief description of the limiting instruction for each -- for

15   each exhibit that had a limiting instruction.

16           MR. KOENIG:  I guess, pardon me if I didn't explain it

17   quite right, but the question being so for ones where there's no

18   limiting instruction listed, would all of the exhibits be listed

19   including the admitted exhibits that don't have limiting

20   instructions, and then, you know, just interspersed with the

21   ones that do have limiting instructions, or would it be just a

22   list, a table of the admitted exhibits that have limiting

23   instructions?

24           THE COURT:  It could be either way, depending on how

25   the question is interpreted.

Kevin P. Carlin, RMR, CRR

20-cr-152-PAB     Jury Trial     03-28-2022

1        MR. KOENIG:  Sure.  And I think what the Government

2   would propose is the full list of admitted exhibits with the

3   limiting instructions where appropriate, and I think that may

4   also assist with questions four and five as well.

5        THE COURT:  Okay.  Mr. Beller, go ahead.

6        MR. BELLER:  Thank you.  And again, David Beller,

7   B-E-L-L-E-R.  Your Honor, if we can -- well, let me be

8   responsive to six for just a moment and say I have concerns

9   about additional information being provided to the jury that

10  wasn't admitted into evidence, and ultimately has not been

11  litigated or checked for accuracy.

12       Obviously it has been checked for accuracy before it

13  was provided to the Court, but what I'm speaking of is the

14  summary, and the summary being an accurate description of the

15  actual exhibit, and really an additional list becomes a new

16  substantive piece of information to be taken into consideration

17  by the jury.

18       And for that reason, I would object to the giving of

19  any sort of exhibit list or additional information unless the

20  jury has specific questions about specific pieces of evidence

21  and requests of the Court, whether or not there may have been a

22  limiting instruction as to that particular piece of evidence.

23  But I do believe that a new summary becomes a substantive piece

24  of evidence.

25       Your Honor, if I may also go back to four and five just

4479

20-cr-152-PAB     Jury Trial     03-28-2022

1   briefly, and note for the Court a bit of confusion even in the

2   way evidence is presented, and that is oftentimes years of

3   contracts were used somewhat interchangeably between the date in

4   which they were negotiated versus the date that the contract

5   went into effect.

6         So, for example, exhibit -- excuse me -- question

7   number four, they are asking about the KFC 2017 contract.  There

8   is no independent 2017 contract.  There is a 2015 to 2017, or

9   there is a 2018 forward.  And so because that question is

10  ambiguous as to what exactly it is the jury wants, again, we may

11  be providing information that is not relevant.

12        I would note the same for question number five, because

13  it may very well be the 2015 contract negotiated in 2014, which

14  of course was part of the indictment and the presentation of

15  evidence, or it could have been the 2013 negotiation for the

16  2014 contract.

17        So, based on that ambiguity, again, I would object to

18  answering any of these three questions with anything other than

19  all evidence for you to consider for the Government's burden --

20  to prove the Government's burden has already been provided to

21  you.

22        THE COURT:  All right.  Thank you.  Additional --

23  Ms. LaBranche?

24        MS. LaBRANCHE:  Thank you, Your Honor.  This is Marci

25  LaBranche, L-A-B-R-A-N-C-H-E, on behalf of Timothy Mulrenin.

20-cr-152-PAB     Jury Trial     03-28-2022

1    Your Honor, I agree with Mr. Beller's comments.  The

2    description -- to the extent the Court were to provide any

3    descriptions back to the jury, those are not evidence.  They

4    have not been admitted in the case, and frankly, they're hearsay

5    statements of either counsel or somebody working on counsel's

6    team, whether it's Government or defense.

7         But what really for me is more concerning about all

8    three of these questions is the Government has the burden in

9    this case, and if we're getting questions from the jury

10   indicating that they don't understand what evidence came in,

11   that they don't understand what evidence relates to what, they

12   don't know where it is, that is reasonable doubt.  And I think

13   to be giving them any further guidance is essentially burden

14   shifting, and assisting the Government in trying to meet its

15   burden.

16        THE COURT:  All right.  Thank you.  Ms. Johnson?

17        MS. JOHNSON:  Thank you, Your Honor.  Wendy Johnson,

18   J-O-H-N-S-O-N, for defendant Blake.  Just two quick points.

19   Your Honor, we agree with our colleagues with respect to the

20   list of exhibits.  However, if the Court were so inclined to

21   send back a list, we would certainly ask that the brief

22   description be removed, and simply just have the exhibit numbers

23   only, and whatever limiting instruction would apply to that

24   exhibit.  I think it would speak to Ms. LaBranche's issue with

25   additional information in the form of brief descriptions going

                    20-cr-152-PAB    Jury Trial    03-28-2022

 1   back to the jury.

 2            And secondly, Your Honor, with the point of the

 3   first -- second question, I guess, number six, when it responds

 4   to the 2017 bid information or contract, if the Court will

 5   recall --

 6            THE COURT:  I think that might be question number

 7   four, that refers to 2017.

 8            MS. JOHNSON:  I apologize, Your Honor.  With respect

 9   to that particular question, if the Court recalls the evidence,

10   the Georgia contract of 2018 actually referred back to 2017 for

11   half the year, and changes in price were made.  So, our point is

12   if we were to elaborate on any of these, I think it opens

13   Pandora's box, and we're commenting on the evidence that the

14   jury has already heard, and it's not quite as easy as just

15   submitting a 2017 or 20 whatever contract.  Thank you.

16            THE COURT:  Thank you.  Ms. Henry?

17            MS. HENRY:  Roxann Henry.  R-O-X-A-N-N, Henry,

18   H-E-N-R-Y, and I'm on behalf of defendant Kantola.  Mr. Kantola,

19   K-A-N-T-O-L-A.  I just wanted to -- I'm agreeing with my

20   colleagues, but with regard to the description, just looking at

21   the very first one here to say that 9010 is a summary telephone

22   number and employment exhibit, that actually is the Government's

23   version of what that is, and these descriptions are really not

24   appropriate.  They look like a -- like the Court is endorsing

25   these descriptions of what the document is.

20-cr-152-PAB    Jury Trial   03-28-2022

1      And for example, just on that one alone, we would

2   object that that is not actually an adequate description,

3   because there is in fact a stipulation that is more complete on

4   what the actual evidence is.

5           THE COURT:  All right.   Thank you.

6           MR. TUBACH:  Michael Tubach again on behalf of Jayson

7   Penn.   For purposes of this hearing, Your Honor, do we also have

8   the agreement that an objection by one is considered an

9   objection by all?

10          THE COURT:  Yes.

11          MR. TUBACH:  Thank you.

12          THE COURT:  Anything else?  Mr. Koenig?

13          MR. KOENIG:  Yes.  Well, just for the record's sake, I

14   don't think there's much confusion about the 2014, 2017, what

15   they're looking for.  Clearly there was no KFC 2017 contract,

16   aside from, you know, what Ms. Johnson was saying, and so I

17   think that there's not the ambiguity there with those two.

18          I mean, we pretty consistently provided -- you recall

19   that the KFC 2014 negotiations -- as far as the limiting

20   instructions go, you know, if Your Honor was inclined to, you

21   know, not have the brief description, while I think it would be

22   helpful, it's not -- it doesn't strike me as being in any way,

23   you know, argumentative or anything, but certainly for both the

24   defendants' admitted exhibit list, you know, we could put in

25   where it says LI and other comments, you know, you could put in

20-cr-152-PAB    Jury Trial    03-28-2022

1   actual -- the actual limiting instruction.  Right.

2           And we could just basically have two columns and give

3   the exhibit numbers and instructions.  I just don't feel like

4   that's a -- that's the least argumentative, and it's hard to

5   keep track of all the limiting instructions, I'm sure,

6   throughout the trial.  So, that would seem to be a not

7   controversial thing just to provide them with those

8   instructions.

9           THE COURT:  Okay.

10          MR. FAGG:  Thank you, Your Honor.  John Fagg, F-A-G-G,

11  on behalf of William Lovette.  As it relates to the

12  descriptions, they would obviously all need to be reviewed very

13  carefully.  And I don't think it's fair to say that the

14  descriptions themselves are innocuous, even as they exist in

15  this sample, because of the order in which people are listed,

16  how individuals are listed, there's a number of references to

17  among others in there, and given the -- given the number of

18  exhibits that we have in this case, that would take a tremendous

19  amount of time to go through each one to make sure that it's

20  accurate.

21          THE COURT:  Okay.  Thank you.  Mr. Gillen?

22          MR. GILLEN:  Mr. Gillen, G-I-L-L-E-N.  Again, Mr. Fagg

23  seems to be focusing on the amount of time it would take.

24  That's not the point that the Roberts team makes.  The point

25  that we make is any description is a comment on an exhibit.

20-cr-152-PAB    Jury Trial   03-28-2022

1    They have the exhibits out.  So, we are against any sort of

2    description of exhibits or any indexing for the jury about the

3    exhibits that have been submitted out to them.  And we are

4    vehemently opposed to that, Your Honor.

5              THE COURT:  All right.  All right.  So, let's take up

6    number six first.  The jury, not unsurprisingly, or at least you

7    could say understandably, wants an index, and in addition to

8    that index, the relevant limiting instructions.  They also --

9    the jury also thinks that maybe the limiting instructions are

10   included, but they can't figure out where they may be.

11             I agree that were we to -- I think we would need a

12   stipulation by all parties that the descriptions in an exhibit

13   list could be provided to the jury, because without that

14   stipulation, it really is additional information to the jury.

15             And as a result, I don't think that -- and I won't

16   provide a list that includes the description of the exhibits to

17   them.

18             Without that description, then the list is fairly

19   worthless.  You know, you could give them a list of everything,

20   but they already have them all.  The only thing that would be of

21   some utility to them would be if, despite the fact that the

22   number or the exhibit number in the list would be there, would

23   be to include the short description of the limiting instruction.

24             We could do that.  That could be helpful to them.  I

25   think we would have to include language that says that the jury

20-cr-152-PAB    Jury Trial    03-28-2022

1  can only use the list's brief description of the limiting

2  instruction as a memory aid to assist the jury in recalling what

3  the Court read or what the Court gave to them in court,

4  something to that effect.  That could be of some utility to

5  them.  So, I will hear on that issue in just one moment.

6         If -- so, with that understanding, then, if we look

7  back on the questions four and five, and that is I agree that

8  the answers -- what you could say, if you were going to in

9  response to number six give them an exhibit list with

10  descriptions, you could then tell them here is a list, you can

11  look them up, but we can't tell them what they are, because no

12  one will agree what they are, and what they are could -- I mean,

13  there could be all sorts of different answers, because there are

14  related documents, and the Government suggests that we also

15  include cover emails and things of that nature, and it really is

16  a slippery slope.

17         It would be the Court's comment on that, and as I think

18  Mr. Gillen said, it could launch us on the road to essentially

19  helping the jury figure some things out, and unfortunately for

20  the jury, they've gotta figure it out on their own.  They have

21  the evidence.

22         So, it's something that the jury will have to do.  So,

23  the Court will not answer those.  Given the fact that we're not

24  giving them a list, we will have to come up with a short answer

25  to that, which once again we will talk about in just one moment.

20-cr-152-PAB    Jury Trial   03-28-2022

1          So, given those comments by the Court, next question is

2    how we should answer number four.  I think I'd say that

3    answer -- question number one, assuming that question number

4    four has two questions, would be -- I don't know.  We could

5    either say yes, or say you have been provided with all the

6    admitted exhibits.

7          MR. TUBACH:  Michael Tubach again.  I agree with that,

8    Your Honor.  So, we're not categorizing what it is.  We're

9    simply telling the jury that everything that has been admitted

10   into evidence is either in the exhibit binders or on the jump

11   drive.

12         THE COURT:  Mr. Koenig, do you have a different

13   suggestion in light of the Court's ruling?

14         MR. KOENIG:  One moment, please.

15         THE COURT:  Sure.

16         MR. KOENIG:  I think the Government would suggest not

17   giving a yes/no, because it presumes that there's stuff in the

18   exhibits that there may not be.  So, I guess I think the

19   appropriate answer in light of the Court's ruling would be all

20   exhibits -- all exhibits admitted in evidence are in the binders

21   or jump drive in your possession.  Something along those lines.

22         THE COURT:  And then how about the second question?

23         MR. KOENIG:  Did Your Honor propose something for that

24   second one, or was that --

25         THE COURT:  Not yet.

                    20-cr-152-PAB    Jury Trial    03-28-2022

1          MR. KOENIG:  Okay.

2          THE COURT:  I'm thinking of it.

3          MR. KOENIG:  I mean, it's a little tricky to answer.

4    I feel like the answer that I just read off that they have all

5    the admitted exhibits sort of answers both questions, really.  I

6    mean, in like a bleak way, but it certainly answers them.

7          THE COURT:  Mr. Tubach?

8          MR. TUBACH:  Michael Tubach again for Mr. Penn.  I

9    guess our inclination would be to answer the question directly

10   and say no.

11         THE COURT:  I think it might be more helpful to them

12   to give them a bit of an explanation why, because then that way

13   they won't -- I have a feeling if you just said no, they're

14   going to be like, I wonder why not?  Do we have to ask the magic

15   question?  Let's try a few more notes or something.

16         So, it might be a good idea to provide an explanation,

17   even if it's a rather blunt one, or, you know, even if we kind

18   of just tell them like it is.  Sorry, but, you know, I don't

19   know.  That's what I'm thinking about.

20         MR. TUBACH:  And that would be fine, Your Honor.  I

21   think if the Court is going to give a little more of an

22   explanation -- so, I do think at least on behalf of Mr. Penn, we

23   would want to have a reiteration of the burden of proof so the

24   jury is aware of how -- when they're going about doing the job

25   that you've told them they need to do, and not you or us, they

                    Kevin P. Carlin, RMR, CRR

20-cr-152-PAB    Jury Trial    03-28-2022

1   again are focused on what their burden is, on what the

2   Government's burden is.

3            THE COURT:  Ms. Henry?

4            MS. HENRY:  Roxann Henry.  Yes, Your Honor.  We do

5   believe that a further explanation that the Government has the

6   responsibility to provide the evidence and has the burden to

7   show beyond a reasonable doubt, we believe that that is an

8   appropriate explanation.  Thank you.

9            THE COURT:  All right.  Thank you.  Mr. Koenig?

10           MR. KOENIG:  Your Honor, well, two points.  First, the

11   first question in number four, if we gave the answer that I

12   suggested a few moments ago, it -- I think that the if yes is --

13   you know, the way we're answering -- would answer the question,

14   the first part of the question is you have all the exhibits.

15           And it's not really -- you know, the second question is

16   predicated on that we can answer yes/no.  But I do think a

17   little more explanation could be appropriate, something along

18   the lines of -- well, you know, explaining that it's, you know,

19   not the Court's -- well, that one still is actually kind of

20   tough for me.

21           Let me skip to the beyond a reasonable doubt question.

22   I don't think that there's a question raised by these that

23   they're curious as to who has the burden.  And I think all that

24   the defendants are trying to do is have the Court suggest that

25   in answering the question, the Government hasn't met its burden,

20-cr-152-PAB    Jury Trial    03-28-2022

1   which I don't think is appropriate, but it certainly is no

2   question that we do have that burden.

3           THE COURT:  All right.  Here is what I would suggest.

4   Answer -- so, we're on number four.  Question number one, you

5   have been provided with all the admitted exhibits, period.

6           Question number two, the Court is not able to provide

7   you with that information.  Rather, it is up to the jury to

8   review the exhibits in light of the Court's -- well, to review

9   the exhibits, and -- you could say rather, the jury should

10  review the exhibits in light of the Court's instructions, or

11  rather, the jury would review the -- or, sorry.  Strike that.

12          Rather, it is up to the jury to review the exhibits and

13  to consider them in light of the Court's instructions.  You

14  could say something along those lines.  I don't think it's

15  appropriate to go into the burden of proof at this point.  This

16  is a question to the Court, and it's not -- I don't read it as

17  triggering some question about the burden of proof.

18          Reactions to what the Court is vaguely proposing?

19          MS. HENRY:  Your Honor, can you say it one more time?

20          THE COURT:  Let me see if I can articulate it better.

21  This is the answer to question number two:  The Court is not

22  able to provide you with that information, period.  Rather, it

23  is up to the jury to review the exhibits and to do so in light

24  of the Court's instructions, period.  Mr. Feldberg?

25          MR. FELDBERG:  Michael Feldberg, F-E-L-D-B-E-R-G, for

Kevin P. Carlin, RMR, CRR

20-cr-152-PAB     Jury Trial    03-28-2022

1   Roger Austin.  Would the Court consider, in light of all of the

2   Court's instructions to the jury, in that last phrase?

3           THE COURT:  And why would that help them as opposed to

4   make them think all of the Court's instructions?  All of the

5   Court's instructions?  Maybe they're in that manila envelope.

6           MR. FELDBERG:  It's hard to respond to that one, Your

7   Honor, but I think really the task is to consider the exhibits

8   in light of all of the Court's instructions to the jury, and

9   therefore I'm wondering if it would be helpful to them to say

10  that.  That's my sole point.

11          THE COURT:  Yeah.  Understood.  Thank you.

12  Mr. Tubach?

13          MR. TUBACH:  Michael Tubach again for Jayson Penn.  I

14  would suggest simply ending it with the Court's sentence, the

15  Court is not able to provide you with that information, period.

16  As soon as the Court gets into saying, well, it's up to the jury

17  to review the exhibits and to do so in light of the Court's

18  instructions, review, sort of how are they reviewing them?

19  Well, they may give them some weight, all weight, no weight.

20  What's the standard in which they're going to review them?

21  That's part of why we would say beyond a reasonable doubt would

22  be appropriate there, but if the Court simply ends it like,

23  sorry, folks, I can't give you that information, I think that

24  may be simpler.

25          THE COURT:  Okay.  Thank you.  Mr. Beller?

                20-cr-152-PAB   Jury Trial   03-28-2022

1        MR. BELLER:  Thank you, Your Honor.  David Beller,

2    B-E-L-L-E-R.  Only for the purpose of making sure that we have

3    our record somewhat clear, it would also be the position of

4    Mr. Fries and I believe Mr. Brady as well that the Court does in

5    fact reference back to the Government's burden.  Short of the

6    Court doing that, the proposed instruction that the Court has

7    written is acceptable.

8        THE COURT:  Okay.  And including both sentences?

9        MR. BELLER:  That's correct, Your Honor.  Again, if

10   the Court is not inclined to reference the burden.

11       THE COURT:  Yes.  Additional responses?

12       MR. GILLEN:  Mr. Roberts would adopt the argument made

13   by Mr. Beller.

14       THE COURT:  That was Mr. Gillen.  Anyone else?  All

15   right.  Mr. Koenig, do you have a response on that?

16       MR. KOENIG:  Yeah.  I think the Government agrees that

17   there needs to be something more than the Court is not able to

18   provide.  That's just the same as saying, no.  And so rather, up

19   to the jury to review the evidence, and to do so in light of the

20   Court's instructions seems to capture the essence of what we

21   want to convey.

22       THE COURT:  Okay.  Yeah.  I'm going to go with what I

23   have proposed.  I think that while Mr. Tubach has a good point,

24   I think that adding that little bit is -- when it says it is up

25   to the jury to review the exhibits, I do think that provides

20-cr-152-PAB    Jury Trial    03-28-2022

1  them with helpful information and an explanation for why I said

2  that the Court is not able to provide that information.  I think

3  that that, if you agree with the same objections having been

4  noted, would also be the answer to the fifth question.

5  Ms. Prewitt?

6        MS. PREWITT:  Your Honor, Elizabeth Prewitt,

7  P-R-E-W-I-T-T, on behalf of Mr. Mulrenin.  Just one comment,

8  Your Honor.  A suggestion that where you stated it is up to the

9  jury to review the exhibits, in light of the Court's

10  instructions --

11        THE COURT:  And to do so --

12        MS. PREWITT:  And to do so.  Thank you, Your Honor.

13  Perhaps we can say something along the lines to conduct its

14  deliberations, as opposed to sort of encouraging the jury to be

15  specifically reviewing exhibits, Your Honor.

16        THE COURT:  I'm sorry.  What was that again?  To

17  review the exhibits as part of your deliberations?

18        MS. PREWITT:  Actually, instead of -- crossing out

19  review your exhibits, and replace it with conduct your

20  deliberations.

21        THE COURT:  But not refer to the exhibits?

22        MS. PREWITT:  Not refer to the exhibits, because

23  really whether they review them or not is their choice as they

24  deliberate, Your Honor.  As opposed to encouraging them, Your

25  Honor, in the direction of reviewing exhibits.  They could not

20-cr-152-PAB    Jury Trial    03-28-2022

1    review exhibits and still conduct deliberations.

2         THE COURT:  Okay.  I'm going to reject that just

3    because the question asked about exhibits.  So, I think that

4    it's pertinent to the answer.  Okay.

5         Let us now go back to number six.  And Mr. Beller, and

6    so we had left the question of whether we should give them a

7    list of admitted exhibits that does not contain a description of

8    the exhibit, but which would contain an abbreviated description

9    of the limiting instruction that pertains to those -- or those

10   exhibits that had limiting instructions.  Mr. Beller?

11        MR. BELLER:  Thank you, Your Honor.  Mr. Beller,

12   B-E-L-L-E-R, on behalf of Mr. Fries and Mr. Brady.  We have no

13   objection to that suggestion.

14        THE COURT:  Okay.  And with the suggestion -- with the

15   answer being -- including something along the lines of you

16   should rely upon your own memory as to the full instruction

17   given?

18        MR. BELLER:  That's correct, Your Honor.  And then

19   with the abbreviated limiting instruction that corresponds with

20   the exhibit number.

21        THE COURT:  Okay.  Right.  And Ms. Grimm was the one

22   who prepared those brief ones, but examples of them you can see

23   are on the second page of that handout that we provided.

24   Ms. Johnson?

25        MS. JOHNSON:  Yes, Your Honor.  Wendy Johnson for

20-cr-152-PAB    Jury Trial    03-28-2022

1    Mr. Blake.  I believe the Blake team would request -- of course

2    have no objection to the list and the brief description of the

3    limiting instructions going back, but if the jury were to ask

4    for the full instruction, we would ask that it be read to the

5    jury.

6            THE COURT:  That could be -- I will tell you this.

7    It's going to take Ms. Grimm hours to prepare -- just rip out

8    all the descriptions and put the list together no matter what,

9    so also the answer should indicate to the jury that it's going

10   to take a little bit of time, but to then include the full

11   instructions may take a long time too.  We could wait and see

12   whether they ask for that and cross that bridge when we come to

13   it.

14           MS. JOHNSON:  Yes, Your Honor.  Thank you.

15           THE COURT:  Mr. Gillen?

16           MR. GILLEN:  Yes, Your Honor.  Mr. Gillen, on behalf

17   of Mr. Roberts.  We would oppose presenting a list of the

18   exhibits and description of the limiting instructions.  The jury

19   has listened and took notes of the limiting instructions.  They

20   should rely upon those.  The exhibit list is an organization by

21   the Court of the exhibits that the jury has, and we believe that

22   that improperly aids them in their organizational skills.  They

23   are the finders of fact, and the limiting instructions we think

24   were given during the trial, and should not be given again.

25           It places a great emphasis on those specific exhibits

20-cr-152-PAB    Jury Trial    03-28-2022

1    that have limiting instructions, and so we would propose that

2    the answer to this be that that cannot be provided by the Court,

3    either the list or the limiting instructions.

4              THE COURT:  Okay.  Ms. Henry?

5              MS. HENRY:  Your Honor, we agree with Mr. Gillen's

6    position on this, and would further note that we would really

7    want an opportunity to review what went back before it was done.

8    And we think that that time issue here is really excessive at

9    this point to try and get all this together, and then to review

10   it.  And for that reason, as well as the issues addressed by

11   Mr. Gillen, we would oppose sending back the list with the

12   limiting instructions.  Thank you.

13             THE COURT:  Okay.  Thank you.  Yes.  Mr. Feldberg?

14             MR. FELDBERG:  Michael Feldberg for Mr. Austin.  We

15   join in Ms. Henry and Mr. Gillen's points of view here.

16             THE COURT:  Thank you.

17             MR. TUBACH:  And Michael Tubach for Jayson Penn.  We

18   join in those objections also.  We also note that the

19   descriptions are very brief, but for example the names -- we

20   don't know what order the names are listed in, and there are

21   other statements that were admitted only as to some defendants

22   and not as to other defendants.  We would need to see the

23   complete list to see what those descriptions are and go through

24   them.  That may take -- I don't know.  There must have been at

25   least 100 limiting instructions.  It will take us some time to

20-cr-152-PAB    Jury Trial    03-28-2022

1   go through and check those.

2           THE COURT:  Okay.  Anyone else?  Ms. LaBranche?

3           MS. LaBRANCHE:  Thank you, Your Honor.  We just want

4   to make clear that we agree with the position of Mr. Gillen.

5           THE COURT:  Thank you.  Mr. Koenig?

6           MR. KOENIG:  Sure.  I do have two questions, or two

7   points.  It seems like it would be, you know, using the -- this

8   exhibit list here, the Court's admitted exhibit list.  It says

9   LI as listed in docket number whatever.  It just seems like it

10  would be pretty easy to go through and just add in the jury

11  instruction there.  And I really don't think that would take a

12  huge amount of time.

13          THE COURT:  And putting in what information?

14          MR. KOENIG:  So, in the Court's admitted exhibit list,

15  these lines where it says LI, you know, as listed in docket

16  number 1217-1 is the example I'm looking at, just plopping in

17  the instruction there.

18          THE COURT:  By plopping in, what do you mean?  That

19  could be verbatim words that I used when I read the limiting

20  instruction to the jury, because I agree that -- I assure you

21  that is not quite as easy as plopping that you suggest.

22          MR. KOENIG:  Well, I believe that it has cites to

23  the -- you know, it says date admitted, and it says page 74,

24  line eight.  It could be just going and grabbing from the rough,

25  and including what's in there.

```
               20-cr-152-PAB    Jury Trial   03-28-2022
```

1        THE COURT:  Some are and some aren't.  You will see on

2   page two of what I handed out that there are references there.

3   I'm not sure that we have those for every exhibit.

4        MR. KOENIG:  Okay.  And before we move on, I just want

5   to make sure we don't forget Your Honor's ruling with respect to

6   question four, that would be basically the same thing as the

7   answer to question five as well?

8        THE COURT:  Right.

9        MR. KOENIG:  Okay.  All right.

10        THE COURT:  Yes.

11        MR. KOENIG:  Well, I think the Government's position

12   is stated.

13        THE COURT:  Okay.  Mr. Tubach?

14        MR. TUBACH:  I'm sorry again to get up, Your Honor.  I

15   just noted that the case caption, at least on what was provided

16   to us, says U.S. v. Jayson Penn et al.  We would object to any

17   highlighting of Mr. Penn.

18        THE COURT:  Yes.  We will change that.

19        MR. TUBACH:  Simply the case number would probably

20   suffice.

21        THE COURT:  Sure.  All right.  I am not going to give

22   them the instructions with the limiting -- number one, I think

23   that Ms. Johnson is right that we would have to double check it

24   all.  That is going to take a long time.  And then even if we

25   double checked it all, you know, we would have to refer back,

20-cr-152-PAB    Jury Trial    03-28-2022

1    and then I don't know if the jury would ask a subsequent

2    question.

3            I actually assume that they probably would not.  I

4    think that they heard that mantra enough times that they would

5    probably understand what the shorthand version was, but we would

6    have to double check it as to the names of each of the different

7    people, for instance who their statements could not be

8    considered for the truth.

9            So, I'm not going to do that.  So, in light of that, we

10   now need once again, as we did with four and five, to come up

11   with the response that would in fact be provided by the Court to

12   question number six.  Mr. Tubach?

13           MR. TUBACH:  Michael Tubach again.  Essentially could

14   be just a reiteration of that last two sentences in answer to

15   question four.

16           THE COURT:  It could be.

17           MR. TUBACH:  Some variant of that, basically

18   unfortunately I can't give this to you.  It's up to you to

19   review the exhibits as you deem.  I think you might want to just

20   tell the jury that they can stop looking for the limiting

21   instructions in the binders, because the -- you could perhaps

22   just say the limiting instructions are as I stated to you in

23   court, and you should rely on your memory, or something along

24   those lines.  So, at least I don't think it would be useful to

25   have them continue to think they may be in there somewhere, and

Kevin P. Carlin, RMR, CRR

                    20-cr-152-PAB     Jury Trial   03-28-2022

1    they're just not finding them.

2         THE COURT:  How about this, then.  This information

3    cannot be provided -- well, actually, why don't we use the same

4    language that we used for the last one.  The Court is not able

5    to provide you with that information.  New sentence.  The

6    limiting instructions have not been provided to you in your

7    binders or on the thumb drive.  Instead, you should rely on your

8    memories regarding the limiting instructions the Court gave.

9    Comments on that?

10        MR. TUBACH:  I believe that's acceptable to the

11   defendants.

12        THE COURT:  Yes.  Mr. Koenig, how about your thoughts?

13        MR. KOENIG:  One moment, please.

14        THE COURT:  Sure.

15        MR. KOENIG:  Generally, I think that sounds fine.  I

16   would maybe make one clarifying suggestion that the instructions

17   say something along the lines of all exhibits, including the

18   ones with limiting instructions are in the binders or the jump

19   drive, as they call it.  That they're not somehow, you know,

20   separate, or --

21        THE COURT:  I think that they in their previous

22   questions have referenced both sources, the notebooks, and I

23   think they call -- have called them the thumb drive.

24        MR. KOENIG:  I wasn't seeking to make a distinction

25   between binders and the thumb drive.  Just that, you know, in

                    Kevin P. Carlin, RMR, CRR

20-cr-152-PAB    Jury Trial    03-28-2022

1    answering this question, I think -- I think we could say -- add

2    a clarifying sentence that basically you have all the exhibits,

3    including the ones with the limiting instructions, without

4    limiting instructions.  It's all there.

5              THE COURT:  Ms. Grimm, how many thumb drives did we

6    give them?

7              THE COURTROOM DEPUTY:  One from each side.

8              THE COURT:  Okay.

9              MR. KOENIG:  Right.  And the reason for that is the

10   last part, where it says if the exhibits have a limiting

11   instruction, are they not in the binder?  And "they" maybe

12   refers to the exhibits that have limiting instructions or the

13   limiting instructions themselves.  So, I think that the

14   clarification would help say -- you know, obviate any confusion

15   that is reflected in that question.

16             THE COURT:  Okay.  Mr. Beller?

17             MR. BELLER:  So, thank you.  David Beller,

18   B-E-L-L-E-R.  Your Honor, given Mr. Koenig's concern, I am

19   wondering if it makes sense to simply say, see the Court's

20   response to question four, and then adding the next sentence

21   that the Court had written such as the limiting instructions

22   have not been provided in binders.

23             In other words, that may address Mr. Koenig's concern

24   that the jury has in fact received all information, and that

25   those particular exhibits are included.  It's just the limiting

20-cr-152-PAB    Jury Trial   03-28-2022

1   instructions that are not included.  So, in other words, it's a

2   compromise between what the Court is saying and what Mr. Koenig

3   is saying by saying please see instruction four.

4            THE COURT:  What do you think of that, Mr. Koenig?

5            MR. KOENIG:  So, I apologize.  I'm not as fast of a

6   writer.  The first sentence with response to question four would

7   be you've been provided -- what was the -- can you ask the last

8   part of that sentence?  You have been provided --

9            THE COURT:  Well, I think that what Mr. Beller is

10  suggesting is that the first sentence would say -- and he can

11  correct me if I'm wrong -- see the Court's response to question

12  number four.  And then after that, we would say, the limiting

13  instructions have not been provided to you in your binders or on

14  the thumb drives.  Instead, you should rely upon your memories

15  regarding the limiting instructions the Court gave.

16           MR. KOENIG:  So, in referring back to four, four would

17  say, you've been provided all the admitted exhibits, and then

18  can we add, including those with or without limiting

19  instructions?

20           THE COURT:  No.  The response to number four is the

21  Court is not able to provide you with that information.  Rather,

22  it is up to the jury to review the exhibits and to do so in

23  light of the Court's instructions.

24           MR. KOENIG:  The response to number four still has

25  that prefatory sentence, though, you have been provided all

20-cr-152-PAB     Jury Trial     03-28-2022

1    admitted exhibits; correct?

2              THE COURT:  Oh.  Sorry.  Yes.  That's the answer to

3    the first question.  You're right.

4              MR. KOENIG:  Okay.  I guess my concern, though, in

5    referring back is that we don't know for question six whether

6    that last sentence, if the exhibits have a limiting instruction,

7    are they not in the binder?  It still concerns me that that

8    question is left unanswered, because they may think the limiting

9    instructions, if they apply to an exhibit, aren't somehow in the

10   binder.  So, that's -- I was -- the suggestion would be, then,

11   you know, when I say all the exhibits, I mean whether they have

12   a limiting instruction or not, they're in the binder, or flash

13   drive.

14             THE COURT:  Yeah.  It's a little bit hard to know

15   exactly what the jury means.  They may think like in computer

16   jargon that the limiting instruction was like a sidecar to the

17   electronic exhibits or something.  I don't know, but, you know,

18   the jurors certainly know that when they look at an exhibit --

19   and as someone noted, many of the jurors were taking notes.  So,

20   they must know that certain exhibits had limiting instructions,

21   but unless there was a, you know, electronic record of the

22   limiting instructions to each one, I think they would already

23   know that the instruction -- that the exhibits themselves don't

24   have a limiting instruction in them.  It may be associated with

25   limiting instructions, but --

20-cr-152-PAB    Jury Trial    03-28-2022

1      MR. KOENIG:  Well, I think maybe that Mr. Beller's

2  suggestion would be okay.

3      THE COURT:  Okay.  Any other defendants have thoughts

4  on Mr. Beller's suggestion?  Okay.  I will go ahead and do it

5  that way.  So, to review, the response to question number six

6  would say, please see the Court's response to -- of course the

7  jury doesn't know how we've numbered these.  To -- we could say

8  to the questions concerning the rounds of bids or something to

9  that nature.

10      And then it would say the limiting instructions have

11  not been provided to you in your binders or on the thumb drives.

12  Instead, comma, you should rely on your memories regarding the

13  limiting instructions the Court gave.  Mr. Tubach?

14      MR. TUBACH:  Just thinking through the Court's query

15  about how to refer back to the earlier instruction, perhaps the

16  Court could simply number these instructions.  The Court is

17  providing back --

18      THE COURT:  Sure.  That's probably the best way to do

19  it.  I will call them jury notes four and five.  Okay.  Any

20  other comments on that one?  Ms. Johnson?

21      MS. JOHNSON:  Your Honor, Wendy Johnson for Mr. Blake.

22  Just one short suggestion at the very end of what the Court just

23  read.  With respect to the instructions the Court gave, simply

24  add, and follow those instructions.

25      THE COURT:  Well, the jury of course has to follow my

20-cr-152-PAB    Jury Trial    03-28-2022

1    instructions.  I don't want to say make sure to follow those,

2    implying that others they don't have to.  So, I won't do that.

3         Okay.  So, that's what the response from the Court will

4    be on that one.  Now, why don't we tackle number seven.  I

5    would -- this one is a little bit tricky, just because they

6    haven't said that they're deadlocked.  They have instead

7    indicated, you know, what would happen if we're deadlocked?

8         I would suggest something along the following lines:

9    If the jury reaches an impasse, comma, the jury can let the

10   Court know by a note, and the Court will provide further

11   instructions, period.

12         MR. TUBACH:  Could the Court just read that one more

13   time?

14         THE COURT:  Sure.  Of course.  If the jury reaches an

15   impasse, comma, the jury can let the Court know by a note, and

16   the Court will provide further instructions.  Mr. Beller?

17         MR. BELLER:  Thank you, Your Honor.  I respectfully

18   take issue with the word "will," and would ask the Court to

19   include the word "may," because of course we don't know what the

20   jury may actually write to us.  And there may be an argument

21   that *Allen* is not appropriate for whatever reason.

22         Your Honor, I do think, based on the language of the

23   question, as well as the *Allen* instruction that the Court gave

24   at the last trial, I do believe that it is responsive to this

25   particular question.  The *Allen* of course does not necessarily

20-cr-152-PAB     Jury Trial     03-28-2022

1   in its language presume a deadlock of any type, but rather says,

2   you may be having some difficulty in deliberations.  And

3   providing the jury some additional tools for which to

4   deliberate.

5            So, I think based on the language of this question, as

6   well as the language of the modified *Allen* that the Court gave

7   last time, I think it is in fact appropriate to do so now.  If

8   the Court chooses to not do that, then I would simply ask that

9   that "will" word be modified to "may."

10           THE COURT:  Thank you, Mr. Beller.  Mr. Koenig?

11           MR. KOENIG:  One moment, please.

12           THE COURT:  Sure.  Mr. Tubach?

13           MR. TUBACH:  Perhaps I should go so Mr. Koenig can

14   respond to both comments at once.

15           THE COURT:  I think that may be more efficient.  Go

16   ahead.

17           MR. TUBACH:  I agree with Mr. Beller, first off.

18   Secondly, if the Court is not inclined to do that, I would make

19   an additional suggestion that rather than say the jury can let

20   the Court know, I would say the jury should let the Court know.

21   If they're at an impasse, they should let us know they're at an

22   impasse, and I think we should answer their question, the last

23   part of their question, and would it end deliberations, I think

24   the answer is if they cannot unanimously agree on a verdict, the

25   answer is yes.  It would end their deliberations, and I think

20-cr-152-PAB   Jury Trial   03-28-2022

1   they should be told that.  That's the question they've asked.

2        THE COURT:  Okay.  Mr. Koenig?

3        MR. KOENIG:  Yes.  Thank you, Your Honor.  The

4   Government agrees, I think, with what Mr. Beller has proposed,

5   insofar as the modified *Allen* instruction.  And I think the one

6   as delivered in the last trial would be appropriate here.  Of

7   course, it's always better to give that instruction sooner than

8   later, I think, as far as Tenth Circuit guidance goes.

9        And I think it would be appropriate to say, you know,

10  the Court may provide additional guidance, but I don't think

11  that Mr. Tubach's suggestion telling the jury what they should

12  or should not do is appropriate, just as a general matter.

13       So, we would be in favor of just giving the modified

14  *Allen* instruction.  It gives them essentially the answer to what

15  the final question is, because it has in there this case may

16  then have to be retried and investment of resources and that

17  kind of thing.  I think that question is answered by the

18  modified *Allen*, and I think it would be appropriate.

19       THE COURT:  Any other thoughts?  Mr. Gillen?

20       MR. GILLEN:  Very briefly, Your Honor, we would agree

21  with Mr. Tubach's suggestion and note that the Government is

22  saying that we shouldn't answer the question asked by the Court,

23  would it end deliberations?  We're not telling the jury what it

24  should and should not do.  We are -- we are answering its

25  specific question.  And so I would adopt the suggestion by

20-cr-152-PAB    Jury Trial   03-28-2022

1   Mr. Tubach and answer that question.  Thank you.

2          THE COURT:  All right.  Thank you.  Anyone else?

3   Okay.  Here is the answer I'm going to give:  If the jury

4   reaches an impasse, comma, the jury can let the Court know by a

5   note, and the Court may provide further instructions.

6          I do agree with Mr. Beller that we would have to see

7   what the note may say, and that may indicate whether or not it's

8   appropriate to give a modified *Allen*.  But this question is

9   theoretical, and it's if we cannot unanimously agree.

10  Therefore, I think it's premature, both to give a modified *Allen*

11  instruction now, and also to answer the question about would it

12  end deliberations?

13         This is just the jury asking about the contingency, and

14  I think it's appropriate to let them know that if that happens,

15  they should let us know -- they can let us know, and then the

16  Court will -- or may provide further instructions.  Okay?

17         Let's turn our attention to the mysterious folder.  I

18  don't know if you've done this, but we did a search of the

19  transcript, and I don't find a reference to manila folder, the

20  term "manila folder" or anything of that nature.  So, anyone

21  have a recollection?

22         MS. PREWITT:  Your Honor, Elizabeth Prewitt.  I do

23  remember Mr. Gillen used a manila folder during his closing

24  statement, and the jury seems to be asking for that, so perhaps

25  we should provide it to the jury, because they seem to be

20-cr-152-PAB    Jury Trial   03-28-2022

1   specifically asking for a manila folder.

2          THE COURT:  I don't remember.  What was Mr. Gillen

3   doing?  What he --

4          MS. PREWITT:  He put his closing statement with notes

5   on it into the folder, so he had his hand waving it, clearly

6   signaling to the jury.  I want to make the Court aware that they

7   seem to be specifically asking for his notes for closing

8   statement.

9          MR. GILLEN:  And for the sake of justice, I'm prepared

10  to let the jury have it.

11         MR. FELDBERG:  I'm fully behind the suggestion, but on

12  the off chance that Your Honor does not adopt it --

13         THE COURT:  Just in case.

14         MR. FELDBERG:  I made a reference in closing to a set

15  of Pilgrim's exhibits that were admitted relatively late in the

16  trial that contain information about internal communications and

17  spreadsheets within Pilgrim's the week before the first round

18  bid was due, and I believe I said to the jury that they are on a

19  thumb drive that you will have.  It's possible that's what

20  they're referring to here.

21         THE COURT:  Okay.  Mr. Koenig?  Let's hear from

22  Mr. Koenig.

23         MR. KOENIG:  Sure.  I think probably referring to the

24  answers for four and five gets to this.  I agree, I believe it

25  was Mr. Feldberg who said, you know, here is a bunch of

20-cr-152-PAB    Jury Trial    03-28-2022

1   communications analyses, spreadsheets, and then he said they're

2   on a thumb drive.  I'm not going to read off the numbers, but

3   they're on the slide.  So, I don't think there's anything more

4   to really answer in that regard.  I recall it being a manila

5   folder, but I really do think that the answers to four and five

6   really get at it.

7          THE COURT:  Okay.  Mr. Tubach?

8          MR. TUBACH:  Your Honor, I agree that we should simply

9   refer back to the answers to four and five, which say all of the

10  evidence.

11         THE COURT:  You're not going to say, I agree with

12  Mr. Koenig?

13         MR. TUBACH:  I can't bring myself to say that, Your

14  Honor.

15         THE COURT:  Just checking.  Okay.  Yeah.  I think

16  that's an appropriate answer.  So, I will refer the jury back

17  just as we did in the other question to the Court's response to

18  four and five.  All right.  And as usual, I will -- after I've

19  written out those responses, Ms. Grimm will make copies and will

20  provide them to you.  Anything else that we should take up at

21  this time?  All right.  We will be in recess until we get a new

22  question, a verdict, or it's 5 o'clock.  Thank you.

23      (Recess at 1:14 p.m., until 4:45 p.m.)

24         THE COURT:  All right.  We're back on the record in

25  20-cr-152.  The jury has sent out another note.  We will call

20-cr-152-PAB    Jury Trial    03-28-2022

1   this note jury note number nine.  It indicates we're at an

2   impasse.  Strange word.  Can you direct accordingly.  So,

3   response -- suggested response by the Government?

4              MR. KOENIG:  Your Honor, I think that at this time --

5   and by the way, Michael Koenig for the United States.  I think

6   maybe a few things.  First, I do think it would be appropriate

7   at this time to give the modified *Allen* charge that Your Honor

8   gave in the last trial.

9              I also do think it would be appropriate -- because we

10  don't know what their impasse is, it would be, I think, entirely

11  appropriate to give a partial verdict instruction as well.

12  Short of that, I would suggest inquiring as to what the nature

13  of the impasse is so that we can figure out what the problem is

14  and where the roadblock is.  It might be curable from there.

15             THE COURT:  All right.  Thank you.  Mr. Beller, go

16  ahead.

17             MR. BELLER:  Thank you, Your Honor.  Your Honor, David

18  Beller, B-E-L-L-E-R.  The Court may have said, but I'm guessing

19  that this is going to be marked as note nine.

20             THE COURT:  It will be.

21             MR. BELLER:  Thank you.  Your Honor, the defendants

22  object to the giving of an *Allen* instruction at this point, and

23  frankly, at any point.  And I would note that the prior

24  instruction, or the prior note -- this is note number seven --

25  is dated today's date, timed at 10:48 this morning.  That means

20-cr-152-PAB     Jury Trial     03-28-2022

1   the jury has continued to deliberate since the time they first

2   indicated at least some concern about the possibility of an

3   impasse.  They have been deliberating for six hours since that

4   time.

5        I would note for the Court that this instruction number

6   nine does mirror the language of the Court's answer in

7   instruction number seven, and that is using the language

8   "impasse."  I believe that the giving of an *Allen* instruction at

9   this point, or again, the giving of an *Allen* instruction at all

10  would be unduly coercive, Your Honor.  I would ask that the

11  Court declare a mistrial.

12       Should the Court choose to not declare a mistrial and

13  provide an *Allen* instruction, I believe the modified *Allen* from

14  the last trial is the appropriate one to give over defense

15  objection.  I believe that any further inquiry would be wholly

16  inappropriate given the circumstances that are before the Court,

17  and I believe very unduly suggestive to the jury.

18       The instructions that the Government argued for are

19  already contained, although not as explicitly in the instruction

20  packet that the Court has given.  I don't believe any further

21  inquiry at all would be appropriate, nor do I believe that there

22  is legal precedence for the inquiry of the Court into what

23  problems the jury is having, given the language and the simple

24  straightforward language that the jury has provided to us at

25  this point.

```
                    20-cr-152-PAB    Jury Trial   03-28-2022
```

 1            THE COURT:  All right.  Thank you.

 2            MR. BELLER:  Thank you.

 3            THE COURT:  Additional comments on behalf of the

 4    defendants, Ms. Henry?

 5            MS. HENRY:  Just to be clear, I am not certain whether

 6    Mr. Beller addressed that, but we also would obviously object to

 7    a partial verdict instruction.

 8            THE COURT:  Okay.  Anyone else?  Mr. Koenig?

 9            MR. KOENIG:  Sure.  I could be mistaken, but I am

10    quite positive that this morning Mr. Beller asked for the -- I'm

11    sorry -- the modified *Allen* instruction.  So, it is striking

12    that they're changing their minds now.  I think it is entirely

13    appropriate.  They have just come out with this very -- you

14    know, they've mirrored the language of Your Honor's answer to

15    the note.  It gives us little information as to what the impasse

16    is.

17            I don't think there's any prohibition against asking

18    the jury to be a little more specific.  You don't even -- you

19    know, it wouldn't be sitting here and questioning the jurors in

20    open court so much as it would be, you know, saying, you know,

21    given the modified *Allen* instruction, and then saying that, you

22    know, if you care to be more specific -- you don't have to be,

23    it's entirely up to you, but if you want to be more specific, is

24    there a particular issue that could use further instruction?  Is

25    there some possible confusion?

20-cr-152-PAB    Jury Trial    03-28-2022

1   I don't see any prejudice to that.  It's just a simple

2   inquiry, and the Court can decide not to give an answer to it.

3   It's just, you know, trying to figure out what it is so that we

4   don't have to go through this yet a third time.  And so I would

5   ask for the *Allen* instruction as given last time, an inquiry to

6   the impasse, and the partial verdict instruction.

7           THE COURT:  Okay.  Anyone else?  All right.  Here is

8   what I'm going to do.  First of all, I disagree with

9   Mr. Beller's theory that in fact the jury was at an impasse and

10  now have been at an impasse for this long of a time period, and

11  an *Allen* instruction would be of course, as I previously

12  indicated, the last -- well, I think it was jury note seven, was

13  just theoretically asking what would happen if we were at an

14  impasse?

15          Now the jury has indicated that they are at an impasse.

16  And I don't believe that giving an *Allen* instruction would be

17  coercive to them.  And in fact, I think now is the appropriate

18  time.  We will talk about it in just one minute, but I would

19  suggest that we give the one that we did last time, and I will

20  have Ms. Butler pass those out right now, which I will mark as

21  instruction number 44.

22          You will recall last time that the -- I brought the

23  jury in.  I read the instruction to them, and then not long

24  after they asked for a copy of it.  I would propose that I read

25  the instruction to them, and then I indicate to them at that

Kevin P. Carlin, RMR, CRR

20-cr-152-PAB     Jury Trial     03-28-2022

1   time, and I will provide you with a copy of that instruction.  I

2   think that it -- you know, it has some good language in it, and

3   it's -- I think would be helpful for them to be able to look it

4   over.

5          So, I'm not going to declare a mistrial at this time.

6   I think that that would be premature.  I am also not going to in

7   any way make any inquiry to them.  I don't think that there's

8   any precedent for that whatsoever.  It's really invading the

9   province of the jury.  This is a jury that knows how to ask

10  questions, and so they don't need me trying to draw them out.

11         So -- and I'm also not going to give a partial verdict

12  instruction.  They haven't indicated that yet.  The theoretical

13  question, jury note seven, did say all.  It just doesn't give a

14  basis to provide the partial one yet.  Maybe.  We will see, but

15  I don't find a basis for that at this particular time.

16         So, let's talk about instruction number 44 first.

17  Ms. Butler has handed those out.  That is the one that we gave

18  last time.  I don't know if you remember how we modified it as

19  compared to the Tenth Circuit pattern, but if it's material to

20  your thinking about it, I do have a redlined version that we can

21  circulate.  I don't have multiple copies of it, but any problem,

22  given the Court is going to give the *Allen* instruction, to

23  giving what has been numbered as instruction number 44?

24         MR. BELLER:  David Beller, Your Honor.  The defendants

25  did -- or at least most of the defendants, I believe, had an

20-cr-152-PAB    Jury Trial   03-28-2022

1   opportunity to review the actual instruction that was given the

2   last time.  What I did not do is compare it to the pattern, but

3   what I will say is I have no objection to the Court choosing to

4   give the same instruction as given to the jury last time.

5           With that said, Your Honor, I don't recall all of the

6   objections that were made on that instruction.  So, assuming the

7   Court certainly preserves those objections this time, we would

8   ask that this same instruction be given.  In terms of offering

9   or introducing the actual instruction to the jury, certainly I

10  have no objection to the Court providing them a copy.

11          THE COURT:  Okay.  And I will allow the preservation

12  of all objections at the previous trial to this one, which is

13  the same wording.  Any other objections on behalf of the

14  defendants, Mr. Tubach?

15          MR. TUBACH:  Michael Tubach.  No objection.  I wasn't

16  clear if the Court was planning on bringing the jury back and

17  reading it to them?

18          THE COURT:  Yes.  What we did last time is I brought

19  the jury in.  I read the instruction to them.  We then sent them

20  back, but then not long thereafter they asked for a copy of it.

21  Instead of waiting for the jury to ask, my intent would be to

22  bring them in, read the instruction to them, and then indicate

23  that I will provide a copy of the instruction to them.  But then

24  I will dismiss them for the day.  It's five minutes to

25  5:00 right now.  Okay?

```
                20-cr-152-PAB    Jury Trial   03-28-2022
```

1          Mr. Koenig, Government's position?

2           MR. KOENIG:  We have no objection.

3           THE COURT:  Okay.  To that procedure?

4           MR. KOENIG:  Yes.

5           THE COURT:  Okay.  Are we ready to bring the jury back

6    in?  Let's go ahead and bring them in.

7         (Jury in at 4:55 p.m.)

8           THE COURT:  All right.  Ladies and gentlemen, you sent

9    a note out to the Court indicating that you are at an impasse.

10   Let me read to you what I have numbered as instruction number

11   44.  Members of the jury, I am going to ask that you return to

12   the jury room and deliberate further.  I realize that you are

13   having some difficulty reaching a unanimous agreement, but that

14   is not unusual.

15          Sometimes, after further discussion, jurors are able to

16   work out their differences and agree.  If you should fail to

17   agree upon a verdict, the case is left open, and may be tried

18   again.  Another trial would require the parties to make another

19   large investment of time and effort, and there is no reason to

20   believe that another jury would find the job any easier.

21          You're reminded that each defendant is presumed

22   innocent, and that the Government, not the defendants, has the

23   burden of proof, and it must prove each defendant guilty beyond

24   a reasonable doubt.

25          Those of you who believe that the Government has proved

20-cr-152-PAB     Jury Trial     03-28-2022

1   a defendant guilty beyond a reasonable doubt should stop and ask

2   yourselves if the evidence is really convincing enough, given

3   that other members of the jury are not convinced.  And those of

4   you who believe that the Government has not proved a defendant

5   guilty beyond a reasonable doubt should stop and ask yourselves

6   if the doubt you have is a reasonable one, given that other

7   members of the jury do not share your doubt.

8        In short, every individual juror should reconsider his

9   or her views.  It is your duty as jurors to consult with one

10  another and deliberate with a view toward reaching an agreement.

11  If you can do so without violence to individual judgment, each

12  of you must decide the case for yourself, but do so only after

13  an impartial consideration of the evidence with your fellow

14  jurors.

15       In the course of your deliberations, do not hesitate to

16  reexamine your own views and change your opinion if you're

17  convinced it is erroneous, but do not surrender your honest

18  conviction as to the weight or effect of evidence solely because

19  of the opinion of your fellow jurors or for the mere purpose of

20  returning a verdict.

21       What I have just said is not meant to rush or pressure

22  you into agreeing on a verdict.  Take as much time as you need

23  to discuss things.  There is no hurry.  I will ask now that you

24  retire once again and continue your deliberations with these

25  additional comments in mind to be applied, of course, in

20-cr-152-PAB     Jury Trial     03-28-2022

1   conjunction with all of the instructions I have previously given

2   you.

3           That, ladies and gentlemen, completes my reading of

4   instruction number 44.  Despite the language in it that says go

5   back to the jury room and deliberate, I'm going to let you go

6   today, because it's just a little bit after 5:00, but I will ask

7   that you come back tomorrow at a time of your choosing to

8   recommence your deliberations.  All right?

9           Otherwise, ladies and gentlemen, please keep all those

10  admonitions in mind that we had otherwise talked about.  Hope

11  you have a good evening.  The jury is excused.

12      (Jury out at 5:00 p.m.)

13          THE COURT:  Anything else we should talk about today?

14          MR. KOENIG:  I might have missed -- I thought you were

15  going to give the jury a copy.  I just want to make sure.

16          THE COURT:  Yeah.  I forgot to.  But I won't -- I will

17  have Ms. Grimm provide a copy of that instruction to them

18  tomorrow once she understands that they're back.  All right?

19  Mr. Gillen?

20          MR. GILLEN:  It might help everyone if we gave the

21  jurors a few minutes to sort of get out, because it's, you know,

22  they're heading down the same staircase and everything.  So, I

23  would just suggest that we give them a little bit of time to

24  clear the building before we leave ourselves.

25          THE COURT:  Yeah.  That might be a good idea.  I think

Kevin P. Carlin, RMR, CRR

4519

20-cr-152-PAB    Jury Trial    03-28-2022

1   that there -- I can hear them taking off right now.  So, that

2   puts the pressure on you, Mr. Gillen, to entertain us in the

3   meantime.

4            MR. GILLEN:  If I get close to the microphone, we will

5   be here longer than you want to be.

6            MR. BELLER:  Your Honor, just a quick question, if we

7   know what time they're coming in tomorrow, so we know what time

8   to gather ourselves?

9            THE COURT:  I don't, but one of the jurors had a

10  conflict, and I think that they're going to be starting a little

11  bit later.  But I don't know exactly when.  That was up to them.

12           MR. BELLER:  Understood.  Thank you.

13           THE COURT:  I don't think it would be -- I'm just

14  guessing, but 9:30, 10:00, maybe at the earliest is my

15  prediction.  Seems to have grown a bit quiet, so we will be in

16  recess.  Thank you.

17       (Proceedings concluded at 5:03 p.m.)

18

19

20

21

22

23

24

25

Kevin P. Carlin, RMR, CRR

1                          REPORTER'S CERTIFICATE

2

3

4             I, KEVIN P. CARLIN, Official Court Reporter for the

5    United States District Court for the District of Colorado, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein at the time and place

9    aforementioned and that the foregoing pages constitute a full,

10   true, and correct transcript.

11            Dated this 11th day of April, 2022.

12

13

14

15

16   _____
     Kevin P. Carlin, RMR, CRR
17   Official Court Reporter

18

19

20

21

22

23

24

25